**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARGARET SHAKESPEARE, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>    - against –<br><br>LIVE WELL FINANCIAL, INC.,<br>COMPU-LINK CORPORATION D/B/A CELINK and<br>REVERSE MORTGAGE FUNDING, LLC<br><br>                              Defendants. | Case No. |

**CLASS ACTION COMPLAINT**

1.      Plaintiff Margaret Shakespeare ("Plaintiff"), by and through her counsel, on behalf of herself and all others similarly situated, alleges based upon personal knowledge as to Plaintiff's own acts and observations, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiff's attorneys, against defendants Live Well Financial, Inc. ("Live Well") and Compu-Link Corporation d/b/a Celink ("Celink") and Reverse Mortgage Funding, LLC ("RMF") (collectively "Defendants"), as follows:

**I.      NATURE OF THE ACTION**

2.      This action arises out of Live Well's and Celink's policy and practice of improperly paying the property taxes of homeowners with Home Equity Conversion Mortgages ("HECMs") before those taxes are due, without contractual or other legal authority to do so and without providing notice to the homeowners.  The companies then improperly demand, under threat of foreclosure, that the homeowners repay these improper tax advances.   If the homeowners fail to comply, the companies file for foreclosure on the entire loan, adding related

1

charges, attorneys' fees, and other amounts to the homeowners' loan balances and risking the loss of their homes altogether.

3.    Plaintiff is a homeowner and HECM borrower who has a reverse mortgage insured by the U.S. Department of Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA").  Defendant Live Well originated Plaintiff's HECM loan, which was serviced for Live Well by defendant Celink.  As of December 1, 2018, Plaintiff's HECM loan was sold and assigned by Live Well to RMF, which loan continues to be serviced by Celink.

4.    HECM lenders and loan servicers may not pay property taxes that a borrower has agreed to pay, except in the narrow circumstances set forth in standard HECM loan contracts and HUD regulations, such as the borrowers' failure to pay taxes in a timely manner or legal proceedings that threaten the lender's property interest.  Live Well and Celink, by contrast, preemptively pay taxes not yet due whenever a loan "is referred to foreclosure" for any reason (according to an April 22, 2016 Live Well letter), even where, as in Plaintiff Shakespeare's case, the borrower is not delinquent in paying taxes and has not committed any breach warranting this preemptive payment by Live Well and Celink.

5.    When Defendants Live Well and Celink prepay taxes, they also routinely—but falsely—report the loan as being in default for non-payment of taxes, which further injures the borrowers.  For example, these policies and practices: 1) cause Live Well and Celink to improperly declare loans in default and subject borrowers to foreclosure lawsuits (even when Live Well and Celink have not provided required notices); 2) makes the HECM loans ineligible to be assigned to HUD for three years; 3) prevents borrowers from benefitting from various loss

mitigation opportunities, such as appealing a tax assessment or participating in a permissible property tax assistance program; 4) exercising their regulatory right of redemption once in a two year period; 5) seeking to be approved for assignment to HUD as a non-borrowing spouse with a right to defer enforcement of the debt until after the death of the borrowing spouse and/or 6) continuing to be eligible for a non-borrowing spouse deferral once approved.

6.     Defendants Live Well and Celink act in a further deceptive and misleading manner and breach Class members' standard HECM loan agreements by failing to provide required notices to HECM borrowers, i) before paying property charges (including property taxes); ii) after paying property charges (including property taxes); and iii) before filing foreclosure lawsuits (including foreclosure lawsuits filed in New York).  Those notices are required by the terms of standard HECM loan contracts, federal regulations, and New York State laws, rules and regulations including New York Real Property Law ("RPL") §§280(2)(f) and 280-a(2)(m) and 3 NYCRR §79.9.  Even without providing required notices, Live Well and Celink impose substantial unlawful fees, costs, charges, interest and insurance premiums that are charged to Class members and/or their HECM loan balances.

7.     Live Well filed two foreclosure lawsuits against Plaintiff, each time failing to provide required notices prior to filing.  The first was filed in October 2015 based on a claimed failure to finish a repair job on Plaintiff's home. That first foreclosure lawsuit was dismissed when HUD agreed with Plaintiff that all appropriate repairs had been made and directed Live Well and Celink to dismiss the lawsuit.  The second foreclosure was filed in August 2016 premised on Live Well's and/or Celink's improper prepayment of Plaintiff's property taxes that were never delinquent and that were timely paid by Plaintiff.  Although both cases were

dismissed, Live Well and Celink have refused to remove fess, costs, charges, interest and insurance premiums added to Plaintiff's HECM loan balance related to the foreclosures.

8.      This nationwide class action challenges Live Well's and Celink's policies and practices in violation of standard HEMC loan contracts and federal and state laws and regulations, by, among other things: 1) improperly paying borrowers' property taxes prior to delinquency; 2) failing to provide required notices to HECM borrowers and state agencies; 3) adding amounts Live Well and Celink improperly advanced to prepay taxes to HECM borrowers' loan balance and then demanding, under threat of foreclosure, that HECM borrowers personally repay the improper debt; 4) misrepresenting that HECM borrowers were in default on their taxes or committed other breaches that would justify declaring their entire loan due and payable; 5) subjecting HECM borrowers who are unable or unwilling to comply with Live Well's and Celink's demands to foreclosure and the cost and effort to defend against Live Well's and Celink's false allegations of breach; and 6) adding foreclosure-related charges, costs, fees, mortgage insurance premiums ("MIP"), and compounding interest to borrowers' HECM loan balances.  These costs are prohibited and/or unwarranted because the HECM borrower has not breached any loan obligation and the assessment of such fees and costs is not reasonable or necessary.

9.      Plaintiff brings this consumer protection class action pursuant to FED. R. CIV. P. 23(a), (b)(2), and (b)(3) on behalf of herself and the Classes of HECM loan borrowers defined in Paragraphs 87 and 88 below, pleading claims for breach of contract, breach of the implied duties and covenants of good faith and fair dealing, violations of New York General Business Law ("GBL") §349, and unjust enrichment.

10.     Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief from Defendants on behalf of herself and other similarly situated borrowers and their estates who have been unlawfully charged or assessed fess, costs, charges, interest and insurance premiums imposed as a result of Live Well's and Celink's deceptive, misleading, and inequitable practices, their breaches of contract, and violations of the covenants of good faith and fair dealing.  For fees, costs, charges, interest and insurance premiums that have been unlawfully and inequitably assessed or added to Class members' HECM loan balances, but not yet paid because homes have not yet been sold, those charges and interest should be removed and HECM principal balances properly re-calculated.  For Class members (or their estates) who have sold their homes and paid the unlawful and inequitable fees, costs, charges, interest and insurance premiums, those monies should be refunded, repaid, and disgorged and restitution should be provided by Live Well and/or Celink, with interest.

## II.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000.00, there are in excess of 100 class members, and members of the Class are citizens of a state different from that of Defendants.

12.     This Court has personal jurisdiction over all Defendants.  Defendants are each authorized to do business in New York, maintain continuous and systemic contacts with New York and this District, do business in New York and this District specifically related to the claims alleged in this Complaint, and has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play

and substantial justice.

13.    Venue is proper in this District under 28 U.S.C. §1391.

## III.    THE PARTIES

14.    Plaintiff Shakespeare is a resident and owner of a home that is the subject of this action located in Peconic, New York, within this District.  In September 2013, Plaintiff closed on a HECM loan originated by Live Well.  At all relevant times, Celink was the servicer or subservicer of that HECM loan.  Live Well and Celink have together and separately violated the federal and New York laws, rules, and regulations stated in this Complaint, and breached the HECM loan agreements with Plaintiff and violated the covenants of good faith and fair dealing, thereby causing injury and damages to Plaintiff and other members of the Classes.

15.    Defendant Live Well is a Delaware corporation with its principal place of business in Lansing, Michigan.  In its Federal Truth-In-Lending Disclosures, Live Well lists its address as 1011 Boulder Springs Drive, Ste. 420, Richmond, Virginia.  Live Well is a lender and servicer of HECM loans in New York and throughout the United States.  It represents itself on its website to be "one of the largest reverse mortgage lenders in the country[.]"  In letters to Plaintiff, Live Well states that it is, "a registered servicer with the Superintendent of the New York State Department of Financial Services."   Live Well twice filed lawsuits in the New York State courts located within this District to foreclose on the HECM loan it provided to Plaintiff Shakespeare, both of which lawsuits were dismissed.

16.    Defendant Celink is a Michigan corporation with its principal place of business in Lansing, Michigan.  Celink claims on its website to be the largest independent servicer of reverse mortgages in the United States, and its clients include regional to nationwide lenders,

banks, and insurance companies. Celink claims to have developed and uses a proprietary Java-based reverse mortgage servicing platform, ReverseServ$^{TM}$, for servicing FHA HECM loans. According to its website, "Celink's reverse mortgage subservicing portfolio currently exceeds $40 billion." "In addition, it is licensed to service reverse mortgages in all 50 states, including Puerto Rico and the U.S. Virgin Islands." Celink was the servicer or subservicer of Plaintiff Shakespeare's HECM loan provided by Live Well and continues in that role for RMF. Celink operates as an agent for its principals Live Well and RMF.

17.     Defendant RMF is a Delaware limited liability company with its principal place of business in New Jersey and offices in New York within this District. RMF is a lender and servicer of HECM loans in New York and throughout the United States, claiming on its website to be, "one of the nation's leading reverse mortgage lenders." On November 15, 2018, Live Well notified Plaintiff that it had sold and assigned Plaintiff's HECM loan to RMF, effective December 1, 2018. As a result, RMF is a necessary party capable of remedying Live Well's and Celink's unlawful and inequitable conduct. At this time, Plaintiff does not allege unlawful or inequitable acts committed by RMF.

## IV.    BACKGROUND

18.     A reverse mortgage or HECM loan is a home loan for seniors (62 years or older) that requires no monthly mortgage payments. Borrowers have the option of choosing to pay their property or real estate taxes and homeowner's insurance or having the lender or servicer pay them from HECM loan proceeds.

19.     Federally-insured HECM loans were developed and authorized by Congress to enable seniors to convert the equity in their homes to cash to help them meet their monthly

expenses and protect them from losing their homes.  According to a website maintained by HUD, "The Home Equity Conversion Mortgage (HECM) is Federal Housing Administration's (FHA) reverse mortgage program which enables you to withdraw some of the equity in your home.  You choose how you want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both.  You can also use a HECM to purchase a primary residence if you are able to use cash on hand to pay the difference between the HECM proceeds and the sales price plus closing costs for the property you are purchasing."  Source: https://www.benefits.gov/benefits/benefit-details/709.

20.     Unfortunately, abuse by lenders and servicers of HECM loans of vulnerable seniors has been rampant.  An August 25, 2017 Washington Post article reported that, "The federal Consumer Finance Protection Bureau has long warned about deceptive advertising and reverse mortgages."  Jenifer McKim, *More seniors are taking loans against their homes – and it's costing them*, Washington Post (Aug. 25, 2017).

21.     According to the United States Government Accountability Office ("GAO"), "While HECMs have the potential to play a key role in meeting the needs of seniors facing financial hardship or seeking to improve their quality of life, the product is relatively complex and costly and the population it serves is vulnerable."  GAO, Testimony Before the U.S. Senate, Special Committee on Aging, *Reverse Mortgages[,] Product Complexity and Consumer Protection Issues Underscore Need for Improved Controls over Counseling for Borrowers* (June 29, 2009) (Statement of Matthew J. Scire, Director of Financial Markets and Community Investment).

22.     The HECM agreements between a HECM lender / mortgagee and a borrower /

mortgagor generally consists of a uniform note, a uniform mortgage or deed of trust, and a uniform conversion loan agreement, each of which have uniform terms that lenders are required by HUD to use.   Some non-uniform terms are added tailored to the law of the states where the HECM properties are located.   Those HECM loan agreements must conform to and comply with the National Housing Act and federal regulations promulgated by HUD and FHA, and the state laws in which the properties are located.

23.    In New York, HECM loans are authorized by New York RPL §§280 and 280-a and New York Banking Law §6-h, along with New York rules and regulations.

24.    Once a HECM borrower has elected to pay their own property charges, HECM loan agreements and federal regulations prohibit the lender or servicer from paying the borrower's property charges (including property taxes), except in narrow and expressly-defined circumstances provided in the HECM contracts and applicable regulations, and only then generally after providing notice to the borrower before and after any claimed default and payment of property taxes.   For example, 24 C.F.R. §206.205 provides for the payment of property taxes by the lender or servicer when, "the mortgagor fails to pay the property charges in a timely manner." The HECM Reverse Mortgage also permits payment in the narrow circumstances where it is necessary to preserve the property or the Lender's property interest. Those narrow circumstances were not present in Plaintiff's case, and are not present for members of the Classes for whom Live Well and Celink improperly paid property taxes.

25.    A HECM lender is not permitted to file a foreclosure lawsuit unless and until it complies with the federal notice and loss mitigation rules and regulations.   In New York, RPL §§ 280 and 280-a and 3 NYCRR §79.9 set forth additional requirements that lenders must meet

before filing a lawsuit to foreclose on a HECM loan.

## V.   STATEMENT OF FACTS

26.    As they did with Plaintiff Shakespeare, Live Well and Celink pay property taxes for borrowers that have made the self-pay election who are *not* delinquent or in default on the payment of their property taxes or Repayment Plans and whose circumstances do not satisfy the strict contractual preconditions permitting such payments.

27.    As they did with Plaintiff Shakespeare, Live Well and Celink pay property taxes for HECM borrowers *without providing prior notice* to borrowers or providing an opportunity to cure an alleged delinquency.

28.    Based on the improper payment of property taxes and lawful refusal by Class members not to personally repay those improper advances, Live Well and/or Celink declare Class members' HECM loans to be in "default" or "due and payable" status, whereby they accelerate the loan balance and impose fees, costs, charges, interest and additional insurance premiums that would not be permissible if a HECM account was not in default or due and payable status.  Live Well frequently files foreclosure lawsuits against HECM borrowers, like Plaintiff, predicated upon such improper declarations of default.  Foreclosure lawsuits result in the further imposition of substantial improper fees, costs, charges and interest, insurance premiums, and possibly even the loss of Class members' and their spouses' and heirs' homes.

29.    A HECM loan may not be called due and payable unless: 1) the borrower dies; 2) sells their entire interest in the property; 3) fails to occupy the home as their primary residence; 4) is absent for longer than 12 months if living in a health care facility due to a physical health problem and no other borrower remains, or 5) fails to meet an obligation

imposed by the mortgage.

30.     Live Well's and Celink's unlawful policies and practices directly and proximately caused financial injuries and damage to Plaintiff and Class members.  The result of Live Well's and Celink's improper acts, misstatements and omissions directly and proximately caused the imposition of fees, costs, and charges to be added to the principal of HECM loans, plus interest on the improper fees, costs, and charges and additional insurance premiums that are calculated as a percentage of the principal.

**Plaintiff's Uniform HECM Loan Agreements**

31.     Plaintiff Shakespeare entered into a HECM loan agreement with Live Well in September 2013.  Celink was designated as the servicer or subservicer for her HECM loan and Live Well's agent.

32.     Plaintiff's HECM agreement with Live Well consists of a note, a mortgage and a uniform conversion loan agreement, each of which had uniform terms that Live Well used to originate Plaintiff's HECM loan.

33.     Plaintiff Shakespeare elected to pay the property charges and taxes on her home.

34.     On that same *Application*, Plaintiff listed the appraised value of her home at $310,000.00.  The "Maximum Claim Amount" for Plaintiff's HECM loan was also listed as $310,000.00.

35.     The *Federal Truth-in-Lending Disclosures* provided by Live Well to Plaintiff list the "Amount Financed" for her HECM loan as $160,725.54.

36.     The *Payment Plan* annexed to the *Home Equity Conversion Loan Agreement – Closed End* provided to Plaintiff confirmed the Payment Plan Type of Plaintiff's HECM loan as

"Line / Credit," and listed the "Principal Balance" of her HECM loan as $163,990.00.

**Live Well or Celink Paid Plaintiff's Property Taxes When They Were Not Overdue**

37.     Since September 2013 when her HECM loan was originated, Plaintiff has never been delinquent on the payment of the property or real estate taxes on her home subject to the HECM loan.

38.     Even though Plaintiff was *not* delinquent or in default in paying her property or real estate taxes, on or about December 28, 2015 Live Well or Celink paid the first installment of Plaintiff's biannual property taxes covering the period December 2015 through November 2016 (the "2015 Property Taxes").  That payment by Live Well or Celink was received by the Town of Southold Receiver of Taxes on December 31, 2015, ten (10) days before payment was due without penalty by January 10, 2016.

39.     Prior to paying the first installment of Plaintiff's 2015 Property Taxes, neither Live Well nor Celink provided notice to Plaintiff that either would be paying her property taxes.

40.     Unaware that Live Well or Celink paid the first installment of her 2015 Property Taxes, on January 7, 2016, Plaintiff timely paid the first installment of her 2015 Property Taxes.

**Live Well and Celink Violated Regulations and Standard HECM**
**Loan Contracts by Paying Property Taxes that were Not Delinquent**

41.     The uniform *Home Equity Conversion Loan Agreement – Closed End* (the "*Loan Agreement*"), executed by Plaintiff and Live Well, at Section 2.10.1 provides that a Borrower may elect to self-pay property charges, including property taxes.

42.     Live Well and Celink breached Sections 2.10.5 of the standard form *Loan Agreement,* and other sections of the uniform *Loan Agreement* set forth in Count I, and its duties of good faith and fair dealing set forth in Count I, by paying the first installment of Plaintiff's

2015 Property Taxes on or about December 28, 2015 when they were neither delinquent nor in default.

43.    The amount advanced by Live Well or Celink to pay the first installment of Plaintiff's non-delinquent 2015 Property Taxes was added by Live Well and Celink to the Principal Balance of Plaintiff's HECM loan, and began accruing interest and increased insurance premiums as of that date.

44.    Live Well and Celink did not provide notice to Plaintiff before they paid the first installment of Plaintiff's 2015 Property Taxes, that her property taxes were delinquent (which they were not) or that Live Well and/or Celink would be paying her 2015 Property Taxes.

45.    Section 2.15.2 of the *Loan Agreement* states that only when, "there is a legal proceeding that may significantly affect the Lender's rights in the Property (*such as a proceeding in bankruptcy, or condemnation or to enforce laws or regulations*), then the Lender may do and pay whatever is necessary to protect the value of the Property and the Lender's rights in the Property."  (Emphasis added).

46.    Similar to Section 2.15.2 of the *Loan Agreement*, Section 5 of Plaintiff's uniform *Reverse Mortgage - Home Equity Conversion -* (the "*Reverse Mortgage*") sets forth the conditions that must be satisfied before a Lender can pay the property taxes from a HECM line of credit for a Borrower, like Plaintiff, who made the self-pay election:

> If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (*such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations*), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.  (Emphasis added).

47.    Since Plaintiff timely paid her property taxes at all relevant times relevant, including the 2015 Property Taxes, payment of such taxes by Live Well and/or Celink was not "necessary to protect the value of the Property and the Lender's rights in the Property."

48.    Moreover, since no legal proceeding that "significantly affect[ed] the Lender's rights in the Property (such as a proceeding in bankruptcy, or condemnation or to enforce laws or regulations)" was ongoing when Live Well and/or Celink paid Plaintiff's non-delinquent 2015 Taxes, Live Well and Celink payment of those taxes was in breach of *Loan Agreement* Section 2.15.2 and Section 5 of the *Reverse Mortgage*.

49.    Live Well and Celink therefore breached *Loan Agreement* Section 2.15.2 and Section 5 of the *Reverse Mortgage,* and their duties of good faith and fair dealing, by paying Plaintiff's 2015 Taxes when they were neither delinquent nor in default.

50.    24 C.F.R. §206.205(e)(2), previously codified as 24 C.F.R. §206.205(c), authorizes a lender or servicer to make property tax payments on a borrower's HECM loan when, "the mortgagor fails to pay the property charges in a timely manner, …."

51.    As confirmed by HUD Mortgage Letter 2018-08, property taxes are considered "current" until determined to be delinquent by the local taxing authority.

52.    Even when a HECM borrower has failed to pay property or real estate taxes, HUD regulations and standard HECM loan contracts permit borrowers to cure any delinquency and default by entering into a Repayment Plan.   As recognized by HUD Mortgage Letters 2015-11 and 2016-07, so long as a borrower complies with the terms of such Repayment Plans, their HECM loans will revert to and remain in good standing and neither HECM lenders nor servicers may pay borrowers' property or real estate taxes.

14

53.     Live Well admitted to a policy and practice of paying property taxes for HECM loan borrowers who are *not* in default of their property taxes.  In response to a complaint letter from Plaintiff, dated April 9, 2016, Live Well admitted the following policy in a letter dated April 22, 2016:  "Any time a loan is referred to foreclosure Live Well financial will pay taxes *prior to delinquency* to protect their interest in the property."  Emphasis added.   Live Well repeated that policy in an August 31, 2017 letter to Plaintiff.  That Live Well policy is contrary to standard HECM loan contracts, federal regulations and HUD Mortgage Letters.

54.     Celink also admitted to a policy and practice of paying property taxes for HECM loan borrowers who are *not* in default of their property taxes.  In response to a complaint letter from Plaintiff Shakespeare to the New York Department of Financial Services, dated August 3, 2016, Celink admitted the following policy in a letter dated August 11, 2016:  "On December 28, 2015, property taxes were paid in the amount of $2,009.45 which paid for the 1st installment of the 2015 for the [sic] Southold Town taxes.  Please be advised that when a loan is in a foreclosure status, the property taxes are searched and paid current to protect the interest in the property."  That Celink policy is contrary to standard HECM loan contracts, federal regulations and HUD Mortgage Letters.

55.     Defendants Live Well's and Celink's acts, practices, policies and conduct in paying Plaintiff's and Class members' non-delinquent property taxes, and not providing prior or timely subsequent notice, was deceptive and inequitable in violation of standard HECM loan contracts, federal regulations and HUD Mortgage Letters.

56.     As a direct and proximate result of Defendant's breaches of Sections 2.10.5 and 2.15.2 of the uniform HECM *Loan Agreement*, Section 5 of the uniform HECM *Reverse*

*Mortgage,* and violations of 24 C.F.R. §205.205(e) (formerly 24 C.F.R. §205.205(c)) and HUD Mortgage Letters 2015-11 and 2016-07, Live Well and Celink unlawfully added fees, costs, charges interest and insurance premiums to the Plaintiff's HECM loan principal. Those breaches of standard HECM loan contracts and violations of federal regulations and HUD Mortgage Letters further constitute deceptive practices under New York GBL §349.

**Live Well and Celink Do Not Provide Required Notices**
**Before and After Paying HECM Borrowers' Property**
**Charges (Including Property Taxes) and Before Filing Foreclosure Lawsuits**

57.    Based upon the payment by Live Well or Celink of the first installment of Plaintiff Shakespeare's 2015 Property Taxes, a April 12, 2016 letter from Live Well to Plaintiff declared Plaintiff in default of her HECM loan agreements, even though:  (a) Plaintiff was not delinquent in paying her 2015 Property Taxes, before or after that date; (b) neither Live Well nor Celink provided notice to Plaintiff that they would be paying her property taxes before doing so on December 28, 2015; (c) neither Live Well nor Celink provided notice to Plaintiff until at least March 14, 2016 that they had paid her property taxes after doing so on December 28, 2015; and (d) neither Live Well nor Celink had ever before paid Plaintiff's property taxes, or stated an intention or need to do so.

58.    HUD Mortgage Letter 2014-21 (November 10, 2014) and 24 C.F.R. §206.205(e)(2)(ii), as revised in 2017, require a mortgagee to provide notice in writing to a HECM mortgagor "within 30 days" of receiving notification that a property charge payment is outstanding and owed by the HECM borrower.

59.    The first notice from Live Well and/or Celink disclosing that had they paid Plaintiff's 2015 Property Taxes was contained in a March 14, 2016 letter from Live Well, sent

more than *two months after* it or Celink paid Plaintiff's 2015 Property Taxes. That letter falsely states that because Live Well had not received "proof that the property taxes and/or insurance were current, we were required to advance the funds to pay for them on your behalf." The referenced "proof" was not requested by Live Well or Celink from Plaintiff before Live Well and Celink paid the first installment of Plaintiff's non-delinquent 2015 Property Taxes. The March 14, 2016 letter also was false in implying Plaintiff was late in paying her taxes which were timely paid by Plaintiff. That letter also deceptively failed to disclose that there was no other contractual basis in section 9 of her *Reverse Mortgage* for declaring her loan due and payable. A Celink letter dated August 11, 2016 was similarly deceptive in claiming that Plaintiff was in "tax default" and in failing to make the foregoing disclosure.

60.    A HECM lender must further provide the notice required by HUD Mortgage Letter 2015-11 (April 23, 2015), styled *Loss Mitigation Guidance for Home Equity Conversion Mortgages (HECMs) In Default Due to Unpaid Property Charges*.

61.    According to HUD Mortgage Letter 2015-11, "For HECM loans that are in default due to unpaid property charges, mortgagees *shall provide* a Property Charge Delinquency Letter to the mortgagor *as soon as the mortgagee receives notice* of a missed payment for property charges." Emphasis added. Yet, the first letter received by Plaintiff mentioning payment by Live Well or Celink of the first installment of Plaintiff's 2015 Property Taxes was dated March 14, 2016, over seventy-five days *after* they improperly paid Plaintiff's property taxes.

62.    Even though neither Live Well nor Celink has provided the required notices to Plaintiff, on April 12, 2016, Live Well declared Plaintiff's HECM loan due and payable, and in

default, when Plaintiff did not personally repay the improper advance made by Live Well and/or Celink toward the 2015 Property Taxes.

63.     Plaintiff was not in default of any provision of her HECM loan agreements on April 12, 2016, including the *Loan Agreement* and *Reverse Mortgage*.

64.     Nevertheless, on August 25, 2016, Live Well filed a second foreclosure lawsuit against Plaintiff in the New York Supreme Court for Suffolk County.

65.     Section 20 of Plaintiff's uniform *Reverse Mortgage* sets forth three contractual conditions that must be satisfied before Live Well is permitted to file a foreclosure lawsuit. Live Well did not comply with *any* of them before filing foreclosure lawsuits against Plaintiff in the New York Supreme Court, Suffolk County.

66.     Section 20(a) first requires that Plaintiff be in breach of an obligation under her *Note*, *Loan Agreement* or *Reverse Mortgage*.  Prior to the filing of the first foreclosure lawsuit by LiveWell in October 2015, Plaintiff was not in breach of any contractual obligation, and had made the repairs listed in the repair rider to her Loan Agreement.  Prior to the filing of the second foreclosure lawsuit by LiveWell in August 2016, Plaintiff was not in breach of any contractual obligation, and was neither delinquent nor in default in paying her property taxes.[1]

67.     Section 20(b) next requires that before filing a foreclosure lawsuit, Live Well must provide a notice that contains the following six (6) required disclosures:

(i)     The promise or agreement that borrower failed to keep or the default that has

---

[1]      Even though it had not provided the required notices before filing, Live Well had filed a prior foreclosure action in October 2015 against Plaintiff for an alleged violation of a Repair Rider to the *Loan Agreement*.  As admitted by Celink in an August 11, 2016 letter to the New York Department of Financial Services, it and Live Well were directed by HUD in February 2016 to dismiss that foreclosure lawsuit because a July 2015 appraisal of Plaintiff's home demonstrated that the required repairs were completed.  That first foreclosure lawsuit was dismissed on September 27, 2016.  Live Well conceded in an August 31, 2016 letter that that it rescinded Plaintiff's due and payable status premised on the repair rider dispute in February 11, 2016, months before filing the second foreclosure action premised on the 2015 Property Taxes.

occurred;

(ii)     The action that Borrower must take to correct that default;

(iii).    A date by which Borrower must correct the default.  That date will be at least 30 days from the date on which the notice is given;

(iv)     That if Borrower does not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another person may acquire the Property by means of Foreclosure and Sale;

(v)     That if Borrower meets the conditions stated in Paragraph 11 of this Security Instrument, Borrower will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(vi)     That Borrower has the right in any lawsuit for Foreclosure and Sale to argue that Borrower did keep his or her promises and agreements under the Note, under this Security Instrument or under the Loan Agreement, and to present any other defenses that Borrower may have.

68.     Neither Live Well nor Celink provided notice to Plaintiff prior to filing the foreclosure lawsuits in October 2015 or August 25, 2016 that provided all the information required by Section 20(b) of the *Reverse Mortgage*.

69.     Section 20(c) also requires that prior to filing any foreclosure lawsuit, the borrower must not have complied with the requirements of the *Reverse Mortgage* Section 20(b) notice.  However, neither Live Well nor Celink ever provided Plaintiff with a notice that complied with Section 20(b).

70.     Filing foreclosure lawsuits without complying with notice obligations in standard HECM loan contracts, federal regulations, and HUD Mortgage Letters is a breach of contract, breach of the duties of good faith and fair dealing, and a deceptive and inequitable practice that caused statutory and financial harm described herein to Plaintiff and Class members.

**Live Well Fails to Provide Notice or Comply with New York**
**Laws, Rules, and Regulations before Filing Foreclosure Lawsuits**

71.     New York has promulgated its own notice and cure rules that must be satisfied before a lender can file a foreclosure lawsuit.  Pursuant to 3 NYCRR §79.9, a foreclosure lawsuit may not be filed unless and until:  (a) the borrower "fails to pay real estate taxes;" (b) the lender provides "written notice" to the borrower within ten (10) days of learning the borrower has failed to pay real estate taxes; (c) the lender provides thirty (30) days to cure any claimed default.  The regulation further states that:  "The failure to pay taxes or maintain all required insurance shall not be construed to be a termination event unless the lender has complied with the provisions set forth in subparagraph (i) of this paragraph."

72.     In addition, RPL §§ 280(2)(f) and 280-a(2)(m) requires that before any foreclosure of a reverse mortgage can be filed in the New York courts, notice must be provided to either a third-party designated by the borrower or to the "local or county office for the aging of its intent to commence foreclosure proceedings."

73.     Upon information and belief, buttressed by a review of the dockets for both foreclosure lawsuits filed by Live Well against Plaintiff, Live Well did not comply with New York RPL §280(2)(f) and/or 3 NYCRR §79.9 prior to filing either the October 2015 foreclosure lawsuit or the August 2016 foreclosure lawsuit.

74.     Filing foreclosure lawsuits without complying with New York RPL §§ 280(2)(f) and 280-a(2)(m) and 3 NYCRR §79.9, is a breach of contract, breach of the duties of good faith and fair dealing and deceptive and inequitable practice, that caused statutory and financial harm described herein to Plaintiff and the New York Class members.

**Live Well's Two Foreclosure Lawsuits against Plaintiff were Dismissed, But
Not Until After they Caused Substantial Financial Injuries to Plaintiff**

75.    The first foreclosure was filed by Live Well against Plaintiff in the New York
Supreme Court on October 1, 2015 claiming failure to make a required repair to Plaintiff's
home.   That lawsuit was dismissed after HUD agreed that appropriate repairs had been
demonstrated by Plaintiff during a July 2015 inspection of her home and directed Live Well and
Celink to dismiss the lawsuit.

76.    Even though Live Well and/or Celink advised Plaintiff of their mistaken belief
that she was in default of a repair rider to the *Loan Agreement*, neither provided Plaintiff with
the required notices before filing that first foreclosure lawsuit.   Neither Live Well nor Celink
have removed improperly added fees, costs, charges, interest and insurance premiums to
Plaintiff's HECM loan balance related to the October 2015 foreclosure lawsuit.

77.    Live Well filed a second foreclosure lawsuit against Plaintiff in the New York
Supreme Court on August 25, 2016 based on Live Well's and/or Celink's improper payment of
Plaintiff's 2015 taxes that were not in default and that were timely paid by Plaintiff.    Plaintiff
filed an Answer denying the foreclosure claims made by Live Well.

78.    After Live Well filed the August 2016 foreclosure, and after Plaintiff understood
what Live Well and Celink had done, but not why, in October 2016, Plaintiff tendered a check,
by certified mail, to Live Well to repay in full the amount of property taxes paid by Live Well
or Celink in December 2015.  Live Well rejected this payment.

79.    In November 2016, Plaintiff again tendered a check, by certified mail, to Live
Well to repay in full the amount of property taxes paid by Live Well or Celink in December
2015.  Live Well accepted this check, and in a letter dated December 5, 2016, acknowledged the

repayment in full by Plaintiff.  Yet, despite Plaintiff's demands, Live Well and Celink have not removed any of the improperly-added fees, costs, charges, interest, or insurance premiums from the Principal Balance of Plaintiff's HECM loan resulting from Live Well's and Celink's failures to provide required notices and the resulting foreclosure lawsuits.

80.     However, despite Plaintiff's repeated demands, and her repayment of the amount improperly advanced by Live Well and Celink, or either of them, Live Well did not file a motion to dismiss its second foreclosure lawsuit against Plaintiff until February 1, 2017.

81.     The August 25, 2016 foreclosure lawsuit filed by Live Well against Plaintiff was finally dismissed on May 5, 2017.

82.     Plaintiff has been damaged and injured as a direct and proximate result of the unlawful acts of Live Well and Celink.  Between October 20, 2015 and April 18, 2017, Live Well and/or Celink added $13,940.64 to Plaintiff's HECM loan balance in fees, costs, and charges related to the conduct alleged in the foreclosure lawsuits.  Those fees, costs, and charges are listed on her monthly statements as "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorneys Fees / Costs" and "Payment for Property Preservation."  All, or a substantial portion, of those fees, costs, and charges, are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.[2]

---

[2]     The "Payment for Attorneys Fees / Costs" included fees, costs and expenses added to Plaintiff's HECM loan by Live Well based on Live Well's retention of Rosicki, Rosicki & Associates, P.C. to file foreclosure lawsuits against Plaintiff.  On March 27, 2018, the United States of America filed a civil lawsuit against Rosicki, Rosicki & Associates, P.C. in the United States District Court for the Southern District of New York, asserting that Rosicki, Rosicki & Associates, P.C. participated in a "scheme to generate expenses for foreclosure-related services that were falsely and fraudulently inflated with knowledge that those expenses would be passed on to, and paid by, the Federal National Mortgage Association ('Fannie Mae')."    On June 23, 2018, the federal court denied the motion to dismiss the claims filed against Rosicki, Rosicki & Associates, P.C. and its wholly-owned companies Enterprise Process Service, Inc., Paramount Land, Inc. and Threshold Land, Inc.  *United States ex rel. Grubea v.*

83.   In addition, Live Well and Celink have charged, *and continue to charge*, interest to Plaintiff's HECM account based on the improper and unlawful fees, costs, and charges added to the principal of Plaintiff Shakespeare's HECM loan.

84.   In addition, Live Well and Celink have charged, *and continue to charge*, increased Mortgage Insurance Premiums based on the improper and unlawful fees, costs, and charges added to the principal of Plaintiff's HECM loan.

85.   Live Well and Celink imposed and added appraisal fees on Plaintiff's HECM loan principal balance after declaring Plaintiff's loan due and payable in contravention of 24 C.F.R. §206.125(b), which directs that, [i]f the mortgage is due and payable, the appraisal shall be at the mortgagee's expense" and recoverable only from "any sale by the borrower or other permissible party."

86.   Before filing this action, Plaintiff requested in writing that Live Well and Celink refund and reverse the additional fees, costs, charges and interest added to her HECM principal loan balance.  In an August 31, 2017 letter, Live Well refused.

## VI.   CLASS ACTION ALLEGATIONS

87.   Plaintiff brings this action against Live Well pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the additional Classes defined as follows:

---

*Rosicki, Rosicki & Assoc., P.C.*, 318 F. Supp. 3d 680, 700 (S.D.N.Y. 2018) ("The complaints allege that Rosicki improperly passed off foreclosure expenses submitted by their affiliates as the actual and reasonable costs of the services performed, thereby masking enormous mark-ups applied by the affiliates.").  In 2018, Live Well began replacing Rosicki, Rosicki & Associates, P.C. as counsel in foreclosure lawsuits pending in New York, suggesting it was aware of the conduct being alleged against Rosicki, Rosicki & Associates, P.C., while not removing or adjusting costs and expenses added to HECM borrowers' loan balances based on the costs and expenses claimed by Rosicki, Rosicki & Associates, P.C.  Defendants Live Well and Celink are hereby noticed that if it is discovered that Rosicki, Rosicki & Associates, P.C. and its affiliated companies inflated foreclosure-related expenses added to Plaintiff's and Class members' HECM loans, Plaintiff will amend, or seek leave to amend, this Complaint to add such claims to this action, and seek the relation back of such claims to the filing date of this lawsuit.

(a).    The National Property Tax Class.  All borrowers, and heirs and estates of borrowers, who had a closed-end HECM loan provided by Live Well, who did not elect to have Live Well pay their property taxes, whose property or real estate charges were paid by Live Well or its HECM servicer(s) when those property or real estate charges were neither delinquent nor in default with local municipalities, or current on a Repayment Plan, when paid by Live Well or its HECM servicer(s), and whose HECM loans were assessed fees, costs, charges, interest and/or insurance premiums related to the payment by Live Well or its HECM servicer(s) of such property taxes, including but not limited to fees or charges resulting from the filing of a foreclosure lawsuit.

(b).    The New York Property Tax Subclass.  All members of the Live Well National Class whose homes were located within the State of New York.  The New York Property Tax Subclass includes all persons sued by Live Well for foreclosure of HECM loan in the New York Courts for failure to pay real estate taxes where: (i) real estate taxes were timely paid by the borrower; or (ii) where a borrower is not delinquent or in default of payment plan established to repay real estate taxes.

88.    Plaintiff brings this action against Live Well and Celink pursuant to FED. R. CIV.

P. 23(a), 23(b)(2) and 23(b)(3):

(a).    The National Failure to Notice Class.  All borrowers, and heirs and estates of borrowers, who had a closed-end HECM loan provided by Live Well or serviced by Celink (even if provided by another HECM lender), whose HECM loan was declared due and payable or in default for failure to repay Property Charges, and whose HECM loans were thereafter accessed fees, costs, charges, interest and/or insurance premiums as a result of the HECM loan being designated due and payable or in default, including but not limited to fees or charges resulting from the filing of a foreclosure lawsuit, where:  (i) Live Well and Celink did not provide written notice of a missed or due Property Charge payment as soon as notice of the missed or due Property Charge payment was known to Live Well or Celink; (ii) Live Well and Celink did not provide written notice prior to filing a foreclosure lawsuit explaining the default that has occurred; (iii) Live Well and Celink did not provide written notice prior to filing a foreclosure lawsuit explaining the right to correct a default; (iv) Live Well and Celink did not provide written notice prior to filing a foreclosure lawsuit explaining how a Borrower could correct a default; or (v) Live Well and Celink did not provide written notice prior to filing a foreclosure lawsuit explaining when a Borrower could correct a default.

(b).    The New York Failure to Notice Subclass.  All members of the National Failure to Notice Class whose homes were located within the State of New York.  The New York Failure to Notice Subclass includes all persons sued by Live Well for foreclosure of HECM loan in the New York Courts where neither Live Well nor Celink provided: (i) written notice to the borrower within ten (10) days of learning that the borrower has

failed to pay real estate taxes; (ii) written notice providing the borrower with thirty (30) days to cure any claimed default; and (iii) written notice of intent to file a foreclosure lawsuit to either a third-party designated by the borrower or to the local or county office for the aging prior to filing of the foreclosure lawsuit.

89.    Excluded from the National Property Tax Class, the New York Property Tax Subclass, the National Failure to Notice Class and the New York Failure to Notice Subclass (collectively, the "Classes") are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff assigned to this action.

90.    The Class Period(s) for the Classes shall be the full period permitted by the statute(s) of limitation applicable to each claim possessed by the members of the Classes, taking into consideration the legal or equitable tolling of any statute of limitations.

91.    Upon information and belief, the Classes each contain thousands of individuals whose identities can be readily ascertained from Defendants' books and records.  Plaintiff does not know the exact size or identities of the proposed classes, since such information is in the exclusive control of Defendant.

92.    Common questions of law and fact raised in this action on behalf of the Classes include the following:

(a)    Whether Live Well and Celink paid the property taxes on the homes of Class members when those property taxes were neither delinquent nor in default with local municipalities;

(b)    Whether Live Well's and Celink's payment of property taxes on the homes of Class members that were neither delinquent nor in default with local municipalities

violated standard HECM loan contracts;

(c)    Whether Live Well's and Celink's payment of property taxes on the homes of Class members that were neither delinquent nor in default with local municipalities violated 24 C.F.R. §206.205 and standard HECM loan contracts;

(d)    Whether Live Well and Celink failed to provide timely notice to HECM borrowers before paying property charges payable by the borrowers;

(e)    Whether Live Well and Celink failed to provide timely notice to HECM borrowers after paying property charges payable by the borrowers;

(f)    Whether Live Well and Celink failed to provide timely notice to HECM borrowers before filing foreclosure lawsuits in New York;

(g)    Whether Live Well and Celink failed to provide notice to either a third-party designated by the borrower or to the New York local or county office for the aging of its intent to commence foreclosure proceedings.

(h)    Whether payments of the property taxes on the homes of Class members violated HECM loan agreements, regulations, handbooks, procedures, guidance and/or opinions that require the lender to add loan or corporate advances for property charges, including taxes, to the principal balance of the HECM loan;

(i)    Whether Live Well and Celink filed foreclosure lawsuits in violation of HECM loan agreement or federal notice requirements;

(j)    Whether Live Well and Celink filed foreclosure lawsuits in violation of New York laws, rules, regulations, procedures, guidance and/or opinions, including RPL §§280(2)(f) and 280-a(2)(m) and 3 NYCRR §79.9;

(k)      Whether Live Well and Celink were unjustly enriched by their inequitable and unlawful acts alleged in this Complaint; and

(l)      Whether the Class members are entitled to damages, restitution, disgorgement, a constructive trust, declaratory relief and/or injunctive relief as a result of Live Well's and Celink's conduct, and the proper measure of damages and other relief.

93.      Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained able counsel with extensive experience in consumer and borrower class action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

94.      The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

95.      The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class and New York Subclass members, which would establish incompatible standards of conduct for Live Well and Celink.

96.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them. The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. The Court will encounter no difficulty in managing this action as a class action.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (AGAINST LIVE WELL AND RMF ON BEHALF OF PLAINTIFF AND ALL CLASSES)

97.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

98.    Plaintiff and Class members had HECM loan agreements provided and executed by Live Well.

99.    Those HECM loan agreements were uniform and/or standardized instruments that included standard *Home Equity Conversion Loan Agreement Closed End* and a *Reverse Mortgage (Home Equity Conversion)*.

100.    As alleged above, Live Well and its agent servicer(s) breached Sections 2.10.5 of its *Loan Agreement* with Plaintiff and comparable sections of its *Loan Agreements* with Class members by paying the property taxes on Plaintiff's and Class members' homes when those property taxes were neither delinquent nor in default with their local municipalities and/or thereafter declaring Plaintiff and Class members to be in default of the HECM loan agreements when Class members did not reimburse Live Well for such improper payments (especially after the advances were added to the principal of Class members' HECM loans), whether or not Live Well and Celink subsequently filed foreclosure lawsuits against Class members emanating from their improper payment of taxes or other property charges, and by failing to provide the notices as required by the Loan Agreements and federal and state rules and regulations.

101.    Live Well and its agent servicer(s) breached Section 2.4 of the standard *Loan Agreements* by imposing fees and charges not permitted under 24 CFR §206.207(a).

102.   Live Well and its agent servicer(s) breached Section 2.12.1 of the standard *Loan Agreements* by charging Plaintiff and Live Well National Class members interest on increases to HECM loan balances caused by the payment of property taxes when those property taxes were neither delinquent nor in default with local municipalities.

103.   As discussed above, Live Well and its agent servicer(s) breached Sections 5, 9, and 20 of its *Reverse Mortgage* with Plaintiff and comparable sections of its *Reverse Mortgages* with Live Well National Class members by paying the property taxes on Plaintiff's and Class members' homes when those property taxes were neither delinquent nor in default with their local municipalities and/or thereafter declaring Plaintiff and Class members to be in default of the HECM loan agreements because they did not reimburse Live Well for its unnecessary payment, whether or not Live Well subsequently filed foreclosure lawsuits against Class members, and by failing to provide notice as required by standard HECM loan contracts, federal and state rules and regulations and HUD Mortgage Letters.

104.   Live Well and its agent servicer(s) breached Section 6 of the standardized and uniform *Reverse Mortgages* by making appraisals and inspections of Plaintiff's and Class members' home without prior notice and based on the unreasonable and unlawful declaration by Live Well and Celink that Plaintiff and Class members were in default of their HECM loan agreements based upon the supposed failure to pay property taxes or to reimburse Live Well for its unnecessary payment of such taxes or other property charges.

105.   Live Well and its agent servicer(s) breached Section 8 of the standard *Reverse Mortgages* by charging fees and costs related to the payment of property taxes that have not been authorized by the Secretary of HUD.

106.   Live Well and its agent servicer(s) breached Section 9(b) of the standard *Reverse Mortgages* by failing to provide the notices, and accompanying rights to loss mitigation and cure set forth in Section 9(d).

107.   Plaintiff and Class members have been injured and damaged as a direct result of Live Well's and its agent servicer(s)' breaches of the standard *Loan Agreements* and *Reverse Mortgages.*

108.   As a direct result of Live Well's and its agent servicer(s)' breaches of the standard *Loan Agreements* and *Reverse Mortgages,* Live Well and its agent servicer(s) imposed and/or collected fees, costs, charges and interest that have been added to the principal of Plaintiff's and Class members' HECM loans, paid from the retained equity in their homes, or paid by Plaintiff and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiff and all Class members.

109.   To remedy Live Well's and its agent servicer(s)' breaches of contract, Plaintiff and the Classes seek damages, equitable remedies including an injunction and all other appropriate remedies.

110.   RMF is a damage defendant to this claim, capable of remedying Live Well's and Celink's unlawful acts by removing wrongful collected fees, costs, charges, interest and insurance premiums that have been added to the principal of Plaintiff's HECM loan.

## SECOND CAUSE OF ACTION

**BREACH OF DUTIES AND COVENANTS OF GOOD FAITH AND FAIR DEALING**

**(AGAINST LIVE WELL AND RMF ON BEHALF OF PLAINTIFF AND ALL CLASSES)**

111.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

112.    Plaintiff and Class members had HECM loan agreements provided and executed by Live Well.

113.    Those reverse mortgage agreements are uniform and/or standardized instruments that include standardized *Home Equity Conversion Loan Agreement Closed End* and a *Reverse Mortgage (Home Equity Conversion)*.

114.    Live Well and its agent servicer(s) possessed discretion to interpret and apply the HECM loan agreements provided to Plaintiff and Class members.

115.    Live Well and its agent servicer(s) owed Plaintiff and Class members implied covenants and duties and covenants of good faith and fair dealing to not deprive them of the benefits of the HECM loan agreements, and not to apply its discretion over the agreements arbitrarily, irrationally, in bad faith, or in a manner that benefitted Live Well and harmed Plaintiff and Class members.  Live Well and/or its agent servicer(s) breached its implied covenants and duties of good faith and fair dealing by acting with bad faith and applying its discretion in a manner designed to harm Plaintiff and Class members and to financially benefit Live Well.

116.    As a result of its breaches of its implied duties and covenants of good faith and fair dealing, Live Well and/or its agent servicer(s) imposed and/or collected fees, costs, charges

and interest that have been added to the principal of Plaintiff's and Class members' HECM loans, paid from the retained equity in their homes, or paid by Plaintiff and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiff and all Class members.

117.    RMF is a damage defendant to this claim, capable of remedying Live Well's and Celink's unlawful acts by removing wrongful collected fees, costs, charges, interest and insurance premiums that have been added to the principal of Plaintiff's HECM loan.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

### (AGAINST LIVE WELL, CELINK AND RMF ON BEHALF OF PLAINTIFF, THE NEW YORK PROPERTY TAX SUBCLASS AND THE NEW YORK FAILURE TO NOTICE SUBCLASS)

118.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

119.    The uniform and/or standardized HECM loan agreements of Plaintiff and New York Subclass members contain a "Governing Law" provision requiring compliance with, "Federal law and the law of the jurisdiction where the property is located."

120.    Plaintiff and the members of the New York Subclasses are "persons" within the meaning of GBL §349(h).

121.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

122.    Defendants Live Well's and Celink's misleading and deceptive acts, policies, and practices adversely impacted Plaintiff and other New York Subclass members, and therefore constitute consumer-oriented conduct under GBL §349 that resulted in actual and direct harm to Plaintiff and New York Subclass members.

123.    By engaging in the conduct alleged in this Complaint, Live Well and Celink engaged in deceptive and misleading acts and practices prohibited by GBL §349 in that their conduct had a tendency and likelihood to deceive Plaintiff and New York Subclass members among the persons to whom such conduct was and is targeted.

124.    Defendants Live Well and Celink engaged in deceptive acts, policies, and

practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

(a).   Deceptively and unlawfully paying the property taxes or property charges on the homes of Plaintiff and New York Property Tax Subclass a members when those property taxes were neither delinquent nor in default with local municipalities;

(b).   Deceptively and unlawfully paying the property taxes or property charges on the homes of Plaintiff and New York Property Tax Subclass a members in violation of the terms of loan and mortgage agreements;

(c).   Deceptively and unlawfully paying the property taxes or property charges on the homes of Plaintiff, and New York Property Tax Subclass a members in violation of HUD regulations, including but not limited to 24 C.F.R. §206.205(e) (formerly 24 C.F.R. §206.205(c));

(d)   Deceptively and unlawfully declaring reverse mortgage loans in default based on the payment of property taxes or property charges by Live Well and Celink when Plaintiff's and New York Property Tax Subclass members' property taxes, property charges or repayment plans were neither delinquent nor in default with local municipalities at the time of Live Well's and Celink's payment;

(e)   Deceptively and unlawfully filing foreclosure lawsuits against Plaintiff and New York Failure to Notice Subclass members without have provided prior notice to either a third-party designated by the borrower or to the New York local or county

office for the aging of its intent to commence foreclosure proceedings, as required by New York RPL §§280(2)(f) and 280-a(2)(m);

(f).     Filing foreclosure lawsuits against Plaintiff, New York Property Tax Subclass members claiming defaults for the claimed failure to pay of property taxes or property charges who have not "fail[ed] to pay real estate taxes," in violation of 3 NYCRR §79.9;

(g).     Deceptively and unlawfully paying the property taxes or property charges on the homes of Plaintiff and New York Failure to Notice Subclass members without notice in violation of mortgage and loan agreements, federal regulations and HUD Mortgage Letters that require prior notice, including but not limited to 24 C.F.R. §206.205(e)(2)(ii) and HUD Mortgage Letters 2014-21 and 2015-11;

(h).     Deceptively and unlawfully filing foreclosure lawsuits against Plaintiff and New York Failure to Notice Subclass members claiming defaults for the payment of property taxes or property charges without having complied with nor completed the notice and loss mitigation procedures required by HECM loan agreements federal regulations and HUD Mortgage Letters, including but not limited to the Section 20 of the standard *Reverse Mortgages* 24 C.F.R. §206.205(e)(2)(ii) and HUD Mortgage Letter 2015-11;

(i).     Deceptively and unlawfully filing foreclosure lawsuits against Plaintiff and New York Failure to Notice Subclass members premised on defaults for the claimed failure to pay property taxes or property charges without having complied with nor completed the notice and cure procedures required by 3 NYCRR §79.9; and/or

(j).    Charging appraisal fees to New York Class members after declaring their loans due and payable, in violation of 24 C.F.R. §206.125(b).

125.    In addition to their pecuniary losses, Plaintiff and the New York Subclasses suffered actual harm as a result of Live Well's and Celink's violations of GBL §349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiff and the New York Subclasses due to Live Well's and Celink's violations of GBL §349.

126.    Defendants Live Well's and Celink's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff, and the New York Subclasses.  Live Well's and Celink's violations of GBL §349 caused Plaintiff's and New York Subclass members' injuries because absent their violations Plaintiff and New York Subclass members would not have been charged the unlawful fees, costs, charges, and increased interest and insurance premiums imposed on them (including their estates) and/or their reverse mortgages.

127.    Plaintiff and the New York Subclasses are entitled to pursue claims against Live Well and Celink during the GBL §349 Class Period for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorney's fees pursuant to GBL §349(h) to redress Live Well's and Celink's violations of GBL §349(a).

128.    Plaintiff and New York Subclass members who were sixty-five years of age or older at the time of Live Well's and Celink's violations of GBL §349 are entitled to pursue additional claims and remedies against Live Well and Celink pursuant to GBL §349-c to redress Live Well's and Celink's violations of GBL §349(a) perpetrated against one or more elderly

persons.

129.    RMF is a damage defendant to this claim, capable of remedying Live Well's and Celink's unlawful acts by removing wrongful collected fees, costs, charges, interest and insurance premiums that have been added to the principal of Plaintiff's HECM loan.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (AGAINST LIVE WELL AND CELINK ON BEHALF OF PLAINTIFF AND ALL CLASSES)

130.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

131.    Defendants Live Well and Celink have violated the common laws of unjust enrichment in all the states of the United States and the District of Columbia.

132.    Defendants Live Well and Celink have benefited from the unlawful and inequitable acts alleged in this Complaint.

133.    Plaintiff and Class members have conferred upon Live Well and Celink a traceable economic benefit resulting from the unlawful and inequitable acts alleged in this Complaint.

134.    The economic benefits derived by Live Well and Celink are a direct and proximate result of Live Well's and Celink's unlawful and inequitable acts alleged in this Complaint.

135.    Defendants Live Well and Celink are not permitted to pay property taxes or impose additional fees, costs principal, interest, and insurance premiums on National Property Tax Class members who were neither delinquent or in default on their obligations to pay property taxes, declare Class members in default of HECM loan agreements based on improper payments of property taxes, or to file foreclosure lawsuits bases on improper payments of property taxes.

136.    Defendants Live Well and Celink are not permitted to impose additional fees,

costs principal, interest, and insurance premiums on National Failure to Notice Class members who for whom Live Well and Celink with not provide timely and valid notices before and after paying property charges and before filing foreclosure lawsuits.

137.    Payments to Live Well and Celink resulting from inequitable and unlawful acts rightfully and equitably belong to Plaintiff and Class members.

138.    Under the common law of all states and territories within the United States, it would be inequitable and unjust for Live Well and Celink to retain any portion of the charges, costs principal, interest and insurance premiums resulting from Live Well's and Celink's inequitable and unlawful acts.

139.    Plaintiff's and Class members' unintentional conferral of profits onto Live Well and Celink were brought about by Live Well's and Celink's unfair, deceptive, misleading and inequitable methods, acts and practices alleged in this Complaint.

140.    Defendants Live Well and Celink should be compelled to provide restitution or to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received from them.

141.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Live Well and Celink traceable to Plaintiff and Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendants as follows:

A.      An order certifying this case as a class action under FED. R. CIV. P.  23, and appointing Plaintiff and her counsel to represent the Classes;

B.      An order declaring that Live Well's alleged acts and practices constitute breaches of contract;

C.      An order declaring that Live Well's alleged acts and practices constitute breaches and violations of the duties and covenants of good faith and fair dealing;

D.      An order declaring that Live Well's alleged acts and practices constitute violations of New York GBL §349;

E.      An order declaring that Live Well's alleged acts and practices constitute unjust enrichment;

F.      An order declaring that Celink's alleged acts and practices constitute violations of New York GBL §349;

G.      An order declaring that Celink's alleged acts and practices constitute unjust enrichment;

H.      A permanent injunction to remedy Live Well's continuing breaches of contract and violations of the duties and covenants of good faith and fair dealing as alleged herein;

I.      A permanent injunction to remedy Live Well's and Celink's continuing violations of New York GBL §349 and unjust enrichment as alleged herein;

J.      To further remedy Live Well's and Celink's unjust enrichment, an order

requiring restitution and disgorgement by Defendants to Plaintiff and the Classes and the creation of a constructive trust for the benefit of Plaintiff and the Classes;

K.   An order requiring RMF to remove all unlawfully-added fees, costs, charges, interest and insurance premiums from Plaintiff's HECM loan;

L.   Pre-judgment and post-judgment interest to the fullest extent permitted by law;

M.   Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

N.   All such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims to the extent authorized by law.

DATED: December 21, 2018

**TUSA P.C.**

/s/ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

-- and –

150 Motor Parkway, Ste. 401
Hauppauge, NY 11788
Tel. (631) 407-5100

**AARP FOUNDATION LITIGATION**
Julie Nepveu (*pro hac vice* forthcoming)
jnepveu@aarp.org
Maame Gyamfi (*pro hac vice* forthcoming)
mgyamfi@aarp.org
601 E Street, NW
Washington, DC  20049
Tel. (202) 434-2060

**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
217 Centre Street, 6th Floor
New York, NY 10013
Tel: (212) 847-8315

***Attorneys for Plaintiff Margaret Shakespeare***
***and Proposed Class Counsel***