UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARGARET SHAKESPEARE, on behalf
of herself and all others similarly situated,

                Plaintiff,                  **REPORT AND**
                                           **RECOMMENDATION**
        -against-                     CV 18-7299 (SJF)(AYS)

LIVE WELL FINANCIAL, INC.,
COMPU-LINK CORP., doing business as
CELINK, and REVERSE MORTGAGE
FUNDING, LLC.,

                Defendants.
-------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

       This is an action commenced by Plaintiff Margaret Shakespeare ("Plaintiff" or

"Shakespeare") against Defendants Live Well Financial, Inc. ("Live Well"), Compu-Link

Corporation, d/b/a/ Celink ("Celink") and Reverse Mortgage Funding, LLC ("RMF"). See

Docket Entry herein ("DE") 1. Live Well is presently in bankruptcy, in an involuntary

proceeding pending in the District of Delaware. See DE 100.[1]

       Plaintiff owns property upon which she obtained a home equity conversion loan (the

"Loan") and, in connection therewith, entered into a Home Equity Conversion Mortgage (the

"HECM" or the "Mortgage"). The HECM is a mortgage instrument akin to those commonly

referred to as a "reverse" mortgages. Such mortgages generally, require no re-payment until

either the death of the borrower, or transfer of the mortgaged property. As a home equity

---

[1]     Live Well's counsel has been relieved from representing Live Well herein. Since entering
bankruptcy, Live Well has not engaged new counsel. Plaintiff has not discontinued this matter as
against Live Well. She states that she will continue to monitor the bankruptcy proceedings, and if
appropriate, may file a motion in that proceeding to lift the stay imposed therein. See Electronic
Order dated June 20, 2019; DE 100.

instrument, Plaintiff was permitted to draw funds up to an amount authorized by the Loan. Plaintiff's claims are based upon the alleged improper and unlawful payment of property taxes on her home in 2015. Briefly stated, Plaintiff alleges that the payment of her taxes took place without justification or notice, and that such payment resulted in the unlawful assessment of fees, adding to the total of Plaintiff's Loan.

Styling this action as a class action pursuant to Rules 23(a)(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff alleges a "policy and practice of improperly paying the property taxes of homeowners" with HECM's "before those taxes are due, without contractual or other legal authority to do so and without providing notice to homeowners." DE 1 at ¶ I(2). She alleges claims for breach of contract, breach of the implied covenants and duties of good faith and fair dealing, unjust enrichment, and violation of Section 349 of the General Business Law of the State of New York, N.Y. Gen. Bus. L. §349 ("Section 349").

The Honorable Sandra J. Feuerstein referred three motions in this lawsuit to this Court for Report and Recommendation. The Court held oral argument as to those motions on February 4, 2020. It thereafter issued Reports and Recommendation as to two of those motions — the motion interposed by Defendant Celink appearing as Docket Entry herein 109, and that of Defendant RMF, appearing at Docket Entry No. 82. In those decisions, this Court recommended that the District Court grant RMF's motion to dismiss, and that it deny Celink's motion. Decision was reserved as to Celink's first motion to dismiss, appearing at Docket Entry No. 83.

Now, for the reasons set forth below, the Court recommends the motion be granted. In light of the fact that this Court's Reports and Recommendation dispose of this case against all Defendants except for Live Well, which remains in bankruptcy, it is recommended that the case

be closed subject to re-opening only if there is a change in that entity's status, and an ability to state a claim.

BACKGROUND

I.   Factual Background

The facts set forth below are drawn from the parties' submissions as well as representations made during oral argument. At that argument, all counsel agreed that it was appropriate, within the context of the present motion to dismiss, to consider all documents referred to in their papers. These documents include loan documents, judicial documents generated during the course of foreclosure proceedings, as well as correspondence among the parties.

Before turning to the facts, the Court notes that Plaintiff filed certain documents under seal. See DE 83-15; 83-17. It appears that such sealed filings were made without Court approval. It is clear that Plaintiff's sealed filing includes a letter submitted publicly in connection with Celink's motion to dismiss. In any event, the Court observes no reason for any documents in this matter to be shielded from the public. Accordingly, this Court will refer to all motion documents filed herein, and orders that the entire docket be unsealed.

   A.   The Parties and the Loan

Plaintiff is a Suffolk County homeowner who obtained the Loan in September of 2013. DE 1 at ¶¶ 3;14. Live Well originated the loan to Plaintiff. Although it is now in bankruptcy, it was asserted, at the time of the Complaint herein, to be a lender and servicer of HECM loans in New York and throughout the United States. DE 1 at ¶15.  Celink was the sub-servicer of the loan under Live Well, a role it continues for RMF. As sub-servicer, Celink was, and is, responsible for certain administrative duties. Those duties include handling customer service

inquiries. <u>See</u> DE 83-16. Here, Celink has corresponded with Plaintiff, and attempted to explain the reasons for the actions taken in connection with her mortgage.

### B.  Loan Documents Executed on September 3, 2013

Plaintiff executed separate documents on the day of the closing of the Loan. Those documents are referred to in the Complaint as "standard HECM loan contracts." DE 1 at ¶ 4. Such standard documents are: (1) a uniform note, (2) a uniform mortgage or deed of trust and (3) a uniform conversion loan agreement. DE 1 at ¶¶ 22–23. The uniformity of these documents stems from the fact that reverse mortgages are authorized by the Federal Housing Administration ("FHA") and insured by the United States Department of Housing and Urban Development ("HUD"). <u>See</u> DE 1 at 2 and ¶ 19. Certain non-uniform HECM terms are tailored to conform with state laws. <u>Id.</u> at ¶ 22. In New York, HECM's are referenced in Section 280 and 280-a of the New York State Real Property Law (the "RPL") and Section 6-h of the New York State Banking Law. <u>Id.</u> at ¶ 23.

The particular loan documents executed in connection with Plaintiff's HECM are considered in the context of this motion. They are: (1) a Fixed Rate Note-Closed End (Home Equity Conversion) (the "Note") DE 83-3 at 1–2; (2) a "Reverse Mortgage (Home Equity Conversion) (the "HECM" or the "Mortgage") DE 83-4 at 1–11; (3) a "Home Equity Conversion Loan Agreement Closed End" (the "Loan  Agreement") DE 83-5 at 1–9 and 11–19 and (4) a Repair Rider to the Loan Agreement (the "Repair Rider") DE 83-5 at 10.

### 1.  The Note

The Note was entered to among Plaintiff, Live Well and HUD. HUD is a party to the Loan because it insures the Loan; it is not a separate lender. <u>See</u> DE 83-3. The amount available under the Loan, as set forth in the Note, was $465,000. Any amount borrowed under the Loan

was to become due and payable on March 11, 2099. Plaintiff incurred no personal liability for any amount due under the Note. Id. at ¶ 4(c). Instead, payment in full of any amount advanced under the Loan was to become due and payable, generally, upon the death of Plaintiff, or the sale of the property. Id. at ¶ 6(a). In addition, full payment of all amounts due under the Loan would also become due if "an obligation of [Plaintiff] . . . is not performed." Id. at ¶ 6(b). As to notice, the Note provides that, unless "applicable law requires a different method" notices under the terms of the parties' agreement was to be mailed to Plaintiff at her address. Id. at ¶ 8.

2. The Mortgage

The Mortgage was entered into by Plaintiff as the Mortgagor, also referred to as "Borrower", and was executed by Plaintiff. DE 83-4. The Mortgage is a security instrument that secures to the lender the repayment of amounts advanced to Plaintiff, including all advances up to a maximum amount of $465,000. It also secures any amount advanced under Section 5 of the Mortgage. That section of the Mortgage, entitled: "Charges to Borrower and Protection of Lender's Rights in the Property" references Paragraph 2 of the Mortgage. Paragraph 2 requires Plaintiff to pay, inter alia, property taxes on the mortgaged Property. Section 5 of the Mortgage provides that the Lender is to pay all charges not included in Section 2. Those expenses are recognized to be the responsibility of Plaintiff, as the Borrower, to be paid on time directly to the entity that is owed payment.

Section 5 goes also addresses the Lender's rights if "failure to pay would adversely affect the Lender's interest in the Property." In the event that Plaintiff, as Borrower, failed to make payments agreed to be paid or "there is a legal proceeding that may significantly affect the Lender's rights in the Property . . . then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property including the payment of taxes . . .

." DE 83-4 at 3 (emphasis added). Any amounts advanced in connection with such protection of the Lender's interest in the Property are stated, under the terms of the Mortgage, to "become an additional debt of" the Borrower, and such amounts are to be secured by the Mortgage. Id.

The Mortgage provides that amounts due thereunder (with the approval of HUD) may be declared due and payable if, among other situations, an obligation of the Borrower is not performed. With respect to the declaration of the Loan as "due and payable, the Mortgage requires the Lender to notify HUD, and to obtain permission to commence a foreclosure proceeding. Under the terms of the Mortgage, foreclosure may not be commenced until the borrower has 30 days after notice to take certain actions, including correcting the matter that resulted in the due and payable notice.

Foreclosure of the Mortgage is more specifically referred to in Paragraph 20 of the Mortgage. DE 83-4 at 6. There, it states that the lender may commence a foreclosure proceeding requiring full payment of amounts due if the Borrower fails to "keep any promise or agreement made in [the Mortgage], the Note or the Loan Agreement . . . ." Id. at 7. Prior to commencing any such proceeding the Mortgage requires the Lender to send the Borrower a notice that states:

- the promise or agreement that has not been kept or the default that has occurred,

- the action that the Borrower must take to correct the default,

- the date by which the Borrower must correct the default (which must be at least 30 days after notice),

- that if the Borrower does not correct the default by the stated time the Lender or another may acquire the mortgaged property by means of foreclosure and sale,

- that if the Borrower meets the conditions for reinstatement set forth in the Mortgage she may reinstate her rights,

- that the Borrower has the right in any lawsuit for foreclosure and sale to argue that she has cured the default and,

- that the Borrower must correct the default by the date stated in the notice. DE 83-4 at 7.

3.      The Loan Agreement

The Loan Agreement sets forth various financial obligations of the borrower. It gives the borrower the right to elect to pay charges, including property taxes. It also sets forth the consequences that follow non-payment of such charges in a timely manner. Specifically, under Section 2.10.5 of the Loan Agreement, it states that if the borrower fails to pay property charges in a timely manner, and has not elected to have the lender pay such charges, the lender shall pay those charges as a "Loan Advance." Such an advance, defined in Section 1.2, is to be made from a line of credit as if made by the borrower. DE 83-5 at 5; 3.

4.      The Repair Rider to the Loan Agreement (Exhibit 3 to the HECM)

Annexed to the Loan Agreement as Exhibit 3 thereto, is a document that was separately executed by Plaintiff entitled "Repair Rider to Loan Agreement" (the "Repair Rider"). DE 83-5 Ex. 3. The Repair Rider makes reference to Plaintiff's obligation to make certain repairs to her house as a condition of the Loan. In particular, it refers to the obligation to "correct all peeling paint." Id. It also delineates Live Well's and Plaintiff's promises under the Repair Rider. The Repair Rider states that Live Well was to set aside $2,100.00 from the amount that could be borrowed under the HECM to cover the cost of repairs. DE 83-5 Ex. 3 at ¶ I (A). Because the nature of the required repair was minor, Plaintiff was allowed to make the repair after the closing of the Loan. See DE 83-5.

The Repair Rider obligated Plaintiff to begin the repair work on September 3, 2013, and to have the repair complete within one year of that date. DE 83-5 Ex. 3 at ¶ II (B). She was

required to furnish to Live Well any documents relating to the repair as requested by Live Well or HUD. DE 83-5 at ¶ II (D). Live Well had the right under the Repair Rider to refuse to make any payments under the Loan. DE 83-5 at ¶ I (E).

The Repair Rider also speaks to Live Well's right to protect the property secured by the Loan. In particular, if Plaintiff were to be in default of her obligations under her mortgage, Live Well had the right to "do and pay whatever is necessary to protect the value of the Property . . . ." DE 83-4 at 3. Such expenditures would then be considered as advances under the terms of the Loan.

C.      2015 Correspondence with Plaintiff Prior to the First Foreclosure

1.      September 2014 Letter

On September 14, 2014, one year after the closing of the Loan (and the date of the deadline for completion of the repair referenced in the Repair Rider) Live Well wrote to Plaintiff with respect to her obligation thereunder (the "September 2014 Letter"). The September 2014 Letter reminded Plaintiff that the repair referred to in the Repair Rider was to be completed within one year of the September 2013 Loan. It also states that Live Well had not received confirmation that such repairs were complete and, as a result, Live Well was "required to place" Plaintiff's account "into default status." DE 83-7. The September 2014 letter further states that all further payments to Plaintiff were being suspended until verification of repair was obtained, and that Plaintiff's inaction "could result in [her] loan being called Due and Payable." Id. A copy of the Repair Rider was annexed to this letter. Plaintiff was advised that she could seek the advice of a HUD counselor and speak with a Live Well representative regarding the matter. Id.

2.   The May 28, 2015 Mortgage Due and Payable Notification

On May 28, 2015 (one year and eight months after the repair under the Repair Rider was to be complete, and eight months after Live Well first communicated with Plaintiff regarding the one year deadline for completion of the required repair), Live Well again communicated with Plaintiff regarding the Repair Rider, in a letter entitled "Mortgage Due & Payable Notification" (the "May 2015 Letter"). DE 83-8. That letter advised Plaintiff that the Loan is "technically in default due to the non-completion of required repairs." The May 2015 Letter advised Plaintiff of several ways to resolve the matter, including completion of the repair within 30 days. The May 2015 Letter also advised Plaintiff that if she failed to cure the breach referred to therein, Live Well would "proceed immediately with foreclosure and sale of the property." Id.

3.   The June 26, 2015 Mortgage Due and Payable Notification

One month later, on June 26, 2015, Live Well sent a second "Mortgage Due & Payable Notification" Letter to Plaintiff (the "June 2015 Letter"). Like the May 2015 Letter, the June 2015 Letter advised Plaintiff of her agreement to complete the repair, stated that she was technically in default of her obligations, and set forth that repairs should be completed within 30 days. In addition, the June 2015 Letter stated that according to the Mortgage, Plaintiff had the right to argue that she kept her promises under the loan documents and to present any other defenses. DE 83-9 at 1–2.

D.   2015 Proceedings in The Repair Foreclosure

1.   HUD Approval to Call Plaintiff's Loan
     Due and Payable for Failure to Make Repairs

As noted above, the Mortgage allows the lender to call her Loan due and payable only with the approval of HUD. Mortgage DE 83-4 at ¶ 9(c). On May 26, 2015 (two days prior to the May 2015 Letter), Celink requested such approval from the entity engaged by HUD to handle

such requests. DE 115 at 9. As set forth in Celink's correspondence, the request to call the Loan due and payable was based upon Plaintiff's failure to make repairs agreed to at the closing of the Loan. DE 115 at 4. Celink's request to call the Loan due and payable for failure to make repairs was granted by HUD on May 27, 2015.

### 2. Commencement of the Repair Foreclosure

On October 10, 2015, five months after securing the approval of HUD to commence a foreclosure, Live Well commenced a foreclosure proceeding in New York State Court (the "Repair Foreclosure"). DE 83-10. That proceeding sought to foreclose on the HECM Mortgage, seeking immediate payment of a total amount of $186,681.04. The amount sought included unpaid principal, accrued interest, mortgage insurance premium charges, an appraisal fee, a surrogate search fee, a fee for a title search, and attorneys' fees. DE 83-10 at 4.

The Repair Foreclosure complaint attaches all documents executed by Plaintiff in connection with the Mortgage. It references the terms thereof, including the provision that payment in full would become due if "[a]n obligation of the Borrower under [the documents forming the basis of the [Mortgage] is not performed." DE 83-10 at 6. The complaint seeks foreclosure on the ground that one of the provisions for foreclosure has taken place. It asserts that that the ninety-day notice requirements of Section 1304 the New York State Real Property Actions and Proceedings Law (the "RPAPL") did not apply because the mortgage is a reverse mortgage which does not meet the definition of a home loan under the RPAPL.

The Repair Foreclosure complaint also references certain acts that Live Well might undertake in order to "protect its security," including the payment of taxes on the foreclosed property. DE 83-10 at 8 ¶ 14.

E.    The Payment of Plaintiff's Taxes by Celink and Plaintiff

On December 28, 2015, one month after the filing of the Repair Foreclosure, Live Well and/or Celink paid the first installment of Plaintiff's 2015 Southold Town taxes. In a letter dated August 11, 2016, Celink explained to Plaintiff that such payments were made pursuant to a practice of conducting a property tax search on properties in foreclosure, and paying any taxes due in order to protect its interest in the property. DE 83-16. In particular, Celink referred to Paragraph 5 of the uniform covenants section of the Mortgage, referred to above, which states that: "[i]f the Borrower . . . fails to perform any other covenants and agreements contained in this Security Instrument . . . then Lender may do and pay whatever is necessary to protect the value of the [mortgaged property] and Lender's rights in the [mortgaged property], including payment of taxes . . . ." DE 83-16 at 3.

The Town Code of the Town of Southold, where the Property is located, provides that the first half of Plaintiff's yearly property tax payments come due on December 1 of a given year. That taxing authority affords taxpayers a grace period until January 10 of the following year before it assesses late penalties. http://www.southoldtownny.gov/139/Tax-Receiver.  Thus, although a payment made by January 10 would incur no additional liability, Plaintiff's property taxes were due on December 1, 2015. Celink did not make the tax payment at issue until December 28, 2015, four weeks after the due date, but before the end of the grace period.

Plaintiff paid her property taxes after Celink made its December 28, 2015 payment. Plaintiff's payment was received by Southold Town on January 10, 2016. In view of the fact that the Town had already received the first half of Plaintiff's yearly tax bill from Celink, the Town did not return that payment to Plaintiff.  Instead, it applied Plaintiff's payment to the second half of her yearly tax bill. See DE 83-16 at 3.

F.      2016 Proceedings in The Repair Foreclosure

On January 29, 2016, Live Well moved for summary judgment as to the Repair Foreclosure. Plaintiff claims never to have received notice of this motion, and Celink does not dispute that it would not, in the normal course have forwarded a copy of the motion to her. DE 83-16 at 3.

On February 25, 2016, HUD advised that it considered Plaintiff to have complied with the repairs agreed to at the September 2013 closing. Celink was told to close out the repair requirement, and HUD rescinded the due and payable approval for failure to complete that repair. Rather than discontinue the Repair Foreclosure on its own, and in light of the fact that Plaintiff had interposed counterclaims in connection with that proceeding, Celink sought to enter into a stipulation of dismissal of the Repair Foreclosure. DE 83-16. Copies of a stipulation effectuating a dismissal were forwarded to Plaintiff on several occasions between April and July of 2016, but, according to Celink, were never returned. DE 83-16 at 4.

G.      The Reference to a Tax Payment Foreclosure

On March 14, 2016, Celink sent Plaintiff a default notice advising her to pay back the amount paid by Celink for Plaintiff's property taxes. DE 83-15. That notice stated that the tax payment made by Celink must be reimbursed by April 13, 2016 in order to cure a default in paying taxes. DE 83-15. Plaintiff was advised that her failure to comply with deadline would result in her loan being declared due and payable for non-payment of taxes. Id. As of August 11, 2016, the status of the Loan remained in a foreclosure status because Celink paid the first half of Plaintiff's property taxes (in December of 2015) and that amount had not been repaid to Celink. To be clear, Plaintiff's tax payment to the Town was, as noted, applied to the second half of her yearly tax bill. Thus, Plaintiff's taxes were fully paid for the year — half of that bill was paid by

Celink, and half by Plaintiff. While Plaintiff ultimately reimbursed Celink for the first half of the tax bill, that reimbursement did not take place until after a July 2016 reference to foreclosure for failure to reimburse the tax payment. That reference was preceded by an April 11, 2016 HUD approval to call Plaintiff's loan due and payable, and demand letters were sent to Plaintiff on April, 12, 2016 and June 7, 2016. See id.

       H.      Discontinuance of the Repair Foreclosure

On July 15, 2016, the State Court granted summary judgment to Live Well in the Repair Foreclosure. This was five months after it was made clear that Plaintiff finally had complied with her obligation under the Repair Rider, and after Live Well attempted, apparently (according to Celink) for months, to obtain a stipulation from Plaintiff that would have resulted in a discontinuance of that proceeding. This grant of summary judgment is likely explained by the fact that the state court was unaware that the issues leading to the 2015 Repair Foreclosure had been resolved. In any event, Live Well made no effort to foreclose upon and sell the Property. On August 1, 2016, after the State Court granted the motion for summary judgment, Live Well moved, before that court, to discontinue the 2015 Repair Foreclosure.

The Court notes that Celink's papers do not include the April 11, 2016 HUD approval to call Plaintiff's loan due and payable for non-payment of taxes. While Plaintiff's papers include the March 14, 2016 letter advising Plaintiff of the tax payment advance made, neither party has submitted the subsequent demand letters stated to have been sent to Plaintiff in June and July of 2016. Additionally, neither party has submitted the State Court documents with respect to the 2016 Tax Foreclosure proceeding, which proceeding all agree was terminated without going forward with either motion practice, foreclosure or sale. The Court finds, however, that given the allegations in this case, the failure to include the documents identified above is immaterial. That

is because, as set forth below, the facts regarding the failure to pay taxes and ultimate discontinuance of the Tax Foreclosure are not essential to this Court's grant of Celink's motion to dismiss.

## I.    Resolution of the Tax Foreclosure

As of August 11, 2016, Plaintiff had not cured the default that led to the Tax Foreclosure. Accordingly, in a letter of that date Celink advised Plaintiff that her loan was currently in a "refer to foreclosure status due to the tax default balance of $2,009.45." DE 83-16 at 4. The parties appear to agree that Plaintiff ultimately repaid the amount advanced by Celink in 2015 for payment of her taxes. See DE 83-1 at 14 (Defendant Celink's Memorandum of Law in Support of Motion to Dismiss). It is also clear that no effort was ultimately made by any lender, either in 2015 or 2016 to move forward with foreclosure and sale of the Property.

## II.    Plaintiff's Claims

As noted, Plaintiff's complaint, styled as a class action, alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, violation of Section 349 and unjust enrichment. Relevant to the present motion to dismiss are the latter two causes of action, those alleging a violation of Section 349 and unjust enrichment. These are the only claims raised against Celink.

### 1.    The Section 349 Claim

Plaintiff alleges her claim under Section 349 on behalf of an alleged sub-class of New Yorkers. As to particular deceptive acts or omissions, Plaintiff asserts that Celink:

- deceptively and unlawfully pays property taxes that are neither delinquent nor in default;

- deceptively and unlawfully pays property taxes in violation of loan agreements, mortgage agreements, and HUD regulations; including but not limited to 24 C.F.R. 206.205(e)

(formerly 24 C.F.R. 206.205(c)), 24 C.F.R. 206.205(e)(2)(ii), HUD Mortgage Letters 2014-21 and 2015-11;

- deceptively and unlawfully declares reverse mortgages in default based upon property taxes or property charges paid by Live Well and Celink when such taxes were neither delinquent nor in default;

- deceptively and unlawfully files foreclosure lawsuits without providing proper notice as required by the New York Real Property Law §§280(2)(f) and 280-2(2)(m) and 3 NYCRR § 79.9;

- deceptively and unlawfully files foreclosure lawsuits claiming defaults for the payment of property taxes or property charges without having complied with nor completed the notice and loss mitigation procedures required by HECM loan agreements, federal regulations and HUD letters, including 24 C.F.R. § 206.205(e)(2)(ii) and HUD Mortgage Letter 2015-11, 3 NYCRR §79.9, and

- charging appraisal fees after declaring loans due and payable in violation of 24 C.F.R. § 206.125(b).

Plaintiff claims injury as a result of the alleged violations of Section 349 in the form of incurring unlawful fees, costs, charges and increased interest on loans.

    2.    <u>Claim of Unjust Enrichment</u>

As to her claim of unjust enrichment, Plaintiff alleges that Celink violated the common law of the various states where class members live, including the law of the State of New York where Plaintiff resides. Celink is alleged to have received an economic benefit in the form of increased profits resulting from the unlawful and inequitable acts set forth in the Complaint. Like Plaintiff's Section 349 claim, the wrongful acts alleged in support of the unjust enrichment claim

are the allegedly unlawful payment of taxes and commencement of foreclosure proceedings without proper cause or notice.

III.    The Motion to Dismiss

In support of its motion to dismiss, Celink argues that the Complaint fails to allege a plausible claim that it maintains an unlawful policy and practice with respect to the payment of property taxes. Specifically, Celink argues that Plaintiff fails to state a claim under Section 349 for failure to state a consumer-oriented practice, failure to identify any deceptive conduct and failure to allege injury. The unjust enrichment claim is argued to be subject to dismissal because of the existence of a contract, and for failure to state that Celink benefitted from the conduct alleged.

DISCUSSION

I.    Legal Principles

    A.    Standards on Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010).  Facial plausibility is established by pleading factual content sufficient to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555). As required in the context of this motion to dismiss the factual allegations in the

Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

As noted above, the parties have agreed that it is appropriate for this Court to consider the documents annexed to the parties' papers submitted in connection with Celink's motion. Thus, the Court will consider, in addition to the pleadings, the documents annexed to the Declaration of Jennifer Gray, Esq. submitted in support of Celink's motion to dismiss, and exhibits annexed thereto, as well as those submitted by Celink after oral argument. See DE 83 (Gray Declaration and Exhibits Annexed thereto); DE 115. The Court also considers the documents submitted by Plaintiff in opposition to the motion to dismiss. See DE 83-15-17.

II.   Relevant Statutes and Regulations

In addition to the documents outlined above, which include those executed by Plaintiff on September 13, 2013, the Court considers the merits of plaintiffs' claims in connection with cited Federal Regulations generally applicable to reverse mortgages. In particular, those regulations recognizing that HECM borrowers, like Plaintiff, may choose to pay their own taxes The Court

also considers the regulation stating that the lender or servicer of a loan may pay property taxes when "the mortgagor fails to pay the property charges in a timely manner." 24 C.F.R. ¶ 206.205; <u>see</u> DE at ¶ 24. The Mortgage here similarly also allows the lender to pay property taxes "where it is necessary to preserve the property or the Lender's property interest." <u>Id.</u>

The Court also considers State laws and regulations cited by Plaintiff in support of her Section 349 claim. In particular, she alleges that when commencing foreclosure proceedings Celink failed to comply with Real Property Law Sections 280(2)(f) and 280-a(2)(m). DE 1 at ¶ 6. Generally, these provisions give mortgagors under reverse mortgages the right to designate a third party to receive notice of a foreclosure. In cases where a mortgagor does not designate a third party, the lender is required to give notice of its intent to commence a foreclosure to the local or county office of the aging. Such entity is then given the opportunity to take appropriate action to protect the rights of the mortgagor <u>See</u> N.Y. Real. Prop. L. 280(2)(f); 280-(a)(2)(m).

Plaintiff also alleges that when commencing a foreclosure proceeding, Celink violated a New York State Banking Regulation appearing as 3 NYCRR 79.9. That regulation states that reverse mortgages may be terminated only upon certain events. Those events include the death or re-location of the mortgagor, as well as non-payment of taxes. That section sets forth specific notice requirements to be met when a reverse mortgage is sought to be terminated for non-payment of taxes. It also provides that a reverse mortgage may be terminated for failure to maintain the structural integrity of the mortgaged property. This section cross-references 3 NYCRR 79.8. That regulation speaks to making repairs necessary to maintain the structural integrity of the mortgaged property. <u>See</u> 3 NYCRR 79.8.

III.    Disposition of the Motion to Dismiss all Claims Against Celink

    A.    Plaintiff Fails to State A Claim Under Section 349

Section 349 makes it unlawful to engage in "deceptive acts or practices in the conduct of any business, trade or commerce or the furnishing of any service." N.Y. Gen. Bus. L. 349(a). To state a claim under Section 349 a Plaintiff must plausibly allege "consumer oriented" conduct that is materially misleading, and injury as a result thereof. See Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

    1.    Plaintiff Fails to State A Plausible Claim of Consumer-Oriented Deceptive Acts

As set forth above, Plaintiff seeks to support her Section 349 claim on the ground that Celink engages in an unlawful policy of paying non-delinquent property taxes, and commencing unlawful foreclosure proceedings without proper notice. However, the facts pled in the complaint, as amplified by the documents properly before the Court, show no such policy. Indeed, as discussed below, Plaintiff fails to show any deceptive acts, much less a policy and practice of engaging in such activities. Thus, Plaintiff's Section 349 claim fails because she shows neither deceptive conduct as to herself, nor as to any member of the consumer community. See City of New York v. Smoke-Spirits. com., Inc., 12 N.Y.3d 616, 623 (2009); see also Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

As the Court's recitation of the relevant provisions of the mortgage documents executed by Plaintiff make clear, Live Well had the right to pay property taxes when, inter alia, such payment is necessary to "preserve the property or the Lender's property interest." DE 83-3 at 6(B)(iii) (provision of Note giving Lender the right to require immediate payment if borrower fails to perform an obligation thereunder); DE 83-4 at 3 (if failure to pay property charges would adversely affect Lender's interest in Property Lender has right to pay whatever is necessary to

protect its interest in the Property); 83-5 at Ex. 3 (Repair Rider obligating Plaintiff to complete repair within one year of date of closing of HECM).

The following fact is clear and undeniable. Celink paid Plaintiff's property taxes after she failed to supply proof that she complied with the Repair Rider. This fact made payment necessary to protect the Lender's property interest. There is no question but that Plaintiff was obligated to supply proof of compliance with the Repair Rider within one year of the closing of the Loan. She specifically signed the Repair Rider when she signed the other documents that allowed her to obtain her loan on September 13, 2013. While the repair required was certainly minor — indeed it was minor enough to allow Plaintiff to close on the loan without making the repair — the nature of the repair did not relieve Plaintiff of the obligation to make the repair, and supply proof of completion to Live Well and/or Celink on or before September 13, 2014.

The documents properly before the Court make clear that Live Well acted properly and gave Plaintiff every opportunity to supply proof of the repair. Indeed, Plaintiff was provided with more than the notice required by HUD regulations, and the terms of the Mortgage. See e.g., DE 83-7 (letter from Live Well to Plaintiff dated September 3, 2014); DE 83-8 ("due and payable" notification from Live Well to Plaintiff dated May 28, 2015); DE 83-9 ("due and payable" notification from Live Well to Plaintiff dated June 26, 2015). Plaintiff did not supply the documents requested. It was not until the proof of repair was well overdue that Celink began foreclosure proceedings based upon the failure to supply what the documents executed at the closing of the HECM specifically required. Thus, there is no factual support for the allegation that Live Well and Celink engaged in commencement of an unlawful foreclosure proceeding against Plaintiff. That proceeding was specifically warranted by the terms of Plaintiff's HECM and HUD's regulations — which were clearly followed in this matter. Even if there was some

misunderstanding as to completion of Plaintiff's obligations under the Repair Rider, the facts support only a plausible finding of such a misunderstanding, and not a plausible finding of deceptive consumer-oriented conduct.

Not only was Plaintiff repeatedly contacted with respect to her obligations under the Repair Rider, she also received non-deceptive communications regarding the payment of her taxes. See DE 83-15 (letter from Live Well to Plaintiff dated March 14, 2016) DE 83-17 (letter from Live Well to Plaintiff dated April 22, 2016); see also DE 83-16 (letter from Celink to Plaintiff dated August 11, 2016 summarizing all of Live Well and Celink's actions concerning the repair and tax payment). It matters not that Plaintiff had agreed to pay her taxes, and had never been delinquent in such payment. Here, after properly commencing foreclosure proceedings Celink acted to protect its interest in the Property by paying taxes. Moreover, Celink did not pay Plaintiff's taxes prematurely. Taxes were paid after they became due (on December 1, 2015) and before the end of the Town's grace period — which would have expired on January 10, 2016.

Importantly with respect to Plaintiff's Section 349 claim, the facts do not support a plausible finding that there was some unlawful practice or policy of preemptively paying property taxes in order to inflate charges and fees. The facts are (as specifically pled by the Plaintiff and the documents before the Court reveal) that Plaintiff's property taxes were paid on December 28, 2015, because Plaintiff failed to comply with her obligations to place and keep the property in good repair. Failure to do so endangered the lender's rights under the HECM documents. Thus, property taxes were paid to avoid adverse action against the property by local taxing authorities — acts that would certainly interfere with the mortgage holder's rights to the

property under the HECM documents. Indeed, keeping tax payments current is a matter of paramount importance.

It also bears noting that merely pleading the unsupported words "policy" or pattern" or "practice" (as pled liberally throughout Plaintiff's complaint), is insufficient to state a plausible claim of deceptive consumer-oriented practice made unlawful by Section 349. <u>Corbin v. Wilson</u>, No. 10-3156, 2011 WL 4374213, at *3 (E.D.N.Y. Aug. 26, 2011). Plaintiff's complaint is based solely on facts particular to her unique set of circumstances. These circumstances raise no plausible argument of any consumer-oriented unlawful policy within the realm of Section 349.

In sum, the facts show that Plaintiff failed to communicate with Live Well or Celink regarding the Repair Rider for over a year after the closing of her loan. Under these circumstances, it cannot be considered an unlawful exercise of the Mortgagor's rights to commence a foreclosure proceeding and to pay property taxes that were due. The facts here show no unlawful policy to pre-pay taxes without notice. To the contrary, they show contractual and regulatory compliance regarding the commencement of foreclosure proceedings, and the payment of taxes to protect the lender's interest in mortgaged property. This conduct is the opposite of the deceptive conduct alleged by Plaintiff Complaint.

 2. Plaintiff's Section 349 Claim Is Not Saved by Any Claim That <u>Celink Violated Notice Provisions That Afford No Private Rights of Action</u>

The Court also rejects Plaintiff's attempt to support her Section 349 claim by asserting Celink's violation of notice provisions set forth in the New York State Real Property Law and/or New York State Banking Regulations. None of these provisions of state law provide for a private right of action, and counsel did not argue otherwise. <u>See</u> <u>Estate of Wolfert v. Transamerica Home First, Inc.</u>, 439 F.3d 165, 174 (2d Cir. 2006) (no private right of action under Real Property Law Section 280-a). Importantly, the law is clear that Plaintiff may not circumvent the

lack of such a private right of action by alleging a violation, and then bootstrapping that violation into a plausible claim under Section 349. See Conboy v AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Harte v. Owen Fin. Corp., No. 13-5410, 2018 WL 1830811, at *8–9 (E.D.N.Y. Feb. 8, 2018) (plaintiff cannot rely on failure to comply with foreclosure notice provisions to support Section 349 claim).

For the foregoing reasons, Plaintiff fails to state a plausible claim with respect to any unlawful conduct under the terms of the HECM. It is additionally clear that she states no plausible claim that Live Well or Celink maintain a practice or policy of unlawfully paying property taxes and commencing unlawful foreclosure proceedings. The facts are undisputed and fatal to Plaintiff's Section 349 claim. This Court recommends that Plaintiff's Section 349 claim be dismissed.

B.    Plaintiff Fails to State a Claim of Unjust Enrichment

To state a claim for unjust enrichment a plaintiff must show: (1) that the defendant benefitted; (2) at plaintiff's expense, and (3) that equity and good conscience require restitution. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). The final element of the claim is dispositive of the motion to dismiss. The facts detailed above make clear that neither equity nor good conscience require restitution of any amount that might ultimately have been added to Plaintiff's loan. Indeed, it is clear that Celink acted, at all times, as the servicer of the Loan pursuant to the terms agreed to by Plaintiff in 2013. It communicated with Plaintiff properly. It protected the Lender's interest in the Property by paying taxes only after the proper commencement of foreclosure proceeding in accord with the terms of the parties' agreement. Under these circumstances Plaintiff states no plausible claim of unjust enrichment, and any such cause of action must be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Celink's motion to dismiss, appearing as Docket Entry 83 herein, be granted in its entirety. The Court also recommends that any document filed under seal be unsealed. Finally, in view of the fact that this Court's recommended disposition of the three referred motions (DE 82, 83 and 109) leaves only the bankrupt Defendant Live Well as a defendant herein, the Court also recommends that this matter be closed at this time without prejudice to re-opening if Live Well emerges from bankruptcy and, at that time, Plaintiff can make a plausible claim against that Defendant.

Dated: Central Islip, New York
      February 10, 2020

                              /s/ Anne Y. Shields
                              Anne Y. Shields
                              United States Magistrate Judge