**FILED**
**CLERK**

9/15/2020 2:51 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARGARET SHAKESPEARE, on behalf of
Herself and all other similarly situated,

      Plaintiff,

         v.

LIVE WELL FINANCIAL, INC.,
COMPU-LINK CORP., d/b/a CELINK, and
REVERSE MORTGAGE FUNDING, LLC,

      Defendants.
-----------------------------------------------------------------x

Case No.: 18-cv-7299 (SJF)(AYS)
**ORDER ADOPTING**
**REPORT &**
**RECOMMENDATION**
(ECF No. 116)

FEUERSTEIN, Senior District Judge:

I.    <u>Introduction</u>

      Plaintiff Margaret Shakespeare ("Plaintiff") commenced this action against Defendants

Live Well Financial, Inc. ("Live Well"), Compu-Link Corporation, d/b/a Celink ("Celink"), and

Reverse Mortgage Funding, Inc. ("RMF"; collectively with Live Well and Celink, the

"Defendants") claiming that because of Live Well's and Celink's policy and practice of

improperly paying the property taxes of homeowners with federally-insured reverse mortgages

before those taxes are due, among other things, the outstanding balance of her reverse mortgage

loan (hereafter, the "Loan") has been wrongfully increased with related charges, attorneys' fees,

and other amounts.  (*See* ECF No. 1 ("Complaint"), at ¶2.)  She raised two cause of action

against Celink:  violation of New York State's General Business Law § 349 (hereafter, the "§

349 Claim")(*see id.*, Third Cause of Action, at 34-37, ¶¶118-29), and unjust enrichment

(hereafter, the "Unjust Enrichment Claim")(*see id.*, Fourth Cause of Action, at 38-39, ¶¶130-41).

In response, Celink moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to have Plaintiff's claims against it dismissed with prejudice (*see* ECF No. 83-1 ("Dismissal Motion"; *see also* ECF No. 83-2 ("Support Memo")), which Plaintiff opposed. (*See* ECF No. 83-13 ("Opposition" or "Opp'n").) The Dismissal Motion was referred to Magistrate Judge Anne Y. Shields for a report and recommendation. (*See* Case Docket, SJF May 23, 2019 electronic "ORDER REFERRING MOTIONS".)

Presently before the Court is the Magistrate Judge's February 10, 2020 Report and Recommendation (hereafter, "Report" or "R&R") recommending that the Dismissal Motion be granted.[1] (*See* Report (ECF No. 116).) All parties were provided proper notice of the Report. (*See* ECF Nos 131 & 132.) Plaintiff objects to the Report (hereafter, "Objection") (*see* ECF No. 121), to which Celink has responded (hereafter, "Response") (*see* ECF No. 126). For the reasons that follow, the Court overrules Plaintiff's objections and adopts Magistrate Judge Shields' Report in its entirety.

II.    <u>Background</u>[2]

In September 2013, Plaintiff obtained a home equity conversion loan (the "Loan") against her Southold, New York property (the "Property"), which was secured by a Home Equity

---

[1]  Magistrate Judge Shields further recommends: "any documents filed under seal be unsealed" and that, in light of Live Well's bankrupt status, "this matter be closed at this time without prejudice to re-opening if Live Well emerges from bankruptcy and, at that time, Plaintiff can make a plausible claim against" Live Well. (*See* Report at 24; *see also infra* at Parts IV(E) & (F).)

[2]  This Background summarizes the Magistrate Judge's well- detailed "Factual Background" section of the Report. (*See* Report at 3-14.) Notably, as a preamble to the Factual Background section, Magistrate Judge Shields stated that "all counsel agreed that it was appropriate, within the context of the [Dismissal Motion], to consider all documents referred to in their papers. These documents include loan documents, judicial documents generated during the course of foreclosure proceedings, as well as correspondence among the parties." (Report at 3.)

Conversion Mortgage (the "HECM" or "Mortgage"), "a mortgage instrument akin to those commonly referred to as a 'reverse' mortgages." (Report at 1.) When the Loan, which was insured by the United States Department of Housing and Urban Development ("HUD"), closed, Plaintiff, as the "Borrower," executed several documents:

> (1) a Fixed Rate Note-Closed End (Home Equity Conversion) (the "Note") [ECF No.] 83-3 at 1–2; (2) a "Reverse Mortgage (Home Equity Conversion) (the "HECM" or the "Mortgage") [ECF No.] 83-4 at 1–11; (3) a "Home Equity Conversion Loan Agreement Closed End" (the "Loan Agreement") [ECF No.] 83-5 at 1–9 and 11–19[;] and (4) a Repair Rider to the Loan Agreement (the "Repair Rider") [ECF No.] 83-5 at 10. [(Collectively, the "Loan Documents".)]

(Report at 4.) According to the Loan Agreement, *inter alia*: "**Note** means the promissory note signed by Borrower *together with this Loan Agreement* and given to Lender to evidence Borrower's promise to repay, with interest, Loan Advances by Lender or Lender's assignee;" and "**Security Instrument** means the mortgage, deed of trust, security deed or other security instrument which is signed by Borrower *together with this Loan Agreement* and which secures the Note." (Loan Agreement, §§ 1.5, 1.12, respectively (bold emphasis in original; italicized emphasis added).) The Repair Rider was "incorporated into" and "deemed to supplement the Loan Agreement." (Repair Rider, Preamble Statement.) As the insurer of the Loan, HUD was a party to the Loan Agreement. (*See* Loan Agreement at 1, Preamble Sentence; *see also* Report at 4.) Defendant Live Well was the Lender, and Celink was and remains the sub-servicer of the Loan. (*See* Report at 3.)

The significance of each document which made up the Loan Agreement was methodically explained in the Report. (*See* Report, Part B(1) (pp.4-5) (addressing the Note), Part B(2) (pp.5-7) (addressing the Mortgage; highlighting §§ 2 & 5), Part B(3) (p.7) (addressing the Loan Agreement; highlighting § 2.10.5), and Part B(4) (pp.7-8)(addressing the Repair Rider).)

As to the Repair Rider in particular, it referred to Plaintiff's "obligation to make certain repairs to her house as a condition of the Loan," which was "to 'correct all peeling paint'" within one year of the Loan's closing, *i.e.*, September 3, 2013. (*Id.* at 7 (quoting Repair Rider).) "The Repair Rider also speaks to Live Well's right to protect the [P]roperty secured by the Loan. In particular, if Plaintiff were to be in default of her obligations under her mortgage, Live Well had the right to 'do and pay whatever is necessary to protect the value of the Property . . . .'" (Report at 8 (quoting Mortgage at 3, § 5).) "Such expenditures would then be considered as advances under the terms of the Loan." (*Id.*)

The Report then carefully detailed the sequence of events leading to the initial foreclosure action against Plaintiff, *i.e.*, the "Repair Foreclosure." (*See* Report, Part C.) First, Live Well sent a September 14, 2014 letter advising Plaintiff, *inter alia*, that: she had not confirmed completion of the agreed-upon repair work to the Property; the one-year period to have completed such work had passed; because Live Well had not received such confirmation, it was required to place Plaintiff's account into default status; and, she was jeopardizing having the Loan called "Due and Payable." (*See id.* at Part C(1) (quoting September letter (ECF No. 83-7)).) Then, on May 28, 2015, Live Well sent Plaintiff a letter entitled "Mortgage Due & Payable Notification" informing her that the Loan was "technically in default due to the non-completion of required repairs." (*Id.* at Part C(2) (quoting May letter (ECF No. 83-8)).) In addition to "advis[ing] Plaintiff of several ways to resolve the matter, including completion of the repair within 30 days," the May letter further "advised Plaintiff that if she failed to cure the breach referred to therein, Live Well would 'proceed immediately with foreclosure and sale of the [P]roperty.'" (*Id.* (quoting May letter).) Finally, on June 26, 2015, Live Well sent Plaintiff a second Notification letter reiterating its advise from its May letter, as well as stating that

4

"according to the Mortgage, Plaintiff had the right to argue that she kept her promises under the [L]oan [D]ocuments and to present any other defenses." (*Id.* at Part C(3) (citing June letter (ECF No. 83-9 at 1-2)).)

After receiving the required HUD pre-approval, on October 10, 2015, Live Well commenced the "Repair Foreclosure" against Plaintiff "on the ground that one of the provisions for foreclosure had taken place." (Report at 10 (Part D(2) (citing ECF No. 83-10 ("Repair Foreclosure Complaint") at 6).) "The Repair Foreclosure [C]omplaint also reference[d] certain acts that Live Well might undertake in order to 'protect its security,' including the payment of taxes on the foreclosed property." (*Id.* (citing Repair Foreclosure Complaint at 8, ¶14).) In accordance with its "practice of conducting a property tax search on properties in foreclosure" (*id.* at 11), Celink learned that the first-half of Plaintiff's property taxes due to the Town of Southold (hereafter, the "Town") were due as of December 1, 2015 (hereafter, the "First-Half Taxes"), but had not yet been paid; therefore, in accordance with § 5 of the Mortgage, Celink paid the First-Half Taxes on December 28, 2015. (*See id.*) Unaware that Celink already paid her First-Half Taxes, in early January 2016, Plaintiff sent her payment for those Taxes to the Town, but since that tax obligation had already been satisfied, the Town applied Plaintiff's later-received payment to her second-half property tax obligation. (*See id.*)

While the Repair Foreclosure was pending, "HUD advised [Celink] that is considered Plaintiff to have complied with the repairs agreed to at the September 2013 closing" and, therefore, "rescinded the due and payable approval" needed to maintain the Repair Foreclosure. (*Id.* at 12.) Because of the procedural posture of the Repair Foreclosure, it was not simply discontinued; instead, the state court granted a pending summary judgment motion. (*Id.* at 13 (stating that it was "likely" "the state court was unaware that the issues leading to the 2015

Repair Foreclosure had been resolved").)  Yet, "Live Well made no effort to foreclosure upon and sell the Property."  (*Id.*)

While the Repair Foreclosure was pending, "[o]n March 14, 2016, Celink sent Plaintiff a default notice advising her to pay back the amount paid by Celink for Plaintiff's [First-Half T]axes . . . in order to cure a default in paying taxes."  (*Id.* at 12 (citing ECF No. 83-15).)  When Plaintiff did not reimburse Celink, Celink acquired HUD-required approval to call Plaintiff's Loan due and payable, and subsequently sent two demand letters to Plaintiff.  (*See id.* at 13.[3] Despite said demands, when Plaintiff did not reimburse Celink for its payment of Plaintiff's First-Half Taxes, a second foreclosure action was commenced (the "Tax Foreclosure").  (*See id.* at 13, 14.)  However, since "Plaintiff ultimately repaid the amount advanced by Celink in 2015 for payment of her taxes," the Tax Foreclosure was not pursued.  (*Id.* at 14.)

---

[3]  In her Report, the Magistrate Judge noted:

> Celink's papers do not include the April 11, 2016 HUD approval to call Plaintiff's loan due and payable for non-payment of taxes. While Plaintiff's papers include the March 14, 2016 letter advising Plaintiff of the tax payment advance made, neither party has submitted the subsequent demand letters stated to have been sent to Plaintiff in June and July of 2016.  Additionally, neither party has submitted the State Court documents with respect to the 2016 Tax Foreclosure proceeding, which proceeding all agree was terminated without going forward with either motion practice, foreclosure or sale.  The Court finds, however, that given the allegations in this case, the failure to include the documents identified above is immaterial . . . because, as set forth below, the facts regarding the failure to pay taxes and ultimate discontinuance of the Tax Foreclosure are not essential to this Court's grant of Celink's motion to dismiss.

(Report at 13-14.)  (*See infra* at Part IV(D)(1) (discussing Plaintiff's objections to the Magistrate Judge's factual recitations).)

*B. Procedural Background*

As noted, Plaintiff commenced this action against Celink (and the other Defendants) based upon the theory that Celink improperly and unlawfully paid the First-Half Taxes, which she alleges "took place without justification or notice," and "resulted in the unlawful assessment of fees, adding to the total of Plaintiff's Loan." (Report at 2 ("Plaintiff alleges a 'policy and practice of improperly paying the property taxes of homeowners' with HECM's 'before those taxes are due, without contractual or other legal authority to do so and without providing notice to homeowners.'" (quoting Complaint, ¶I(2)).)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Celink moved to dismiss Plaintiff's two claims against it, asserting the "primary focus" of Plaintiff's Complaint "appears to relate to [Celink]'s payment of a single property tax installment in December 2015." (Dismissal Motion at 8.) Among other things, Celink argues that the Complaint fails to state a § 349 claim because: there are no allegations of a "consumer-oriented" practice by Celink (*see id.* at 11-13); private contract disputes do not constitute "deceptive acts" (*see id.* at 13-15); alleged violations of local laws and agency regulations do not establish § 349 violations (*see id.* at 15-17); and no injury has been established (*see id.* at 17-18). Celink further contends that Plaintiff has failed to state a claim for unjust enrichment because, *inter alia*, she has not alleged to have paid the fees that have purportedly enriched Celink (*see id.* at 20-21).

Plaintiff opposed the Dismissal Motion, maintaining that Celink improperly sued her in foreclosure for a tax payment it should never have made because she was not delinquent on said payment. (*See* Opp'n at 1-2; *see also id.* at 4.) She also refutes Celink's position that it did not engage in deceptive practices (*see id.* at 2; *see also id.* at 10 (citing Complaint, ¶¶6, 55, 56, 59, 70, 74, 124(a)-(j)); and at 11-12), as well as asserts she has a claim of unjust enrichment against

Celink since it is not a party to the Loan Agreement.  (*See id.* at 2; *see also id.* at 17-18.)  Finally, Plaintiff argues that there are unresolved factual disputes, which preclude granting Celink's Dismissal Motion.  (*See id.* at 3; *see also id.* at 8-9, 17, 18.)

The Dismissal Motion was referred to Magistrate Judge Shields, who conducted a hearing on said Motion.  (*See* ECF No. 112 (Minute Order noting arguments heard and decisions reserved); *see also* ECF No. 120 (Feb. 4, 2020 Hr'g Tr. (hereafter, "Hr'g Tr.")).)  Thereafter, the Magistrate Judge issued the present Report finding Plaintiff did not plausibly allege deceptive consumer-oriented conduct by Celink and did not present a plausible claim of unjust enrichment, and recommending that Celink's Dismissal Motion be granted.  (*See* Report at 23.)  Plaintiff timely filed her Objection, to which Celink filed a Response.

III.   <u>Applicable Standards</u>

   *A.  Report and Recommendation Standard of Review*

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties.  *See* Fed. R. Civ. P. 72(b).  Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error."  *Frankel v. City of N.Y.*, Nos. 06-cv-5450, 07-cv-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009); *see also Butto v. Collecto, Inc.*, 290 F.R.D. 372, 379 (E.D.N.Y. 2013) ("In a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)).

The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

     *B. Rule 12(b)(6) Dismissal*

     To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (20007)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-20 (2d Cir. 2010)(discussing the *Iqbal/Twombly* pleading standard, which does not apply any "heightened" pleading standard, but does require "factual amplification [where] needed to render a claim plausible")(quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009); further citation omitted). Thus, facial plausibility is established by pleading factual content sufficient to allow a court to reasonably infer a defendant's liability. *See Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "formulaic recitation of the elements of a cause of action" sufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Further, in deciding a Rule 12(b)(6) dismissal motion, a court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor or the Plaintiff. *See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011).

In deciding a motion pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the pleading, which are accepted as true; to matters of which judicial notice may be taken, such as publicly available agency documents, *see, e.g. In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at * 4 (E.D.N.Y. Aug. 29, 2013) (citing cases); to any written instrument attached to the pleading as an exhibit pursuant to Rule 10(c); to statements or documents incorporated by reference in the pleadings; or to documents upon the terms and effect of which the pleading "relies heavily" and which are, thus, rendered "integral" thereto. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016); *Smith v. Hogan*, 794 F.3d 249, 254 (2dCir. 2015); *Tubbs v. Stony Brook Univ.*, No. 15-cv-517, 2016 WL 8650463, at * 4 (S.D.N.Y. Mar. 4, 2016).

### C. Leave to Amend

"As a general rule, leave to amend a complaint should be freely granted." *Nesheiwat v. City of Poughkeepsie, N.Y.*, No.11-cv-7072, 2013 WL 620267, at *5 (citing *Jin v. Metro. Life Ins., Co.*, 310 F.3d 84, 101 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 15(a)(2)("The court should freely give leave when justice so requires."). It is well-settled that "[a] district court has broad discretion in determining whether to grant leave to amend," and such determinations are reviewed for abuse of discretion. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) (articulating that it is not an abuse of discretion for a court to allow leave to amend even if not formally requested)(citing *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992); *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991)); collecting cases); *see also Pasternack v. Lab. Corp. of Am.*, 892 F. Supp.2d 540, 549 (S.D.N.Y. 2012); *Nesheiwat*, 2013 WL 620267, at *5 (same).

IV.     Discussion

*A. Magistrate Judge Shields' Report & Recommendation*

In making her recommendations, the Magistrate Judge: methodically reviewed the sequence of events; analyzed the relevant "documents annexed to the parties' papers submitted in connection with Celink's [Dismissal Motion], parsing out the relevant terms and provisions;" "consider[ed] the merits of [P]laintiff's claims in connection with cited Federal Regulations generally applicable to reverse mortgages;" as well as considered "[s]tate laws and regulations cited by Plaintiff in support of her Section 349 claim." (*Id.* at 17, 18.)

1.  The § 349 Claim

Recognizing that "[t]o state a claim under Section 349[,] a Plaintiff must plausibly allege 'consumer oriented' conduct that is materially misleading, and injury as a result thereof" (Report at 19 (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)), the Magistrate Judge found Plaintiff failed to state a plausible claim of consumer-oriented deceptive acts. (*Id.* ("Plaintiff fails to show any deceptive acts, much less a policy and practice of engaging in such activities.").) Rather, as "the relevant provisions of the [Loan D]ocuments[,] executed by Plaintiff [,] make clear, Live Well had the right to pay property taxes when, *inter alia*, such payment [wa]s necessary to 'preserve the property or the Lender's property interest.'" (*Id.* (citing Note, Mortgage, and Rider Repair).) Based upon: the undeniable facts that Plaintiff signed the Repair Rider that obligated her to make the required home repair within one year of her Loan closing and "supply proof of compliance with the Repair Rider;" and, "[t]he documents properly before the [c]ourt," showing that "Plaintiff was provided with more than the notice required by HUD regulations and the terms of the Mortgage" before commencing the Repair Foreclosure based upon [Plaintiff's] failure to supply what the documents executed at the closing

11

of the [Loan] specifically required," the Magistrate Judge found "no factual support for the allegation that . . . Celink engaged in commencement of an unlawful foreclosure proceeding against Plaintiff." (*Id.* at 20; *see also id.* at 21 ("The facts are (as specifically pled by the Plaintiff and the documents before the [c]ourt reveal) that Plaintiff's property taxes were paid on December 28, 2015, because Plaintiff failed to comply with her obligations to place and keep the [P]roperty in good repair.").) She rejected Plaintiff's contention that Celink engaged in "some unlawful practice or policy of preemptively paying property taxes," because the facts did not support that allegation. (*See id.* at 21; *see also id.* at 22 ("The facts here show no unlawful policy to pre-pay taxes without notice.").) Instead, "they show[ed] contractual and regulatory compliance regarding the commencement of the foreclosure proceedings, and the payment of taxes to protect the [L]ender's interest in mortgaged property." (*Id.* at 22.) Moreover, the Magistrate Judge found that none of the "notice provisions set forth in the New York State Real Property Law and/or . . . Banking Regulations "provide for a private right of action and counsel did not argue otherwise." (*Id.*) Hence, she recommended that Plaintiff's § 349 Claim be dismissed. (*See id.* at 23.)

### 2. The Unjust Enrichment Claim

Articulating the required components of an unjust enrichment claim, *to wit*, "(1) that the defendant benefitted; (2) at plaintiff's expense[;] and (3) that equity and good conscience require restitution" (*id.* (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)), Magistrate Judge Shields found that the facts of Plaintiff's case "make clear that neither equity nor good conscience require restitution of any amount that might ultimately have been added to Plaintiff's [L]oan," since "Celink acted, at all times, as the servicer of the Loan pursuant to the terms agreed to by Plaintiff in 2013." (*Id.*) That is, because

12

Celink "communicated with Plaintiff properly" and "protected the Lender's interest in the Property by paying taxes only after the proper commencement of [the first] foreclosure proceeding in accord with the terms of the parties' agreement," Plaintiff did not state a plausible claim of unjust enrichment, thereby warranting dismissal of that cause of action.  (*Id.*)

### B.  The Plaintiff's Objection

Initially, Plaintiff would have the Court find error in the Magistrate Judge's recitation of certain facts, claiming that the court improperly engaged in factual resolution regarding Celink's "claim[] that Plaintiff had not complied with the repair rider" (Objection at 18 (citing R&R at 8-9), and considered letters outside of the pleadings which addressed the repair rider dispute (*see id.* at 18-19; *see also id.* at 20).  This, Plaintiff asserts, formed the basis for the Magistrate Judge's erroneous conclusion "that Celink was permitted to 'preserve the property' by prematurely paying Plaintiff's taxes."  (*Id.* at 19 (citing R&R at 19-20).)

### 1.  The § 349 Claim

Plaintiff also argues that Magistrate Judge Shields erred in agreeing with Celink's position that there is a "preserve the property" exception to applicable HUD regulations, which permitted Celink to pay Plaintiff's First-Half Taxes without her knowledge.  (*See* Objection at 3; *see id.* at 4 ("The R&R disputed that Celink maintains a 'policy' to pay borrowers' property taxes even when not delinquent, even though Celink repeatedly admitted that policy.  Premised on that errant finding, [the Magistrate Judge] held that Plaintiff had not alleged consumer-oriented violations of GBL § 349."); *see also id.* at 6 ("There is no so-called 'preserve the property' exception as argued by Celink and accepted by the R&R at 18-19.").)  She argues that the Magistrate Judge: "was mistaken in concluding that Celink was justified in paying Plaintiff's property taxes before January 10, 2016" (*id.* at 9 (citing R&R at 11, 21); *see also id.* at 10); and,

erred in finding no Celink policy of paying property taxes when they were not delinquent (*see id.* at 11 (citing R&R at 19)). Moreover, Plaintiff asserts that Celink did not need to "preserve the property" as the limited exceptions for such payments, *i.e.*, bankruptcy or condemnation, were not present (*see id.* at 11-12), and the Magistrate Judge's failure to address these alleged contractual limitations was erroneous (*see id.* at 12; *see also id.* at 13).

Plaintiff further objects to the Magistrate Judge's finding that "Plaintiff's complaint is based solely on facts particular to her unique set of circumstances" which "raise no plausible argument of any consumer-oriented unlawful policy within the realm of Section 349" (Report at 22 ("It also bears noting that merely pleading the unsupported words 'policy' or [']pattern' or 'practice' (as pled liberally throughout Plaintiff's complaint), is insufficient to state a plausible claim of deceptive consumer-oriented practice made unlawful by Section 349." (citing *Corbin v. Wilson*, No. 10-cv-3156, 2011 WL 4374213, at *3 E.D.N.Y. Aug. 26, 2011))), arguing that she alleged not only "that Celink made misrepresentations and material omissions and engaged in policies and practices there were deceptive under GBL § 349," but that Celink also made "violations of other laws and regulations." (Objection at 22.) She would have this Court find error with the Report because Magistrate Judge Shields did not "discuss[] the many decisions from this Circuit sustaining GBL § 349 claims premised on the violations of laws that do not provide a private right of action. (*See id.*; *see also id.* at 23.)

## 2. The Unjust Enrichment Claim

Plaintiff raises a general objection to the Magistrate Judge's recommendation that the Unjust Enrichment Claim should be dismissed "because Celink did nothing wrong." (*Id.* (citing R&R at 23).) Citing her Complaint, Plaintiff contends that "Celink improperly added fees, costs

and charges to Plaintiff's HECM loan balance" and that "equity and good conscience require restitution of those amounts." (*Id.* (citing Complaint, ¶¶ 16, 37-56, 133-37).)

### C. Celink's Response

Celink asserts "Plaintiff continues to ignore the plain terms of her own loan agreement and the contents of her own pleading" and "misrepresents the Magistrate's findings and rehashes *ad nauseam* meritless arguments that the Magistrate properly rejected." (Response at 2.) It argues that "Plaintiff raises no colorable objection to the R&R" and, therefore, asks the Court to adopt Magistrate Judge Shields' Report in its entirety and grant its Dismissal Motion. (*See id.* at 2.)

#### 1. The § 349 Claim

Specific to Plaintiff's § 349 Claim, Celink contends that Magistrate Judge Shields correctly found that Plaintiff failed to plausibly plead or show that Celink engaged in deceptive business practices. (*See* Response at 7-8 (citing Report at 19, 21, 23).) Nor, it argues, can Plaintiff maintain her § 349 Claim relying upon allegations that Celink violated HUD regulations or state laws since none apply to the circumstances of her case and, as the Magistrate Judge properly concluded, the cited regulations and statutes do not confer a private right of action that would support this claim. (*See id.* at 8-9 (quoting Report at 22-23); *see also id.* at 9 (stating Plaintiff "devotes most of the Objection to arguing that Celink violated various laws and regulations that confer no private right of action and cannot support a GBL § 349 claim").) Celink also highlights Plaintiff's attempt to save her § 349 Claim by claiming "for the first time" that this Claim is "based on 'Celink's practice of adding allegedly illegal charges and fees to HECM loans in connection with its collection practices'" (*id.* at 9 (quoting Objection at 19)), which is "a transparent, highly improper attempt to bring her claims within a narrow line of cases

upholding GBL § 349 claims based on a defendant's practice of charging consumers illegal fees," since "[t]he Complaint says no such thing" and there is no factual basis for such a claim. (*Id.*) Therefore, no error is present by the Magistrate Judge concluding that "'Plaintiff may not circumvent the lack of such a private right of action by alleging a violation, and then bootstrapping that violation into a plausible claim under Section 349.'" (*Id.* at 10 (quoting Report at 22-23).)

To the extent Plaintiff's Objection regarding her § 349 Claim "is sprinkled with assorted specific 'objections'," Celink argues they "distort the Magistrate's findings" and are baseless, failing to establish error. (*Id.*) For example: having considered Plaintiff's allegations, together with the documents properly before the court, Magistrate Judge Shields was correct in finding no showing of unlawful policies by Celink of paying non-delinquent property taxes and commencing improperly noticed foreclosure actions (*id.* at 10-11 (citing Report at 19)); "Celink did not argue, and the [c]ourt did not find, that a HECM lender or its agents 'can pay a borrower's property taxes when they are not delinquent'" (*id.* (quoting Objection at 6)), but, rather, that under specific contract provisions, the lender or its agent may "pay property charges to protect its security interest when a borrower has breached his or her obligations under the Loan Agreement" (*see id.*; *see also* Report at 20 ("Celink paid Plaintiff's property taxes after she failed to supply proof that she complied with the Repair Rider.")); there is no colorable error with the Magistrate Judge finding that, pursuant to Section 5 of the Loan Agreement, "Celink acted to protect its interest in the Property by paying taxes" (*see id.* (quoting Report at 21)); Plaintiff's "claim[] that the [c]ourt 'erred by concluding that Celink did not 'move forward with foreclosure''" (*id.* at 12 (quoting Objection at 14-15)) is a "misreading of the section of the Magistrate's R&R entitled 'Resolution of the Tax Foreclosure'" wherein the Magistrate Judge

stated, "It is also clear that no effort was ultimately made by any lender, either in 2015 or 2016 to move forward with foreclosure and sale of the Property" (Report at 14), meaning "that neither foreclosure led to a judgment of foreclosure or the sale or loss of Plaintiff's home, which is accurate" (Response at 12-13); and, Plaintiff's supposed objection that that the Repair Rider was not put at issue by the Complaint is without merit since "[t]he Complaint directly puts Plaintiff's breach of the Repair Rider at issue" as "Plaintiff accused Celink of engaging in an 'unlawful policy of paying non-delinquent property taxes and commencing unlawful foreclosure proceedings without proper notice'" (*id.* at 13), thereby making the Magistrate Judge's consideration of "the allegations and other documents properly before the [c]ourt" proper in upholding Celink's argument that "paying Plaintiff's property taxes was not unlawful because Section 5 of the Loan Agreement allows it to pay Plaintiff's property taxes because she had breached the Repair Rider" (*id.* at 13; *see also id.* at 14 (collecting cases addressing consideration of certain documents on motions to dismiss)). Moreover, Celink asserts that the Magistrate Judge did not improperly decide disputed factual issues, but, instead and based upon analysis of the allegations in Plaintiff's Complaint and documents properly before the court, reached the legal conclusion that Plaintiff breached the Repair Rider, which is not erroneous. (*See id.* at 14.)

## 2. The Unjust Enrichment Claim

As to Plaintiff's Unjust Enrichment Claim, since "Plaintiff identifies no funds that Celink received at [Plaintiff's] expense, much less any funds for which equity or good conscience require restitution," Celink argues there is no merit to Plaintiff's objection to the Magistrate Judge's recommendation that Plaintiff's Unjust Enrichment Claim be dismissed for failing to state such a claim. (*Id.* at 14-15 (citing Report at 23).)

*D. The Court's Consideration of Plaintiff's Objections*

Having conducted a full review of the record and considered the Report, Plaintiff's Objections thereto, and the applicable law, the Court finds none of Plaintiff's objections are sustainable. In particular, the Court finds that Magistrate Judge Shields: did not resolve factual disputes; applied the proper legal standard to Plaintiff's § 349 and Unjust Enrichment Claims; and, correctly concluded that Plaintiff's allegations fail to state plausible claims against Celink.

    1. <u>Consideration of documents outside of the Complaint;</u>
       <u>No factual determinations made</u>

Celink asked the Court to consider ten exhibits that were outside of the pleadings, which it argued were properly considered in the context of there Rule 12(b)(6) Dismissal Motion, *i.e.*, the Loan Documents, various communications to Plaintiff regarding her repair obligation under the Loan Documents, and filings in the Repair Foreclosure. (*See* Gray Decl. (ECF No. 83-2) at 2-5 (attaching Exhibits 1-10 (*i.e.*, ECF Nos. 83-3 through 83-12, respectively)).) Similarly, Plaintiff attached three letters to her Opposition, which dealt with the Repair Foreclosure and Celink's payment of Plaintiff's First-Half Taxes. (*See* Exhibits A-C (i.e., ECF Nos. 83-15 through 83-17, respectively).) At the Dismissal Motions Hearing, the Magistrate Judge confirmed with the parties that they sought her consideration of the additional documents submitted in support of and opposition to the Dismissal Motion. (*See, e.g.*, Hr'g Tr. 115:4-16:25.) Accordingly, Magistrate Judge Shields prefaced her recommendations with the statement that "all counsel agreed that it was appropriate, within the context of the [Dismissal Motion], to consider all documents referred to in their papers. These documents include loan documents, judicial documents generated during the course of foreclosure proceedings, as well as correspondence among the parties." (Report at 3.) Thus, because the parties proactively sought the court's consideration of their additionally submitted documents and finding said

consideration was not inconsistent with the Rule 12(b)(6) standard of review, to the extent

Plaintiff's objection regarding the Magistrate Judge's alleged improper resolution of factual

disputes can be interpreted as an objection to her consideration of the various documents outside

of the Complaint, that objection is overruled.

Moreover, the Court's *de novo* review of the record confirms that the Magistrate Judge

considered the documents properly before her in methodically detailing the relevant sequence of

events that precipitated this action and as reported in the factual background section of the

Report. That review further makes evidence that Magistrate Judge Shields' factual recitation did

not involve resolving factual disputes but, at most, the interpretation of unambiguous terms of

contracts and related communications, which falls within the purview of the court. *See, e.g.*,

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 111 (2d Cir. 2006)

("[T]he interpretation of an unambiguous contract is a question of law." (citing *K. Bell &*

*Associates v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996); further citation omitted)).

Therefore, Plaintiff's objection regarding purported factual findings by the Magistrate Judge is

overruled.

### 2. Objections regarding the § 349 Claim

There is no basis to sustain Plaintiff's objections to the Magistrate Judge's

recommendation that the § 349 Claim be dismissed for failure to state a plausible claim as no

error is had in said recommendation. As the record supports: the Loan Agreement included

provisions authorizing Celink to "preserve the Property" which "include[ed] payment of taxes" if

Plaintiff failed to perform any of her contractual obligations under that Agreement; Plaintiff was

in default of the Loan Agreement because she had not timely complied with the Repair Rider;

only after securing HUD's prerequisite approval and providing Plaintiff with proper notice, did

Celink commence the Repair Foreclosure; and, pursuant to Loan Agreement, Celink was authorized to "do and pay whatever [wa]s necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes . . . ." (Mortgage, § 5.) Plaintiff's persistent insistence that Celink improperly paid the First-Half Taxes when they were not delinquent as grounds for objecting to the Magistrate Judge's recommendation is unavailing. As Plaintiff herself recognized, the First-Half Taxes were due December 1, 2015, but she had not paid said Taxes by that date. (*See* Objection at 10.) By definition, since she did not pay the First-Half Taxes by December 1, 2015, Plaintiff was delinquent in said payment. *See Merriam-Webster.com Dictionary*, Merriam-Webster (defining "delinquent" as "being overdue in payment"), *available at* https://www.merriam-webster.com/dictionary/delinquent (accessed Sept. 1, 2020). The Town's providing its property owners with a grace period to pay their property taxes, *i.e.*, "a period of time *beyond a due date* during which a financial obligation may be met without penalty or cancellation," does not change the fact that Plaintiff was, contrary to her claim, delinquent in her First-Half Taxes obligation. *See Merriam-Webster.com Dictionary*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/grace%20period (accessed Sept. 1, 2020) (emphasis added). In any event, notwithstanding the payment status of the First-Half Taxes, as the Magistrate Judge corrected found, Celink was well within its rights, as agreed to by Plaintiff pursuant to the Loan Documents (*see* Loan Agreement, § 2.15.2; Mortgage, § 5), and as to which she was further reminded by means of the Repair Foreclosure complaint (*see* ECF No. 83-10 at ¶14), to pay the First-Half Taxes since doing so was a means to protect the Lender's rights in the Property, which right was not limited to the non-exhaustive, exemplary situations of bankruptcy or condemnation as argued by Plaintiff, and which payment occurred after Celink properly commenced the Repair Foreclosure. (*See* Report at 22 ("The facts

here show no unlawful policy to pre-pay taxes without notice. To the contrary, they show contractual and regulatory compliance regarding the commencement of foreclosure proceedings, and the payment of taxes to protect the [L]ender's interest in the mortgaged [P]roperty. This conduct is the opposite of the deceptive conduce alleged by Plaintiff['s] Complaint.").)

Nor was it erroneous for the Magistrate Judge to find that Plaintiff did not plausibly state a § 349 claim based upon the alleged violation of notice provisions in NYSRPL and or New York State Banking Regulations, since "[n]one of th[o]se provisions of state law provide for a private right of action." (*Id.*) To the extent Plaintiff would fault Magistrate Judge Shields for not discussing all the cases she cites in support of her position that other courts have found "§ 349 claims premised on the violation of laws that do not provide a private right of action" (Objection at 22), her contention is unavailing. "[C]ourts are not required to assess each argument in detail. Indeed, 'there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court.'" *Miller v. Metro. Life Ins. Co.*, No. 17-cv-7284, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (quoting *Driessen v. Royal Bank Int'l*, No. 14-cv-1300, 2015 WL 881205, at *2 (D. Conn. Mar. 2, 2015) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 199 (2d Cir. 2014) ("[A] district court is not required to 'write an opinion or lengthy order in every case[.]'" (citation omitted)))) (adopting report and recommendation where the magistrate judge "applied the correct law and adequately explained her reasoning"). By extension, neither is a court required to address each and every case cited by a party in support of its position. Because Magistrate Judge Shields applied the correct law and adequately explained the reasoning for her finding that Plaintiff's § 349 claim is not saved by any claim that Celink violated notices provisions which do not afford private rights of action, this branch of Plaintiff's objection is overruled.

### 3.  Objection regarding Plaintiff's Unjust Enrichment Claim

Plaintiff's disagreement with the Magistrate Judge's finding that "neither equity nor good conscience require restitution of any amount that might ultimately have been added to Plaintiff's [L]oan" since Celink: "acted, at all times, as the servicer of the Loan pursuant to the terms agreed to by the Plaintiff in 2013;" "communicated with Plaintiff properly;" and "protected the Lender's interest in the Property by paying taxes only after the proper commencement of foreclosure proceedings in accord with the terms of the parties' [A]greement" (Report at 23), is no more than her expression of generalized dissatisfaction.  (*See* Objection at 24.)  As such, it is subject to review for clear error only.  *See Butto*, 290 F.R.D. at 379.  Finding no such error in Magistrate Judge Shields' recommendation that Plaintiff's Unjust Enrichment Claim be dismissed for failure to state a plausible claim, Plaintiff's objection to this recommendation is overruled.

### E.  The Magistrate Judge's Remaining Recommendation

As to the Magistrate Judge's recommendation that "any document filed under seal be unsealed" (hereafter, the "Unsealing Recommendation")(Report at 24), despite proper notice to all parties, no party has objected to this Recommendation within the time prescribed in 28 U.S.C. §636(b)(1)(C), nor has any party sought an extension of the deadline.  As the parties were provided with adequate notice of the Report and an express warning of the consequences of a failure to timely file objections thereto (*see* ECF Nos. 131 & 132), their failure to interpose timely objections to the Unsealing Recommendation operates as a waiver of further judicial review.  *See Caidor v. Onondaga Cnty.,* 517 F.3d 601, 602-03 (2d Cir. 2008); *Mario,* 313 F.3d at 766.  Rather, under such circumstances, the Court "need only satisfy itself that there is no clear error on the face of the record to accept a magistrate judge's report and recommendation."

*Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-cv-4849, 2013 WL 6795963, at *1 (E.D.N.Y. Dec. 23, 2013); *see also See* FED. R. CIV. P. 72(b); *Baptichon v. Nevada State Bank*, 304 F. Supp.2d 451, 453 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. 2005). After carefully reviewing the Report, and finding no plain error in either the reasoning or the conclusions reached by the Magistrate Judge as to the Unsealing Recommendation, that Recommendation is adopted it in their entirety.

### F. Plaintiff's Request for Leave to Amend

Lastly, in the final sentence of her "Conclusion" section of her Opposition, in a perfunctory fashion, Plaintiff "requests leave to file an amended complaint" if "the Court grants any part of Celink's motion to dismiss." (Opp'n at 24.) She does not elucidate the manner in which she would amend her Complaint to overcome the deficiencies in her pleadings and that could withstand a subsequent dismissal motion. Celink opposes this request, arguing "leave to amend would be futile." (Reply at 19.) In her Objection, Plaintiff asserts that Magistrate Judge Shields "recommends its findings without prejudice for Plaintiff to amend her Complaint." (Objection at 24.) Yes and no; the Magistrate Judge's amendment recommendation was not a carte blanche one. Rather, based upon the presumption that Defendants Celink and RMF would be dismissed from this action, thereby leaving only Defendant Live Well, a bankrupt entity, Magistrate Judge Shields conditionally "recommend[ed] that this matter be closed at this time without prejudice to re-opening *if Live Well emerges from bankruptcy **and**, at that time, Plaintiff can make a plausible claim against **that** Defendant*." (Report at 24 (emphases added).). This recommendation makes eminent good sense. Thus, the Court rejects Plaintiff's mischaracterization of the Magistrate Judge's amendment recommendation and adopts said recommendation as articulated by the Magistrate Judge. *Cf., generally, Malin v. XL Capital,*

*Ltd.*, 312 F. App'x 400, 403 (2d Cir. 2009) (summary order) (affirming denial of leave to replead where plaintiff, *inter alia*, did not make a formal motion for leave to amend or proffer an amended complaint for the court's review).

* * *

To the extent not articulated, the Court has considered Plaintiff's remaining arguments in support of her objections to the Report and finds them to be without merit.  Having conducted a *de novo* review of the record and finding no error, the Plaintiff's objections are overruled. Magistrate Judge Shields' Report thorough and well-reasoned recommendations regarding Celink's Dismissal Motion is adopted in its entirely, with the claims against Celink being dismissed.  (*See* Report at 24.)

V.   <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that:

*A.*  Celink's Dismissal Motion is granted in its entirety;

*B.*  Any document filed under seal in this case are to be unsealed;

*C.*  The Clerk of Court is directed to close this case; and

*D.*  The October 13, 2020 Status Conference scheduled in this case is cancelled.


SO ORDERED this 15th day of August 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge