# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARGARET SHAKESPEARE and MARIANNE RENOIS AS ADMINISTRATOR, FIDUCIARY AND BENEFICIARY OF AND FOR THE ESTATE OF ELLIS DEANGELO, on behalf of themselves and all others similarly situated,<br><br><div align="center">Plaintiff,</div><br>- against –<br><br>COMPU-LINK CORPORATION D/B/A CELINK, REVERSE MORTGAGE FUNDING, LLC and LIVE WELL FINANCIAL, INC.,<br><br><div align="center">Defendants.</div> | Case No. 18-cv-07299-SJF-AYS<br><br>Sandra J. Feuerstein, USDJ<br>Anne Y. Shields, USMJ |

<div align="center">

**[Proposed] FIRST AMENDED CLASS ACTION COMPLAINT**

</div>

1.     Plaintiffs Margaret Shakespeare and Marianne Renois ("Plaintiffs"), by and through their counsel, on behalf of themselves and all others similarly situated, allege based upon personal knowledge as to Plaintiffs' own acts and observations, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against defendants Compu-Link Corporation d/b/a Celink ("Celink"), Reverse Mortgage Funding, LLC ("RMF") and Live Well Financial, Inc. ("LWF") (collectively "Defendants"), as follows:

**I.     NATURE OF THE ACTION**

2.     This action arises out of injuries caused to borrowers of Home Equity Conversion Mortgages ("HECMs"), the federally-insured version of so-called "reverse-mortgage" loans, due to systemic violations by Celink, RMF and LWF of borrower protections provided by loan agreements, federal laws and New York State laws.

3.     RMF and LWF are HECM loan lenders, issuers and "master servicers." Both admit they entirely farmed-out their compliance obligations to a "subservicer" called Celink. All three Defendants are directly liable to Plaintiffs and the Classes defined herein for those violations.  RMF is further liable as the assignee and successor by law and contract to LWF.

4.     Acting for its principals, Celink pays taxes when it is not entitled to do so and it force places hazard insurance policies ignoring whether there is already an existing hazard policy on the property.  These practices lead to the assessment of a host of improper and unlawful fees, costs, charges, penalties, additional interest and mortgage insurance charges to borrowers' HECM loan balances.  Too often, and often without required notices, Celink files improper foreclosure lawsuits for RMF, LWF and others to take borrowers' homes.  Moreover, Defendants send false and deceptive form letters to perpetuate a position that HECM and reverse mortgage borrowers are in default or delinquent in paying property charges that are not in fact owed or not owed for the reasons claimed in Celink's form letters.  These practices violate the law and contravene the protections afforded seniors by HECM loans.

5.     For example, Celink sent form letters to Plaintiff Shakespeare falsely and deceptively indicating that she had not paid her property taxes.  Similarly, Celink sent form letters to Plaintiff Renois falsely and deceptively stating that she, as administrator for her father's estate, failed to maintain hazard insurance on the home that secured the HECM loan. It then sued both in foreclosure, in breach of the HECM and reverse mortgage loan agreements, adding a host of improper fees, costs, charges, penalties, interest and mortgage insurance.

6.     Celink is the agent of the HECM lenders and servicers, here RMF and LWF, who are Celink's principals.  RMF and LWF failed to adequately supervise, detect and prevent

Celink's misconduct and systemic violations. RMF and LWF are liable for the servicing violations of Plaintiffs' and Class members' loans, even if subservicing was provided by Celink.

7. Plaintiffs are HECM borrowers or their legal representatives injured by Celink's, RMF's and LWF's unlawful acts.

8. On behalf of themselves and classes of similarly situated HECM and reverse mortgage borrowers, Plaintiffs plead the following claims against Celink, RMF and LWF:

(a) Breach of Contract, by reason of violations of federal law;

(b) Breach of Contract, by reason of violations of New York law;

(c) Breach of Contract, for breach of specific loan agreement provisions;

(d) Breach of Contract, for adding false, inflated and unreasonable "attorneys fees / costs" to HEMC and reverse mortgage loan balances;

(e) Breach of Duties of Good Faith and Fair Dealing;

(f) Violations of Real Estate Settlement Procedures Act ("RESPA") for violating the servicing obligations contained in 12 U.S.C. §2605(e);

(f) Violations of New York General Business Law ("GBL") §349, *et seq*.; and

(g) Unjust enrichment.

9. On behalf of herself and a class of similarly situated borrowers, Plaintiff Renois further pleads claims against Celink for violations of the RESPA 12 U.S.C. §2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37, prohibiting unlawful practices concerning the imposition of force placed insurance.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and RESPA

12 U.S.C. §§ 2605(f) and 2614. The Court has supplemental jurisdiction over Plaintiffs' and the Classes' state and common law claims pursuant to 28 U.S.C. § 1367.

11.     This Court further possesses subject matter jurisdiction under 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000, there are in excess of 100 class members and members of the Class are citizens of a state different from that of Defendants.

12.     This Court has personal jurisdiction over all Defendants. Defendants are each authorized to do business in New York, maintain continuous and systemic contacts with New York and this District, do business in New York and this District specifically related to the claims alleged in this Complaint, and has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District under 28 U.S.C. §1391.

## III.    THE PARTIES

14.     Plaintiff Shakespeare is a resident and owner of a home that is the subject of this action located in Peconic, New York, within this District. In September 2013, Plaintiff closed on a HECM loan originated by LWF. LWF eventually "pooled" and sold that loan under a Ginnie Mae Mortgage-Backed Security Program, retaining the servicing rights and obligations, which it sold to RMF in November 2018. Celink is the subservicer of Plaintiff Shakespeare's HECM and reverse mortgage loan.

15.     Plaintiff Renois resides in a home that is the subject of this action located in New

Hyde Park, New York, within this District.  Plaintiff Renois is the administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, her deceased father.  Plaintiff Renois' mother deceased prior to her father.  In 2010, Plaintiff Renois' parents obtained a HECM from Mortgage Enterprises, Ltd.  That HECM loan was sold and acquired by WVMF Funding LLC. Celink is the subservicer of Plaintiff Renois' parents' HECM and reverse mortgage loan.

16.     Defendant LWF is a Delaware corporation  In its Federal Truth-In-Lending Disclosures, LWF lists its address as 1011 Boulder Springs Drive, Ste. 420, Richmond, Virginia.  LWF marketed itself as a lender and servicer of HECM loans in New York and throughout the United States.  It represented itself on its website to be "one of the largest reverse mortgage lenders in the country[.]"  In letters to Plaintiff, LWF states that it is, "a registered servicer with the Superintendent of the New York State Department of Financial Services." Since this lawsuit was originally filed, three of LWF's executives, including its chief executive officer and chief financial officer, were arrested by the United States Department of Justice and LWF has been sued by the United States Securities and Exchange Commission (the "SEC").   Two have pled guilty.   In 2019, after this case was filed, certain of LWF's creditors filed an involuntary bankruptcy petition in the United States District Bankruptcy Court for the District of Delaware, which bankruptcy proceeding is ongoing.[1]

17.     Defendant Celink is a Michigan corporation with its principal place of business in Lansing, Michigan.  Celink claims on its website to be the largest independent servicer of reverse mortgages in the United States, and its clients include regional to nationwide lenders, banks, and insurance companies.  Celink claims to have developed and uses a proprietary Java-

---

[1]   LWF filed an Answer to the *Class Action Complaint*.  Dkt. 37.  Due to automatic bankruptcy stay, Plaintiffs consent to a stay of LWF's obligation to answer this amended complaint until further direction of the Court.

based reverse mortgage servicing platform, ReverseServ[TM], for servicing FHA HECM loans. According to its website, "Celink's reverse mortgage subservicing portfolio currently exceeds $40 billion." "In addition, it is licensed to service reverse mortgages in all 50 states, including Puerto Rico and the U.S. Virgin Islands." Celink is the subservicer of Plaintiff Shakespeare's and Plaintiff Renois' parents' HECM loans. Celink's Chief Executive Officer is the co-cofounder and prior Chief Operating Officer of RMF.

18.      Defendant RMF is a Delaware limited liability company with its principal place of business in New Jersey and offices in New York within this District. RMF is a lender and servicer of HECM loans in New York and throughout the United States, claiming on its website to be, "one of the nation's leading reverse mortgage lenders." In connection with a $4 billion acquisition from LWF in November 2018, RMF is the master servicer and legal owner of Plaintiff Shakespeare's HECM loan and other Class members' HECM loans. By reason of that acquisition, RMF became liable as the assignee to and successor of LWF. RMF is registered in the State of New York as an Exempt Mortgage Servicer, because it uses a third party to subservice all of the loans to which it owns servicing rights in its portfolio.

## IV.    BACKGROUND

19.      A reverse mortgage or HECM loan is a home loan for seniors that requires no monthly mortgage payments. Borrowers have the option of choosing to pay their property or real estate taxes and homeowner's insurance or having the lender or servicer pay them from HECM loan proceeds. In New York, home owners age 60-70 are entitled to the protections afforded to reverse mortgage borrowers under New York Real Property Law ("RPL") §280, while borrowers over age 70 are protected under New York RPL §280-a.

20.     Federally-insured HECM loans were developed and authorized by Congress to enable seniors to convert the equity in their homes to cash to help them meet their monthly expenses and protect them from losing their homes.  According to a website maintained by the United States Department of Housing and Urban Development ("HUD"), "The Home Equity Conversion Mortgage (HECM) is Federal Housing Administration's (FHA) reverse mortgage program which enables you to withdraw some of the equity in your home.  You choose how you want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both."  Source:  https://www.benefits.gov/benefits/benefit-details/709.

21.     According to the United States Government Accountability Office ("GAO"), "While HECMs have the potential to play a key role in meeting the needs of seniors facing financial hardship or seeking to improve their quality of life, the product is relatively complex and costly and the population it serves is vulnerable."  GAO, Testimony Before the U.S. Senate, Special Committee on Aging, *Reverse Mortgages[,] Product Complexity and Consumer Protection Issues Underscore Need for Improved Controls over Counseling for Borrowers* (June 29, 2009) (Statement of Matthew J. Scire, Director of Financial Markets and Community Investment).

22.     The HECM agreements between a HECM lender / mortgagee and a borrower / mortgagor generally consists of a uniform note, a uniform mortgage or deed of trust, and a uniform conversion loan agreement, each of which have standard terms that lenders are required by HUD to use.  Those HECM loan agreements must conform to and comply with the National Housing Act and federal regulations promulgated by HUD and FHA, and the state laws in which the properties are located.

23. In New York, HECM loans are authorized by New York RPL §§280 and 280-a and New York Banking Law §6-h, along with New York rules and regulations.

## V. STATEMENT OF FACTS

**Breach of Loan Agreements Due to Violations of Federal Law**

24. The standard HUD-mandated HECM loan agreements mandate that lenders and servicers comply with federal law and the law in the State where the property is located, here New York.

25. Plaintiff Shakespeare's and Plaintiff Renois' parents' uniform and standardized *Mortgage* agreements (the "*Mortgage Agreements*") each state at Section 17,

> **Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis added).

26. The same contractual obligation to comply with federal law and New York law is contained in standardized *Home Equity Conversion Loan Agreements* (the "*Conversion Loan Agreement*"). Section 6.4 of Plaintiff Shakespeare's and Plaintiff Renois' parents' *Conversion Loan Agreements* state: "**Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.*" (Emphasis added).

27. Celink, RMF and LWF breached Plaintiffs' and Class members' loan agreements due to their violations of 24 C.F.R. §206.205. 24 C.F.R. §206.205 forbids a HECM mortgagee,

servicer or subservicer from paying borrowers' property taxes that are not delinquent. Another HUD regulation, 24 C.F.R. §27(b)(6), states that 24 C.F.R. §206.205 "must" be incorporated in all HECM loan documents. HECM lenders, servicers and subservicers are not afforded discretion to decide when tax payments are delinquent. Rather, according to HUD, "Taxes are considered 'current' for purposes of CT-22 review when taxes are paid prior to delinquency *as defined by the local taxing authority*." HUD Mortgage Letter 2018-08 (Emphasis added).

28.     A recent GAO Report confirms that HECM loan servicers many *not* pay a borrower's property taxes unless and until, "a HECM borrower does not pay his or property charges." Government Accounting Office, *Reverse Mortgages, FHA Needs to Improve Monitoring and Oversight of Loan Outcomes and Servicing* (Sept. 2019).

29.     In the Town of Southold, Suffolk County, where Plaintiff Shakespeare resides, borrowers' first-half year tax payments are considered current and timely if paid before January 10. That fact is admitted by Celink in this litigation. *See* Dkt. 83-1 at 2, 9.

30.     In the Town of Hempstead, Nassau County, where Plaintiff Renois' parents resided, and Plaintiff Renois resides, borrowers' first-half year tax payments are considered current and timely if paid before February 10.

31.     In violation of 24 C.F.R. §206.205 and 24 C.F.R. §27(b)(6)), and therefore in breach of her loan agreements, Celink and LWF paid Plaintiff Shakespeare's 2015 first-half property taxes ($2,009.45) even though those taxes were neither delinquent or untimely. The Town of Southold did not declare those taxes delinquent or untimely, and neither Celink nor LWF reported those taxes to HUD as untimely as would be required by 24 C.F.R. §203.466(b).

32.      In violation of 24 C.F.R. §206.205 and 24 C.F.R. §27(b)(6), and therefore in

breach of her loan agreements, Celink paid Plaintiff Renois' parents' 2018 first-half property taxes ($5,779.31) even though those taxes were neither delinquent or untimely. The Town of Hempstead did not declare those taxes delinquent or untimely, and Celink did not report those taxes to HUD as untimely as would be required by 24 C.F.R. §203.466(b) and 24 C.F.R. 206.205(e)(2)(ii).

33. Celink, RMF and LWF further breached Plaintiff Shakespeare's and Class members' loan agreements due to their violations of 24 C.F.R. §206.125(b), which states: "*If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense* but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the borrower or other permissible party." (Emphasis added).

34. On two occasions, Celink and LWF declared Plaintiff Shakespeare's HECM loan due and payable. After each occasion, in violation of 24 C.F.R. §206.125(b), and therefore in breach of her HECM loan agreements, Celink and LWF imposed added "appraisal fees" of $335 each to Plaintiff Shakespeare's loan balance. As confirmed by Plaintiff Shakespeare's monthly loan statements, Celink and LWF unlawfully added these appraisal fees on August 18, 2015 and again on April 27, 2016. *See* Dkt. 68-3 (attaching monthly statements). RMF subsequently ratified the addition of those appraisal fees.

35. Celink, RMF and LWF further breached Plaintiffs and Class members' loan agreements due to their violations of 24 C.F.R §206.125(d), which prohibits the filing of any state foreclosure lawsuit until *after* the mortgagee, servicer and servicing agent comply with all State law requirements for filing a foreclosure lawsuit.

36. Celink and LWF commenced two foreclosure lawsuits against Plaintiff

Shakespeare in the New York State Supreme Court located in Suffolk County. The first foreclosure action was filed in violation of the pre-filing notice requirements mandated by New York RPL §280(2)(f). The second foreclosure lawsuit was filed in violation of the pre-filing notice requirements mandated by New York RPL §280(2)(f) and the pre-filing notice and substantive requirements mandated by 3 N.Y.C.R.R. §79.9. As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Shakespeare's HECM loan by Celink and LWF, and now ratified by RMF, were added in violation of 24 C.F.R §206.125(d).

37. A New York Freedom of Information Law ("FOIL") response from the Suffolk County Office of the Aging confirms that Celink and LWF did not provide pre-filing notice to the Office of the Aging prior to filing either the first or second foreclosure lawsuits against Plaintiff Shakespeare.

38. Celink commenced a foreclosure lawsuit against Plaintiff Renois as the "fiduciary / administrator" for her father's estate in the New York State Supreme Court located in Nassau County. That foreclosure action was filed in violation of the pre-filing notice requirements mandated by New York RPL §280-a(2)(m). As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Renois' parents' HECM loan by Celink were added in violation of 24 C.F.R. §206.125(d).

39. Celink further breached Plaintiff Renois' parents' and Class members' loan agreements due to their violations of 24 C.F.R §206.125(d), resulting from its violation of New York law regulating force placed insurance, 11 N.Y.C.R.R. §227.5. Among other requirements, New York law mandates the refund of all force placed insurance premiums and related fees with 15 days from notice that a borrower maintains hazard insurance. Even though Plaintiff

Renois provided oral and written notice to Celink on multiple occasions, including on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020 and June 8, 2020, that she maintained hazard insurance on her parents' home that secures the HECM loan, Celink persisted in obtaining and charging Plaintiff Renois' parents' HECM force placed insurance premiums and related charges, including inspection fees and attorney fees / costs, from June 2018 until July 2020. Celink ignored the repeated notices of proof of hazard insurance provided directly to it by Plaintiff Renois. Finally, on July 30, 2020, Celink admitted in writing that Plaintiff Renois maintained the required hazard insurance on her parents' home for the *entire time* Celink had imposed a force placed insurance policy and related fees on her parents' HECM loan. Celink accompanied that admission with a credit of some or all of the insurance premiums to the HECM loan, long after the 15-day refund deadline. Celink still has not refunded or credited back the fees related to its imposition of force placed insurance on Plaintiff Renois parents' HECM loan, in further violation of 11 N.Y.C.R.R. §227.5 and therefore 24 C.F.R. §206.125(d).

40.    Celink further breached Plaintiff Renois' parents' and Class members' loan agreements due to their violations of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g). Like 11 N.Y.C.R.R. §227.5, RESPA and RESPA Regulation X mandate the refund of all force placed insurance premiums and related fees within 15 days from notice that a homeowner maintains hazard insurance. Additional violations by Celink result from the renewal of a force placed insurance policy when as here, Celink was provided with actual notice that Plaintiff Renois maintained hazard insurance on her parents' home that secured the HECM loan.

41.     Celink further breached Plaintiffs and Class members' loan agreements due to their violations of RESPA 12 U.S.C. §§ 2605(e), requiring the timely response, investigation and resolution of quailed written requests.  Although both Plaintiff Shakespeare and Plaintiff Renois made qualified written requests, Celink, RMF and LWF did not timely respond, investigate and provide the required refunds and credits to loan balances.

42.     Celink's, RMF's and LWF's RESPA and RESPA Regulation X violations not only constitute breach of Plaintiff Shakespeare's and Plaintiffs' Renois' parents' HECM loan agreements, but substantiates a separate and independent RESPA claim and private rights of action under RESPA.

43.     Celink, RMF and LWF further breached Plaintiffs' and Class members' loan agreements due to their violations of 24 C.F.R. §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM borrowers' loan balances.  Celink, RMF and LWF violated 24 C.F.R. §206.207 by adding charges and fees to Plaintiffs' and Class members' loans related to their unlawful payment of property charges (taxes and insurance), unlawful assessment of appraisal and inspection fees, unlawful filing, preparation and maintenance of foreclosure lawsuits without complying with federal and state notice requirements and the imposition of attorneys' fees and costs containing false, inflated and unreasonable costs.

44.     For Plaintiff Shakespeare, the unlawful fees and charges added to her HECM loan in violation of 24 C.F.R. §206.207 exceed $13,900 and continue to increase due to interest and inflated mortgage insurance charges.

45.     For Plaintiff Renois, the unlawful fees and charges added to her parents' HECM loan in violation of 24 C.F.R. §206.207 exceed $5,000 and continue to increase due to interest

and inflated mortgage insurance charges.

**Breach of Loan Agreements Due to Violations of New York Law**

46.     The standard HUD-approved HECM loan agreements mandate that lenders and servicers comply with the law in the State where the property is located, here New York.

47.     Celink, RMF and LWF breached Plaintiffs' and New York Subclass members' loan agreements due to their violations of New York RPL 280(2)(f) and RPL §280-a(2)(m). Both statutes provide:

> [I]n the event that an authorized lender or holder of the reverse mortgage loan intends to initiate foreclosure proceedings the mortgagor shall have the right to designate a third party who shall be notified. In the event that the mortgagor has not designated a third party to receive such notice of foreclosure, then the authorized lender or the holder of said reverse mortgage loan *shall notify* the local or county office for the aging of its intent to commence foreclosure proceedings. Such entity *shall take* appropriate action to protect the interests of the mortgagor;

(Emphasis added).

48.     Celink and LWF commenced two foreclosure lawsuits against Plaintiff Shakespeare in the New York State Supreme Court located in Suffolk County. In violation of New York RPL §280(2)(f), and therefore in breach of Plaintiff Shakespeare's HECM and reverse mortgage loan agreements, Celink and LWF did not provide the Suffolk County Office of the Aging, or any Office of the Aging office, with pre-filing notice before filing each foreclosure lawsuit. Since those foreclosure lawsuits were never lawfully filed, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Shakespeare's HECM loan as a result of those foreclosure lawsuits, which has been ratified by RMF, constitutes injury to Plaintiff Shakespeare for Celink's, LWF's and RMF's breach of contract.

49.     Celink commenced a foreclosure lawsuit against Plaintiff Renois as the

"fiduciary / administrator" of her father's estate in the New York State Supreme Court located in Nassau County. In violation of New York RPL §280-a(2)(m), and therefore in breach of Plaintiff Renois parents' HECM loan agreements, Celink did not provide the Nassau County Office of the Aging, or any Office of the Aging office, with pre-filing notice before filing that foreclosure lawsuit. Since those foreclosure lawsuits were never lawfully filed, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Renois' parents' HECM and reverse mortgage loan as a result of that foreclosure lawsuits constitutes injury to Plaintiff Renois for Celink's breach of contract.

50. Celink, RMF and LWF further breached Plaintiff Shakespeare's and New York Subclass members' loan agreements due to their violations of 3 N.Y.C.R.R. §79.9. 3 NYCRR §79.9 prohibits filing a foreclosure lawsuit in the New York State courts for failure to pay property taxes or hazard insurance when those property charges are not delinquent. Section 79.9 provides in relevant part:

(a) [NY RPL] 280 and 280-a loans may be terminated by the lender *solely* in the event of any of the following: …

(5) the mortgagor(s) *fails to pay real estate taxes* or maintain all insurance required pursuant to the security agreement.

(i) If the mortgagor(s) *fails to pay taxes* or maintain all required insurance, then the lender *must* within 10 business days of learning of such event, give written notice of such failure to the mortgagor(s) and the third-party, if any, designated by the mortgagor(s) to receive notice of any event that could lead to termination. The lender must give the mortgagor(s) 30 calendar days to cure such failure. In addition, the notice to the mortgagor(s) and the third party must advise the mortgagor(s) of his or her right to cure.

(ii) The failure to pay taxes or maintain all required insurance *shall not* be construed to be a termination event *unless* the lender has complied with the provisions set forth in subparagraph (i) of this paragraph.

3 NYCRR §79.9(a)(5) (Emphasis added).

51.     The foreclosure lawsuit filed by Celink and LWF against Plaintiff Shakespeare in August 2016 alleged default due to a claimed failure of Plaintiff Shakespeare to pay or refund property taxes for the first half of 2015.  That foreclosure lawsuit was filed in violation of 3 N.Y.C.R.R. §79.9(a)(5), and therefore in breach of Plaintiff Shakespeare's HECM and reverse mortgage loan agreements. As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to Plaintiff Shakespeare's HECM loan as a result of those foreclosure lawsuits, which has now been ratified by RMF, constitutes injury to Plaintiff Shakespeare for Celink's, LWF's and RMF's breach of contract.

52.     Celink and LWF violated 3 N.Y.C.R.R. §79.9(a)(5), which violations have been ratified by RMF, because they did not provide the mandatory 10-business day notice to Plaintiff Shakespeare before paying her property taxes.

53.     Prior to paying Plaintiff Shakespeare's first-half 2015 property taxes, neither Celink nor LWF provided notice to her that either would be paying her property taxes.

54.     Celink and LWF further violated 3 N.Y.C.R.R. §79.9(a)(5), which violation has been ratified by RMF, because they filed a foreclosure lawsuit even though Plaintiff Shakespeare had not failed to timely pay her real estate taxes for the first half of 2015.

55.     On January 7, 2016, Plaintiff Shakespeare timely paid the first installment of her 2015 property taxes.  She was not delinquent or untimely in making that property tax payment, or any prior property tax payment.

56.     The Town of Southold did not declare Plaintiff Shakespeare's first-half 2015 taxes delinquent or untimely, and neither Celink nor LWF reported those taxes to HUD as

untimely as would be required by 24 C.F.R. §203.466(b).

57.     Celink admitted in this lawsuit that Plaintiff Shakespeare timely paid her first-half 2015 property taxes. Dkt. 83-1 at 2 ("Plaintiff's taxing authority affords taxpayers a grace period until January 10 [of any given tax year], but payments received after that date are assessed a penalty based on a percentage of the tax payment due.") (modification in original).

58.     Celink further admitted in an August 11, 2016 letter to Plaintiff Shakespeare that the reason it paid Plaintiff Shakespeare's first-half 2015 tax was *not* due to any untimely payment or failure to pay by Plaintiff Shakespeare.  Dkt. 83-16.  Given that Celink filed the foreclosure lawsuit against Plaintiff Shakespeare on August 25, 2016, after the date of this August 11, 2016 letter, Celink's violations of 3 NYCRR §79.9(a)(5), and resultant breach of Plaintiff Shakespeare's HECM and reverse mortgage agreements, was knowing, willful and intentional.

59.     LWF (or Celink as its agent using LWF's letterhead) further admitted in an April 22, 2016 letter to Plaintiff Shakespeare that the reason it or Celink paid Plaintiff Shakespeare's first-half 2015 taxes was *not* due to any untimely payment or failure to pay by Plaintiff Shakespeare.  Dkt. 83-17.  Given that LWF permitted Celink to file the foreclosure lawsuit against Plaintiff Shakespeare on August 25, 2016, after the date of this April 22, 2016 letter, LWF's and Celink's violations of 3 NYCRR §79.9(a)(5), and resultant breach of Plaintiff Shakespeare's HECM and reverse mortgage agreements, were knowing, willful and intentional.

60.     Celink's August 11, 2016 letter confirmed that Celink maintains a policy to pay HECM and reverse mortgage borrowers' property taxes under certain circumstance when borrowers' taxes are not delinquent or untimely.  Celink's counsel admitted that to this Court in

this litigation. *See* Dkt. 120 (2/4/20 Hr'ing Tr.) at 59:8-9 ("MS. GRAY: Right, and we don't dispute that Celink did that for ***all borrowers*** in foreclosure.") (Emphasis added).

61.     LWF's April 22, 2016 letter (or Celink as its agent using LWF's letterhead) confirmed the LWF and Celink policy to pay HECM and reverse mortgage borrowers' property taxes under certain circumstance when borrowers' taxes are not delinquent or untimely.

62.     LWF's August 31, 2017 letter (or Celink as its agent using LWF's letterhead) again confirmed the LWF and Celink policy to pay HECM and reverse mortgage borrowers' property taxes under certain circumstance when borrowers' taxes are not delinquent or untimely.

63.     Celink further breached Plaintiff Renois parents' and New York Subclass members' loan agreements due to its force placed insurance violations of 11 N.Y.C.R.R. §227.5 discussed above. As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to HECM and reverse mortgage loan as a result of those violations constitutes injury to Plaintiff Renois and the New York Subclass for Celink's breach of contract.

**Breach of Standard HECM Loan Contractual Provisions**

64.     The standard *Conversion Loan Agreement* at Section 2.10.1 provides that a borrower may elect to self-pay property charges, including property taxes.

65.     Celink, RMF and LWF breached Section 2.10.5 of the standard *Conversion Loan Agreement*, and its duties of good faith and fair dealing, by paying Plaintiffs' and Class members' property taxes when they were neither delinquent nor untimely. Violations by Celink and LWF have been ratified by RMF.

66.     Section 2.15.2 of the *Conversion Loan Agreement* states that only when, "there is

18

a legal proceeding that may significantly affect the Lender's rights in the Property (*such as a proceeding in bankruptcy, or condemnation or to enforce laws or regulations*), then the Lender may do and pay whatever is necessary to protect the value of the Property and the Lender's rights in the Property." (Emphasis added).

67. Similar to Section 2.15.2 of the *Loan Agreement*, Section 5 of the standard the *Mortgage Agreement* sets forth the conditions that must be satisfied before a Lender can pay the property taxes for a borrower who made the self-pay election:

> If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (*such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations*), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2. (Emphasis added).

68. Since Plaintiff Shakespeare timely paid her 2015 first-half property taxes, payment of such taxes by Celink or LWF was not "necessary to protect the value of the Property and the Lender's rights in the Property."

69. Since Plaintiff Renois timely paid her parents' first-half 2018 property taxes, payment of such taxes by Celink was not "necessary to protect the value of the Property and the Lender's rights in the Property."

70. Moreover, since no legal proceeding that "significantly affect[ed] the Lender's rights in the Property (such as a proceeding in bankruptcy, or condemnation or to enforce laws or regulations)" was ongoing when Celink paid Plaintiffs' non-delinquent property taxes, payment of those taxes was in breach of *Conversion Loan Agreement* Section 2.15.2 and Section 5 of the *Mortgage Agreement*. RMF has ratified those violations.

71.     Section 20 of the standard *Mortgage Agreement* sets forth three contractual conditions that must be satisfied before Celink, RMF or LWF is permitted to file a foreclosure lawsuit.  Section 20(a) first requires that a borrower be in breach of an obligation under her *Note*, *Conversion Loan Agreement* or *Mortgage Agreement*.  Since Plaintiff Shakespeare had timely made all property tax payments before Celink and LWF filed the second foreclosure lawsuit against her in August 2016, Celink and LWF were in breach of Section 20(a) of her *Mortgage Agreement*, which violations have been ratified by RMF.

**Plaintiff Shakespeare Fully and Timely Satisfied the
Repair Rider to her Conversion Loan Agreement**

72.     A Repair Rider to Plaintiff Shakespeare's *Conversion Loan Agreement* (not to her *Mortgage Agreement*), required minor repairs to her home.

73.     Plaintiff Shakespeare made all necessary repairs and paid others to assist making those repairs.

74.     Her compliance was detailed in a letter she sent to the New York Department of Financial Services, complaining of Celink's and LWF's conduct. As she stated in that letter, "[T]he repair inspection of July 16, 2015 was accepted by HUD as final--repairs, per rider, completed." Dkt. 121-3.

75.     When Celink and/or LWF disputed that Plaintiff Shakespeare made the required repairs, Plaintiff Shakespeare complained of their misconduct to HUD.  HUD agreed with Plaintiff Shakespeare that all required repairs had been made by July 2015, *prior to* the filing by Celink and LWF of the first foreclosure lawsuit in October 2015.

76.     Disagreeing with Celink and LWF, HUD directed Celink and LWF to dismiss the foreclosure lawsuit they had filed in October 2015 claiming that Plaintiff Shakespeare had

not completed the required repairs.

77.    In response to that lawsuit, Plaintiff Shakespeare filed an answer stating, "I am in compliance with all terms of the mortgage" and demanded payment of the $2,100 repair set aside being withheld by Celink and LWF.

78.    A March 17, 2016 letter from Celink on LWF's letterhead admits, "We have received approval from your lender to close your repair file."

79.    Celink also admits in an August 11, 2016 letter that, "HUD advised that they would consider the repairs complete" and that "HUD advised us to close out the repair requirement and they rescinded the Due and Payable and Foreclosure for non-completed repairs." Dkt. 83-16.

80.    Celink's and LWF's errant belief that Plaintiff Shakespeare had not complied with the Repair Rider to her *Conversion Loan Agreement* (not her *Mortgage Agreement*), was not a sufficient reason for Celink and LWF to breach Plaintiff Shakespeare's HECM loan agreements, violate federal and New York laws and make deceptive statements and omissions.

**False and Deceptive Statements and Omissions Made to Plaintiff Shakespeare**

81.    On or about March 14, 2016, Celink, using LWF's letterhead, sent a form letter to Plaintiff Shakespeare. That letter falsely and deceptively stated and implied that Plaintiff Shakespeare had not timely paid her first-half 2015 property taxes. Dkt. 85-15. That form letter further deceptively omitted the real reason Celink paid Plaintiff Shakespeare's property taxes, which was subsequently admitted in Celink's August 11, 2016 letter.

82.    Celink's March 14, 2016 further falsely and deceptively stated that it had made a prior request to Plaintiff seeking a confirmation that she had paid her first-half 2015 property

taxes.

83.     In a form letter dated April 12, 2016, Celink, again on LWF's letterhead, continued to deceptively omit the real reason it paid Plaintiff Shakespeare's first-half 2015 property taxes, later admitted in Celink's August 11, 2016 letter, thereby reasserting and perpetuating the false and deceptive statement made in its March 14, 2016 letter that Plaintiff Shakespeare had not timely paid her first-half 2015 property taxes.

84.     Since at least 2015 and continuing to the present, Celink, LWF and RMF have sent Plaintiff Shakespeare monthly statements deceptively misstating the amount owed on her HECM loan, due to the addition of unlawful fees, charges, costs, penalties, interest and mortgage insurance.

85.     Plaintiff Shakespeare has been damaged and injured as a direct and proximate result of the unlawful acts of Celink, RMF and LWF.  Between October 20, 2015 and April 18, 2017, Celink added $13,940.64 to Plaintiff Shakespeare's HECM loan balance in fees, costs, charges and penalties related to the conduct alleged in this Complaint.  Those fees, costs, charges and penalties s are listed on her monthly statements such as "Payment for Property Inspection," "Payment for Property Appraisal," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation."  All, or a substantial portion, of those fees, costs, and charges, are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint.

86.     In addition, Celink, RMF and Celink have charged, *and continues to charge*, compounding interest to Plaintiff Shakespeare's HECM loan balance that includes based the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff

Shakespeare's HECM loan.

87.     In addition, Celink, RMF and LWF have charged, *and continues to charge*, increased Mortgage Insurance Premiums based on a loan balance that includes the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff Shakespeare's HECM loan.

88.     Before filing this action, Plaintiff Shakespeare requested in writing that Celink and LWF refund and reverse the additional fees, costs, charges and interest added to her HECM principal loan balance.  In an August 31, 2017 letter, Celink and LWF refused.

**False and Deceptive Statements and Omissions Made to Plaintiff Renois**

89.     In a letter dated August 28, 2018, Celink sent a "second and final notice" representing to Plaintiff Renois that the hazard insurance policy she maintains for the home that secures her parents' HECM loan had expired.  That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.  All prior and subsequent letters sent by Celink to Plaintiff Renois making the same false accusations were equally deceptive.

90.     In a letter dated October 1, 2018, Celink sent a letter to Plaintiff Renois stating that Celink had obtained a force placed insurance policy on the home that secures her parents' HECM loan because Plaintiff Renois had not maintained a hazard insurance policy on the home.  That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.

91.     In a letter dated June 1, 2020, Celink sent a letter to Plaintiff Renois stating that

Celink would renew the force placed insurance policy on the home that secures her parents' HECM loan because Plaintiff Renois had not maintained a hazard insurance policy on the home. That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.

92. In a letter dated June 23, 2020, Celink sent a letter representing to Plaintiff Renois that the hazard insurance policy she maintains for the home that secures her parents' HECM loan had expired. That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.

93. In two letters dated July 30, 2020, Celink acknowledged the falsity of its prior letters disputing the purchase and maintenance by Plaintiff Renois of hazard insurance on the home that secures her parents' HECM loan.

94. Since at least 2018 and continuing to the present, Celink has sent Plaintiff Renois monthly statements deceptively misstating the amount owed on her parents' HECM loan, due to the addition of unlawful fees, charges, costs, penalties, interest and mortgage insurance.

95. Plaintiff Renois has been damaged and injured as a direct and proximate result of the unlawful acts of Celink. According to documents submitted to the New York State court, as of July 31, 2019, attorneys' fees, inspection and preservation fees alone exceeding $5,000 have been added to her parents' HECM loan. Those fees, costs, charges and penalties are listed on her monthly statements as "Payment for Property Inspection," "Payment for Attorney Fees / Costs" and "Payment for Property Preservation." All, or a substantial portion, of those fees,

costs, and charges, are improper based on the breaches of contract, breaches of implied contractual covenants, and unlawful acts, practices, and conduct alleged in this Complaint. Further, some or all of the property tax payments and force placed insurance premiums and fees added to Plaintiff Renois' parents HECM loan balance may constitute further injuries.

96.     In addition, Celink has charged, *and continues to charge*, compound interest to Plaintiff Renois' parents' HECM loan balance that includes the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff Renois' parents' HECM loan.

97.     In addition, Celink has charged, *and continues to charge*, increased Mortgage Insurance Premiums based on a loan balance that includes the improper and unlawful fees, costs, charges and penalties added to the principal of Plaintiff Renois' parents' HECM loan.

## VI.     CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of themselves individually and the Classes defined as follows:

(a).     The Class.  All borrowers, and heirs and estates of borrowers, who had a HECM or reverse mortgage loan serviced or subserviced by Celink since December 21, 2012 and whose loans were charged or assessed fees, costs, charges, penalties, interest or mortgage insurance fees related to the payment of property taxes when not delinquent or maintenance of hazard insurance when hazard insurance was maintained, including when a claimed default resulted in the filing of a foreclosure lawsuit.

(b).     The New York Subclass.  All borrowers whose mortgaged homes were located in New York State, and heirs and estates of borrowers, who had HECM or reverse mortgage loan serviced or subserviced by Celink since December 21, 2012 and whose loans were charged or assessed fees, costs, charges, penalties, interest or mortgage insurance fees related to the payment of property taxes when not delinquent or maintenance of hazard insurance when hazard insurance was maintained, including when a claimed default resulted in the filing of a foreclosure lawsuit in the New York State courts.

(c).     The RESPA Class.  All borrowers, and heirs and estates of borrowers, who had a HECM or reverse mortgage loan serviced or subserviced by Celink since December

21, 2015 and for whom Celink failed to timely refund property charges (including taxes and force placed insurance) and related fees or respond to, investigate and/or remedy qualified written requests about property charges and related fees.

99. Excluded from the Class, the New York Subclass and the RESPA Class (collectively, the "Classes") are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff assigned to this action.

100. Upon information and belief, the Classes each contain thousands of individuals whose identities can be readily ascertained from Defendants' books and records. Plaintiffs do not know the exact size or identities of the proposed classes, since such information is in the exclusive control of Defendant.

101. Common questions of law and fact raised in this action on behalf of the Classes include the following:

(a) Whether Defendants paid the property taxes on the homes of Class members when those property taxes were neither delinquent nor in default with local municipalities;

(b) Whether Defendants' payment of property taxes on the homes of Class members that were neither delinquent nor in default with local municipalities violated HECM loan agreements;

(c) Whether Defendants' payment of property taxes on the homes of Class members that were neither delinquent nor in default with local municipalities violated federal law;

(d) Whether Defendants failed to provide timely notice to Class members and the

New York Department of Aging before filing foreclosure lawsuits in New York;

(e)     Whether Defendants filed foreclosure lawsuits in violation of New York law;

(f)     Whether Defendants charged Class members for force placed insurance when Class members already maintained hazard insurance;

(g)     Whether Defendants violated RESPA, RESPA Regulation X and the New York force placed insurance laws and regulations;

(h)     Whether Defendants added false, inflated or unreasonable fees and costs billed by Rosicki, Rosicki & Associates, P.C. to Class members' loan balances;

(i)     The amounts in which Class members were damaged by Defendants' unlawful and inequitable acts, practices and conduct; and

(j)     Whether the Class members are entitled to restitution, disgorgement, a constructive trust, declaratory relief and/or injunctive relief.

102.    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs retained able counsel with extensive experience in consumer and borrower class action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

103.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

104.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members.

105.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Since the damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them. The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. The Court will encounter no difficulty in managing this action as a class action.

**Celink is an Agent, Attorney-in-Fact and the Designated Party to Perform the Lenders' Obligations under HECM and Reverse Mortgage Agreements, in Privity or Near Privity with Plaintiffs and Class Members**

106.     Celink admits in this litigation that LWF and RMF ceded "day-to-day servicing functions" over their HECM loan portfolios to Celink. Dkt. 98 at 2, n.3.

107.     Celink was the express and implied agent of LWF, prior to time LWF sold its servicing rights to RMF, for Plaintiff Shakespeare's and Class members' HECM and reverse mortgage loans. Celink was designated by LWF to perform LWF's obligations under those HECM and reverse mortgage agreements. Celink was and is in privity, or near privity, with Plaintiffs and Class members such at it is liable for breach of contract.

108.     Celink was, is and remains the express and implied agent of RMF for Plaintiffs and Class members' HECM loans. Celink was designated by RMF to perform RMF's obligations under those HECM and reverse mortgage agreements. Celink was and is in privity, or near privity, with Plaintiffs and Class members such at it is liable for breach of contract.

109.     In response to Plaintiffs' original *Class Action Complaint*, LWF filed a cross-claim against Celink, as liable for any damages awarded against LWF. Dkt. 37.[2]

110.     RMF filed a declaration in this litigation admitting that Celink is responsible to perform RMF's servicing obligations under Plaintiff Shakespeare's and Class members' HECM

---

[2]   Those cross-claims were voluntarily dismissed without prejudice. Dkt. 72.

and reverse mortgage loans. Dkt. 82-8, ¶7 ("Celink remits payments to, from, or on behalf of, Plaintiff, is responsible for certain foreclosure services, and provides the personnel to perform such services in compliance with applicable law and guides."); Dkt. 82-8, ¶8 ("Celink is also responsible for maintaining accurate records and reports concerning Plaintiff's Loan, including accurate records of payments received, collected, or remitted. Likewise, Celink is responsible for communicating with Plaintiff regarding her account."); Dkt. 82-8, ¶9 ("Celink also provides the systems necessary to service Plaintiff's Loan, including its proprietary computer software, ReverseServTM.").

111.    RMF also admitted in this litigation that it delegated to Celink the decision to impose all the allegedly unlawful fees, costs, charges, penalties, interest and mortgage insurance assessments challenged in this lawsuit. Dkt. 82-8, ¶10 ("Celink fulfills all servicing and administrative functions with respect to Plaintiffs Loan, and maintains all related servicing records, which includes maintaining (and potentially modifying) electronic records concerning fees, costs, charges, interest and insurance premiums that have been assessed, or are due and owing.").

112.    In a *Reverse Mortgage Servicing Agreement*, dated October 19, 2012, between RMF and Celink, RMF granted Celink powers sufficient to be RMF's agent to perform all RMF's obligations deriving from Plaintiffs' and Class members' HECM's loan agreements. Those express powers granted by RMF to Celink were contained in subsequent servicing agreements between RMF and Celink.

113.    Among the many powers conferred by RMF to Celink in their *Reverse Mortgage Servicing Agreement*, "Celink agrees to commence foreclosure actions requested by RMF that

meet RMF's, or any other Investor's or Insurer's servicing guidelines."

114.    That same *Reverse Mortgage Servicing Agreement* expressly identifies Celink as RMF's agent: "All documents and instruments held in the custody of **Celink** (***as agent for RMF***) shall be held by Celink for the benefit of, and as agent for, RMF as the legal owner thereof." (Emphasis added).

115.    In foreclosure lawsuits filed in the name of RMF in the New York State courts, Celink has filed affidavits asserting that RMF has designated Celink as its "attorney-in-fact" concerning the HECM and reverse mortgage loans owned and/or serviced by RMF.

116.    In foreclosure lawsuits filed in the name of RMF in the New York State courts, Celink is identified as RMF's "Power of Attorney" and "Attorneys-in-Fact" pursuant to a *Subservicing Agreement* dated November 30, 2016. That Power of Attorney identifies RMF as Celink's "Principal" and expressly confers rights to Celink as RMF's agent.

117.    As RMF's agent, attorney-in-fact and power of attorney, Celink retains the law firm(s) that file HECM loan foreclosure lawsuits in RMF's name in the New York State courts. Further, Celink is identified in court records as RMF's "Foreclosure Manager," approving the substitution of law firms representing RMF in foreclosure lawsuits.

118.    Prior to and since RMF's acquisition of LWF's HECM servicing rights, Celink is identified as LWF's agent and attorney-in-fact and Celink retained the law firm(s) that filed HECM loan foreclosure lawsuits in LWF's name in the New York State courts. Celink also approved the substitution of law firms representing LWF in foreclosure lawsuits.

**RMF is the Successor to LWF by Law and Contract for All**
**HECM Servicing Rights RMF Purchased from LWF**

119.    On or about November 19, 2018, before this lawsuit was filed, RMF acquired all

or nearly all the HECM servicing rights and obligations owned by LWF, valued at $4 billion. As admitted by RMF in this litigation, "RMF owns the Mortgage Servicing Rights" acquired from LWF. Dkt. 66 at 4. That acquisition by RMF was made pursuant to a *Reverse Mortgage Servicing Rights Purchase and Sale Agreement* (the "*Purchase Agreement*") between RMF and LWF. Dkt. 83-8, ¶4.[3]

120. Pursuant to that *Purchase Agreement*, RMF assumed and was assigned the obligation of "master servicer" for all HECM servicing rights, loans, and/or loan pools acquired from LWF. Dkt. 83-8 at n.1.

121. The standard HECM loan agreements, including Plaintiff Shakespeare's loan agreements, establish that RMF, as LWF's successor, is bound to all obligations set forth in those agreements. Dkt. 83-4 (*Mortgage Agreement* at ¶15: "Successors and Assigns Bound; Joint and Several Liability. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender."); Dkt. 83-5 (*Conversion Loan Agreement* at ¶6.2: "Successors and Assigns Bounds [sic]; … The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender."); Dkt. 83-3 (*Fixed Rate Note – Closed End (Home Equity Conversion Mortgage)* at ¶1: "Lender means Live Well Financial, Inc. and its successors and assigns.").

122. As set forth in Plaintiffs' and Class members HECM and reverse mortgage loan agreements, RMF is LWF's assignee and successor.

123. All or nearly all of the HECM loans for which RMF acquired the servicing rights and obligations from LWF had been securitized and sold to investors pursuant to the Government National Mortgage Association ("Ginnie Mae") Mortgage-Backed Securities

---

[3] Although requested by Plaintiffs, RMF has thus far refused to produce that agreement to Plaintiffs or the Court.

Program for HECM loans.  LWF initially remained the servicer for those HECM loans, which rights and obligations were acquired and have been transferred to RMF, pursuant to the approval of HUD and GNMA and RMF's compliance with their rules, regulations and agreements.

124.    Under the Ginnie Mae Mortgage-Backed Securities Program, investors purchase "participations" in HECM securities issued by approved lenders, with each participation representing a *pro-rata* share of interest and principle in the HECM loan.  *See* HUD Handbook 5500.3 Rev. 1, Chpt. 35-1.  The sponsoring HECM lender is the Issuer of the pool and generally remains the servicer and legal (but not beneficial) owner of the securitized pool of HECM loans.

125.    A Ginnie Mae Issuer of HECM securities is subject to obligations set forth in the Ginnie Mae Mortgage Backed Securities Guide, HUD Handbook 5500.3, Rev. 1.  *See* 24 C.F.R. § 320.1 ("All such [modified pass-through securities] transactions are governed by the specific terms and provisions of the Association's Mortgage-Backed Securities Guides (MBS Guides) and contracts entered into by the parties.").

126.    According to the Ginnie Mae MBS Guide, Ch. 21, "The Transferee Issuer *must assume* all the duties, obligations, and liabilities of the Transferor Issuer under the applicable Guaranty Agreement."  (Emphasis added).  Chapter 21 of that same MBS Guide confirms, "The transfer must have Ginnie Mae's prior written approval …."  For the transfer of the portfolio from LWF to RMF, LWF is the "Transferor Issuer" and RMF is the Transferee Issuer."

127.    According to the Ginnie Mae MBS Guide, Ch. 4, "The Issuer is fully responsible for the administration of the securities *and the servicing of the pooled mortgages*."  (Emphasis added).

128.    Plaintiff Shakespeare's loan is among the loans and/or servicing rights acquired by RMF from LWF. Dkt. 82-8, ¶5. As admitted by RMF in this litigation, "At the time of the transfer of the Mortgage Servicing Rights to RMF, RMF was identified as the 'servicer' of Plaintiff's Loan in accordance with the Real Estate Settlement Procedures Act." *Id*. RMF retained Celink to subservice Plaintiff Shakespeare's (and other Class members') HECM loans. *Id*.

129.    Since the acquisition by RMF from LWF, all monthly statements and correspondence concerning Plaintiff Shakespeare's HECM loan have been sent by "Reverse Mortgage Funding LLC," albeit often from Celink's business address in Lansing Michigan.

130.    Pursuant to HUD regulations governing HECM loans and loan servicing, RMF became the successor to LWF's obligations and liabilities upon acquisition of LWF's HECM servicing rights, loans and/or loan pools. Even while RMF contracted with Celink as its agent to perform RMF's servicing obligations, RMF remains liable for all servicing failures. *See* 24 C.F.R. §203.502(a) ("The servicer must fully discharge the servicing responsibilities of the mortgagee as outlined in this part."); 24 C.F.R. §206.201(c) (same).

131.    Like HUD, Ginnie Mae likewise holds the servicer responsible for any servicing activities, including those performed by a subservicer. *See* Ginnie Mae 5500.3, Rev. 1, Ch. 4 ("The Issuer remains fully responsible for the performance of any servicing functions that have been delegated to a subservicer.").

132.    Issuers must comply with both Ginnie Mae and HUD requirements, including those rules concerning the obligations of issuers, successors, and transferees. *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4. Issuers must also comply with rules on subservicers. For instance,

they can only contract with a Ginnie Mae-approved subcontractor. *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4, 4-3. They can also subcontract, some, but not all, of their servicing functions. *See Id.* at 4-1, 4-3. The master servicer will remain responsible for the performance of any servicing functions that it delegated to its subservicer. *Id.* at 4-2(B).

133. Pursuant to Ginnie Mae's rules, regulations and agreements governing the Mortgage-Backed Securities Program, RMF became the successor to LWF's obligations and liabilities upon acquisition of LWF's HECM servicing rights, loans and/or loan pools. *See* Ginnie Mae MBS Guide 5500.3, Rev. 1, Appendix III-1 ("The Issuer agrees to be responsible and liable for servicing the mortgages, including any acts or omissions of any subservicer in connection therewith."); *Id.* at Appendix VIII-03, §2.02 ("Buyer accepts such assignment and signifies its assumption of all duties and obligations (from the effective date of such Guaranty Agreement(s) and/or Contractual Agreement(s)) of the Seller as "Issuer" under such Agreement(s), per the schedule in Section 2.03); *Id.* Ch. 21-11(3) ("Ginnie Mae's execution of the Assignment Agreement (Appendix VIII-8) evidences its approval and is the date upon which the Transferee Issuer becomes the Issuer of record, assuming all rights and responsibilities as Issuer as of such date.").

134. RMF is also liable as the successor or assignee of LWF pursuant to Uniform Commercial Code §§ 3-306, 9-404,

135. Even if not RMF is not LWF's successor by law or contract, RMF is a necessary relief defendant in this action by reason of its purchase and retention of Plaintiff Shakespeare's loan and all other loans in the $4 billion portfolio RMF acquired from LWF, including purchase and assumption of LWF's servicing obligations.

# FIRST CAUSE OF ACTION

### BREACH OF CONTRACT BY REASON OF VIOLATIONS OF FEDERAL LAW

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)

136.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

137.    Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.    Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

138.    Celink, RMF and LWF were obligated to comply with the terms of those loan agreements as the lender, subservicer, servicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

139.    Celink, RMF and LWF were in privity, or near privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

140.    The standard HECM loan agreements require the lenders, servicers, subservicers and agents to comply in all respects with federal law and the law of the jurisdiction where the property is located.

141.    For example, Plaintiff Shakespeare's and Plaintiff Renois' parents' standardized *Mortgage Agreements* each state at Section 17,

> **Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis added).

142.    The same contractual obligation to comply with federal and New York State law are in contained in Plaintiff Shakespeare's and Plaintiff Renois' parents' uniform and standardized *Conversion Loan Agreement*, Section 6.4, providing:    "**Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located."* (Emphasis added).

143.    As detailed above, Celink, RMF and LWF each breached Plaintiffs' and the Class members' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 24 C.F.R §206.205 and 24 C.F.R. §27(b)(6), by paying Plaintiffs' and Classes members' property taxes when those taxes are not delinquent.

144.    As detailed above, Celink, RMF and LWF each breached Plaintiff Shakespeare's and the Classes' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 24 C.F.R §206.125(b) by adding and assessing appraisal fees to HECM loan balances after a loan has been declared due and payable.  Section 206.125(b) unequivocally states:  "*If the mortgage is due and payable, the appraisal shall be at the mortgagee's expense* but the mortgagee shall have a right to be reimbursed out of the proceeds of any sale by the borrower or other permissible party." (Emphasis added).

145.    As detailed above, Celink, RMF and LWF each breached Plaintiffs' and the Class members' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 24 C.F.R

§206.125(d), which prohibits the filing of any state foreclosure lawsuit until *after* the lenders, servicers and agents comply with all State law requirements for filing a foreclosure lawsuit. As detailed in this Complaint, Celink RMF and LWF violated 24 C.F.R §206.125(d) by filing foreclosure lawsuits in the New York State courts while failing to comply with New York RPL §280(2)(f), New York RPL 280-a(2)(m); and 3 N.Y.C.R.R. §79.9.

146. As detailed above, Celink, RMF and LWF each breached Plaintiffs' and the Classes' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements and Conversion Loan Agreements*, by reason of their violation of 24 C.F.R §206.207, which prohibits the addition of unlawful and improper charges and fees to HECM borrowers' loan balances. Celink, RMF and LWF violated of 24 C.F.R §206.207 by adding fees and charges to Plaintiffs' and Class members' loans related to their unlawful payment of property charges (taxes and insurance), unlawful imposition of appraisal and inspection fees, unlawful filing, preparation and maintenance of foreclosure lawsuits without complying with federal and state notice requirements and the imposition of attorneys' fees containing false and inflated costs.

147. As detailed above and below, Celink breached Plaintiff Renois' parents' and the RESPA Classes' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R §1024.37(e) and (g) by failing to refund force placed insurance premiums and related fees, charges and penalties within 15 days of receiving notice demonstrating that the borrower maintained hazard insurance and for unlawfully renewing force placed insurance policies.

148. As detailed above and below, Celink, RMF and LWF breached Plaintiffs and the

RESPA Classes' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violations of RESPA 12 U.S.C. §§ 2605(e) by failing to timely respond, investigate and provide refunds and credits to borrowers' HECM loans in response to qualified written requests.

149. Plaintiffs and Class members have been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of Plaintiffs' and Class members' HECM and reverse mortgage loans by reason of violations of federal law.

150. As a direct result Celink's, RMF's and LWF's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and inflated mortgage insurance that have been added to the principal of Plaintiffs' and Class members' HECM and reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Class members.

151. To remedy Celink's, RMF's and LWF's breaches of contract, Plaintiffs and the Classes seek damages, equitable remedies including an injunction and all other appropriate remedies.

152. As it pertains to Plaintiff Shakespeare individually, Celink, RMF and LWF each breached Plaintiff Shakespeare's HECM and reverse mortgage loan agreements, including her *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of Defendants' violations of federal laws 24 C.F.R. §206.205, 24 C.F.R. §27(b)(6), 24 C.F.R. §§ 206.125(b) and (d), 24 C.F.R. §206.207 and RESPA 12 U.S.C. §§ 2605(e). Plaintiff Shakespeare has been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of contract,

in an amount exceeding $13,900 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

153.     As it pertains to Plaintiff Renois individually, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, Celink breached Plaintiff Renois' parents' HECM and reverse mortgage loan agreements, including their *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of Celink's violations of federal laws 24 C.F.R. §206.205, 24 C.F.R. §27(b)(6), 24 C.F.R. §206.125(d), 24 C.F.R §206.207, RESPA 12 U.S.C. §§ 2605(e), (k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g).  Plaintiff Renois has been injured and damaged as a direct and proximate result of Celink's breaches of contract, in an amount exceeding $5,000 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her parents' HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT BY REASON OF VIOLATIONS OF NEW YORK LAW

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

154.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

155.    Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.    Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

156.    Celink, RMF and LWF were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

157.    Celink, RMF and LWF were in privity, or near privity, with Plaintiffs and New York Subclass members concerning the performance of obligations under the loan agreements.

158.    Plaintiffs and all members of the New York Subclass are parties to uniform and standardized reverse mortgage loan agreements.

159.    The standard loan agreements require the lenders, servicers, subservicers and agents to comply in all respects with federal law and the law of the jurisdiction where the property is located.    For Plaintiffs and all New York Subclass members, that law is the law of New York State due to the location of Plaintiffs' and Subclass members' homes being located within New York State.

160.    Plaintiff Shakespeare's and Plaintiff Renois' parents' standardized *Mortgage Agreements* each state at Section 17,

**Governing Law; Severability**.  *This Security Instrument shall be governed by*

> *Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis added).

161. The same contractual obligation to comply with federal and New York State law are in contained in Plaintiff Shakespeare's and Plaintiff Renois' parents' uniform and standardized *Conversion Loan Agreement*, Section 6.4, providing: "**Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.*" (Emphasis added).

162. As detailed above, Celink, RMF and LWF each breached Plaintiffs' and the New York Subclasses' loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of New York RPL §280(2)(f), by failing to provide notice to the New York Office of Aging prior to filing foreclosure lawsuits in the New York State courts to foreclose on homes subject to Plaintiffs' and Subclass members' HECM and reverse mortgage loans.

163. As detailed above, Celink, RMF and LWF each breached Plaintiffs' and the New York Subclasses' loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of New York RPL §280-a(2)(m), by failing to provide notice to the New York Office of Aging prior to filing foreclosure lawsuits in the New York State courts to foreclose on homes subject to Plaintiffs' and Subclass members' HECM and reverse mortgage loans.

164. As detailed above, Celink, RMF and LWF each breached Plaintiff Shakespeare's

and the New York Subclasses' loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 3 N.Y.C.R.R. §79.9 by declaring default and foreclosing on reverse mortgage loans in the New York State courts without serving the notices and information mandated by Section 79.9(a)(5).

165. As detailed above, Celink breached Plaintiff Renois' parents' and the New York RESPA Subclasses' loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 11 N.Y.C.R.R. §227.5 by failing to refund force placed insurance premiums and related fees, charges and penalties within 15 days of receiving notice demonstrating that the borrower maintained hazard insurance on Plaintiffs' and New York Subclass members' homes subject to the reverse mortgage agreements.

166. Plaintiffs and New York Subclass members have been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of Plaintiffs' and Subclass members' loan agreements by reason of violations of New York law.

167. As a direct result Celink's, RMF's and LWF's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and inflated mortgage insurance that have been added to the principal of Plaintiffs' and Subclass members' reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiffs and Subclass members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Subclass members.

168. To remedy Celink's, RMF's and LWF's breaches of contract, Plaintiffs and the New York Subclass seek damages, equitable remedies including an injunction and all other appropriate remedies.

42

169.    As it pertains to Plaintiff Shakespeare individually, Celink, RMF and LWF each breached Plaintiff Shakespeare's reverse mortgage loan agreements, including her *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of Defendants' violations of New York RPL §280(2)(f) and 3 N.Y.C.R.R §79.9(a)(5).   Plaintiff Shakespeare has been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of contract, in an amount exceeding $13,900 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

170.    As it pertains to Plaintiff Renois individually, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, Celink breached Plaintiff Renois' parents' reverse mortgage loan agreements, including their *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of Celink's violations of New York RPL §280-a(2)(m) and 11 N.Y.C.R.R §227.5.   Plaintiff Renois has been injured and damaged as a direct and proximate result of Celink's breaches of contract, in an amount exceeding $5,000 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)

171.  Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

172.  Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.  Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

173.  Celink, RMF and LWF were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

174.  Celink, RMF and LWF were in privity, or near privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

175.  Celink, RMF and LWF breached Section 2.4 of the standard *Conversion Loan Agreements* with Plaintiffs and Class members by imposing fees and charges not permitted under 24 CFR §206.207(a).

176.  Celink, RMF and LWF breached Section 2.10.5 of the standard *Conversion Loan Agreements* with Plaintiffs and Class members by paying property taxes when those property taxes were neither delinquent nor in default with their local municipalities.

177.  Celink, RMF and LWF breached Section 2.12.1 of the standard *Conversion Loan Agreements* with Plaintiffs and Class members by charging interest on increased HECM loan balances caused by the payment of property taxes when those property taxes were neither

delinquent nor in default with local municipalities.

178.   Celink, RMF and LWF breached Sections 5, 9, and 20 of the standard *Reverse Mortgage* with Plaintiffs and Class members by paying the property taxes when those property taxes were neither delinquent nor in default with their local municipalities.

179.   Celink, RMF and LWF breached Section 6 of the standard *Reverse Mortgage* with Plaintiffs and Class members by charging for appraisals and/or inspections based on the unlawful declaration that loans were in default based upon the a failure to pay property taxes that were neither delinquent nor in default with their local municipalities or a false claim that hazard insurance was not purchased or maintained.

180.   Celink, RMF and LWF breached Section 8 of the standard *Reverse Mortgage* with Plaintiffs and Class members by charging fees and costs related to the payment of property charges for taxes or hazard insurance that have not been authorized by the Secretary of HUD.

181.   Plaintiffs and Class members have been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of Plaintiffs' and Class members' HECM and reverse mortgage loans.

182.   As a direct result Celink's, RMF's and LWF's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and inflated mortgage insurance that have been added to the principal of Plaintiffs' and Class members' HECM and reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Subclass members.

183.   To remedy Celink's, RMF's and LWF's breaches of contract, Plaintiffs and the

Classes seek damages, equitable remedies including an injunction and all other appropriate remedies.

184. As it pertains to Plaintiff Shakespeare individually, Celink, RMF and LWF breached Sections 2.4, 2.10.2 and 2.12.1 of her *Conversion Loan Agreement* and Sections 5, 6, 8, 9 and 20 of her *Mortgage Agreement*. Plaintiff Shakespeare has been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of contract, in an amount exceeding $13,900 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

185. As it pertains to Plaintiff Renois individually, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, Celink breached Sections 2.4, 2.10.2 and 2.12.1 of her parents' *Conversion Loan Agreement* and Sections 5, 6, 8 and 9 of her parents' *Mortgage Agreement*. Plaintiff Renois has been injured and damaged as a direct and proximate result of Celink's breaches of contract, in an amount exceeding $5,000 by reason of the unlawful fees, costs, charges, penalties, additional interest and additional mortgage insurance added to the balance of her HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

## FOURTH CAUSE OF ACTION

**BREACH OF CONTRACT BY REASON OF IMPOSITION OF FALSE, INFLATED AND UNREASONABLE ATTORNEY FEES / COSTS**

**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF SHAKESPEARE AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)**

186.     Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

187.     Plaintiffs and New York Subclass members are the borrowers or representatives of borrowers to HECM and reverse mortgage loan agreements.  Those loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

188.     Celink, RMF and LWF were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

189.     Celink, RMF and LWF were in privity, or near privity, with Plaintiffs and New York Subclass members concerning the performance of obligations under the loan agreements.

190.     Celink, RMF and/or LWF retained the law firm Rosicki, Rosicki & Associates, P.C. ("RRA") to sue Plaintiffs and New York Subclass members.

191.     RRA or its principals wholly-own or owned the companies Enterprise Process Service, Inc., Paramount Land, Inc. and Threshold Land, Inc.

192.     RRA or its principals used those wholly-owned companies to perform foreclosure and title services, and then billed those services to Celink, RMF and/or LWF. Celink in turn added the full cost of those RRA billings to Plaintiffs' and New York Subclass

members' HECM and reverse mortgage loan balances under the catch-all term "Payment for Attorney Fees / Costs."

193.     On March 27, 2018, the United States of America filed a civil lawsuit against RRA in the United States District Court for the Southern District of New York, asserting that RRA participated in a "scheme to generate expenses for foreclosure-related services that were falsely and fraudulently inflated with knowledge that those expenses would be passed on to, and paid by, the Federal National Mortgage Association ('Fannie Mae')."

194.     "The complaints allege that Rosicki improperly passed off foreclosure expenses submitted by their affiliates as the actual and reasonable costs of the services performed, thereby masking enormous mark-ups applied by the affiliates.  *United States ex rel. Grubea v. Rosicki, Rosicki & Assoc., P.C.*, 318 F. Supp. 3d 680, 700 (S.D.N.Y. 2018) (denying RRA motion to dismiss).

195.     Plaintiffs standardized loan agreements, including Section 2.4 of the *Conversion Loan Agreement*, prohibits Celink, RMF and LWF from adding unreasonable fees or charges, including fees and charges not permitted by 24 C.F.R. §206.207, to the balance of Plaintiffs' and New York Subclass members' HECM and reverse mortgage loans.

196.     Section 20 of Plaintiffs' and New York Subclass members' uniform and standardized *Mortgage Agreements* further prohibits Celink, RMF and LWF from adding "[un]reasonable attorneys' fees" in connection with any foreclosure litigation.

197.     Celink, RMF and LWF breached their HECM and reverse mortgage agreements with Plaintiff Shakespeare and the New York Subclass, including Section 2.4 of the *Conversion Loan Agreement* and Section 20 of the *Mortgage Agreement*, by adding false, inflated and

unreasonable fees often styled as "Payment for Attorney Fees / Costs" deriving from services billed by RRA for work allegedly performed by Enterprise Process Service, Inc., Paramount Land, Inc. and/or Threshold Land, Inc.

198. Plaintiff Shakespeare and New York Subclass members have been injured and damaged as a direct and proximate result of Celink's, RMF's and LWF's breaches of HECM and reverse mortgage loans by reason of the addition of false, inflated and unreasonable costs billed to Defendants, or any of them, by RRA and passed along to Plaintiff Shakespeare and New York Subclass members.

199. As a direct result Celink's, RMF's and LWF's breaches of contract, those defendants imposed, collected and/or added "Payment for Attorney Fees / Costs" or similarly-described costs and fees to the principal of Plaintiff Shakespeare's and Subclass members' HECM and reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiff Shakespeare and Subclass members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and Subclass members.

200. To remedy Celink's, RMF's and LWF's breaches of contract, Plaintiff Shakespeare and the New York Subclass seek damages, equitable remedies including an injunction and all other appropriate remedies.

201. As it pertains to Plaintiff Shakespeare individually, Celink, on behalf of LWF and/or RMF, twice retained RRA to sue her for foreclosure in the New York State courts. The state court docket sheets confirm that "Enterprise Process Service" performed services for Defendants. Celink, RMF and LWF breached their loan agreements with Plaintiff Shakespeare by adding "Payment for Attorney Fee / Costs" fees to increase the balance of Plaintiff

Shakespeare's HECM and reverse mortgage loan, for false, inflated and unreasonable services billed by RRA alleged performed by RRA's or its principal's wholly-owned RRA companies. Plaintiff Shakespeare has been injured and damaged as a direct and proximate result, which injuries are continuing and increasing by reason of the addition of further inflated interest and mortgage insurance assessments.

202.　Plaintiff Shakespeare provided notice of this claim to Defendants in her original *Class Action Complaint*.

## FIFTH CAUSE OF ACTION

**BREACH OF DUTIES AND COVENANTS OF GOOD FAITH AND FAIR DEALING**

**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASSES)**

203.   Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

204.   Plaintiffs and Class members are the borrowers or representatives of borrowers to HECM loan agreements.

205.   Celink, RMF and LWF were obligated to comply with the terms of those loan agreements as the lender, servicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

206.   Celink, RMF and LWF were in privity, or near privity, with Plaintiffs and Class members concerning the performance of obligations under the loan agreements.

207.   Celink, RMF and LWF each possessed discretion to interpret and apply the HECM and reverse mortgage loan agreements provided to Plaintiffs and Class members.

208.   Celink, RMF and LWF each owed Plaintiffs and Class members covenants implied covenants and duties of good faith and fair dealing to not deprive them of the benefits of the HECM and reverse mortgage loan agreements, and not to apply their discretion over the agreements arbitrarily, irrationally, in bad faith, or in a manner that benefitted Celink, RMF and/or LWF and harmed Plaintiffs and Class members.  Celink, RMF and LWF each breached their implied covenants and duties of good faith and fair dealing by acting with bad faith and applying their discretion in a manner designed to harm Plaintiffs and Class members and to financially benefit Celink, RMF and/or LWF.

209. As a result of its breaches of its implied duties and covenants of good faith and fair dealing, Celink, RMF and/or LWF imposed and/or collected fees, costs, penalties, charges, interest and mortgage insurance that have been added to the principal of Plaintiffs' and Class members' HECM loans, paid from the retained equity in their homes, or paid by Plaintiffs and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiffs and all Class members.

## SIXTH CAUSE OF ACTION

### VIOLATIONS OF RESPA AND RESPA REGULATION X

#### (AGAINST CELINK ON BEHALF OF PLAINTIFF RENOIS AND THE RESPA CLASS)

210.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

211.    Celink engages in the practice of purchasing force placed insurance and failing to refund force placed insurance premiums and related fees and charges in violation of RESPA and RESPA Regulation X.

212.    RESPA 12 U.S.C. §2605(k) prohibits a mortgage lender or servicer from obtaining force placed hazard or property insurance for any borrower that maintains a hazard insurance policy for the property that secures a mortgage loan, including a HECM and reverse mortgage loan.

213.    RESPA 12 U.S.C. §2605(l) further prohibits a mortgage lender or servicer from imposing any charges for force placed insurance for any property securing a federally-related mortgage unless it has *both* served the notices required under Section 2605(l)(1) *and also* not been provided proof permitted under Section 2605(l)(2) that the borrower maintains the required hazard or property insurance.

214.    RESPA 12 U.S.C. §2605(l)(3) mandates that "[w]ithin 15 days of the receipt by a servicer of conformation of a borrower's existing insurance coverage" a mortgage lender or servicer "shall" terminate any force placed insurance policy *and* "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance

during such period."

215.    RESPA Regulation X, 12 C.F.R. §1024.37(g), further mandates that Celink terminate any force placed insurance policy and refund "all force-placed insurance premium charges and related fees" within "15 days" of receiving notice from the borrower that she maintains hazard insurance on the subject property.

216.    Moreover, RESPA Regulation X, 12 C.F.R. §1024.37(e) prohibits a mortgage lender or servicer from billing the borrower for the premiums or fees from a renewed force placed insurance policy unless and until the notice required by Section 1024.37(e) is sent and only thereafter has not been provided proof permitted that the borrower has purchased the required hazard or property insurance.

217.    As demonstrated by the experience of Plaintiff Renois, Celink violates RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g).

218.    As detailed above, Celink unlawfully imposed force placed insurance premium charges and related "Attorney fees / costs" and "property inspection" fees for over two years *after* Plaintiff Renois provided proof to Celink on numerous occasions that she purchased and consistently maintained hazard and property insurance on the property that secured her parents' HECM and reverse mortgage serviced by Celink.

219.    Among other times, Plaintiff Renois provided written notice and proof that she purchased and maintained hazard and property insurance on the property securing her parents' HECM loan on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020 and June 8, 2020.    Nevertheless and in violation of RESPA and RESPA Regulation X, Celink obtained a force placed insurance policy effective June 16, 2018 for the same property already

insured by Plaintiff Renois. Celink unlawfully renewed that force placed insurance policy effective June 16, 2019 and possible at other times.

220. Finally, on July 30, 2020, over years after it began unlawfully adding force placed insurance premium charges and related fees, years past the 15-day deadline imposed by RESPA and RESPA Regulation X, Celink admitted its mistake and refunded *only* premiums added by Celink to Plaintiff Renois' parents' HECM and reverse mortgage loan.

221. In violation of RESPA and RESPA Regulation X, Celink still has not refunded the related fees, including "attorney fees / costs," "property inspection" fees and increased interest and mortgage insurance charges, causing injury and damage to Plaintiff Renois.

222. Celink began imposing a "Monthly Mortgage Insurance Premium" in or about July 2018, and in that same month imposed two related "property inspection" fees of $20.00 each. Nearly every month thereafter, Celink has imposed additional "property inspection" fees related to its unlawful imposition of force placed insurance.

223. As of July 31, 2019, according to a document filed by Celink's counsel in the New York State Supreme Court, Celink paid $4,731.67 in attorneys' fees related to the Renois foreclosure. Upon information and belief, those fees have been added to the balance of Plaintiff Renois' parents' HECM loan and result, in part, from Celink's unlawful imposition of force placed insurance.

224. Pursuant to RESPA 12 U.S.C. §§ 2605(f) and 2614, Celink is liable to Plaintiff Renois, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, and the RESPA Subclass for its violations of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g).

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF RESPA

### (AGAINST DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE RESPA CLASS)

225.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

226.    Celink, RMF and LWF engage in the practice of adding property charges (including property taxes and force placed insurance) in connection with their servicing of HECM loans.  In violation of RESPA 12 U.S.C. §2605(e), Celink, RMF and LWF did not provide timely responses to qualified written requests, conduct appropriate investigations and/or refund or credit servicing fees and related charges (either timely or at all).

227.    RESPA Section 2605(e) provides in relevant part,

**(e)  Duty of loan servicer to respond to borrower inquiries.**
**(1)**  Notice of receipt of inquiry.
**(A)**   In general. If any servicer of a federally related mortgage loan receives a qualified written request from
the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer
shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal
public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
**(B)**  Qualified written request. For purposes of this subsection, a qualified written request shall be a written
correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
  (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
  (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
(2) Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any

qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

228.   As it pertains to Plaintiff Renois individually, she made qualified written requests to Celink, including those on March 8, 2018, September 14, 2018 November 5, 2018, February 2, 2020 and June 8, 2020, providing notice and proof that she maintained hazard insurance on the home that secured her parents' HECM loan.  In violation of Section 2605(e), Celink did not timely respond, perform and adequate investigation or refund or credit the force placed insurance premiums and related fees.  Rather, it took Celink over two years refund force placed insurance premiums, and Celink still have not refunded related fees, well-beyond the 30-day deadline to "make appropriate corrections to the account of the borrower, …."

229.   As it pertains to Plaintiff Shakespeare individually, she made a qualified written request to Celink and LWF, dated June 21, 2017.  In violation of Section 2605(e), Celink and

LWF did not timely respond, perform and adequate investigation or refund the fees, costs, charges, penalties, interest and property insurance that have been improperly added to her HECM loan account, which violations have been ratified by RMF.

230.    Pursuant to RESPA 12 U.S.C. §§ 2605(f) and 2614, Celink, RMF and LWF are liable to Plaintiffs and the RESPA Subclass for their violations of RESPA 12 U.S.C. §§ 2605(e).

## EIGHTH CAUSE OF ACTION

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND QUALIFYING MEMBERS OF THE NEW YORK SUBCLASS)

231.    Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

232.    Plaintiffs and the members of the New York Subclass are "persons" within the meaning of GBL §349(h).

233.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

234.    Celink, RMF and LWF engaged in consumer-orientated, deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint.

235.    That deceptive conduct involves a scheme headed by Celink, and endorsed by its principals (including RMF and LWF), to employ false and deceptive form letters to perpetuate a position that HECM and reverse mortgage borrowers are in default or delinquent in paying property charges that are not in fact owed or not owed for the reasons claimed in Celink's form letters.  Those form letters make the following false and deceptive statements and omissions:

(a).    Asserting that Defendants will pay or have paid property charges on HECM and reverse mortgage borrowers' homes, including Plaintiff Shakespeare and Plaintiff Renois, when those property charges were neither delinquent nor in default with local

municipalities;

(b).     Asserting that borrowers' property taxes were delinquent or were not paid;

(c).     Asserting that prior letters had been sent requesting proof that property taxes had been paid when in fact no prior letters were sent to borrowers;

(d)     Asserting force placed insurance was required to be obtained without obtaining proof that the borrowers or their representatives failed to maintain hazard insurance;

(e).     Asserting force placed insurance was required to be obtained while ignoring oral and written notices provided by borrowers providing notice and/or proof that borrowers or their representatives purchased and/or maintain hazard insurance; and

236.    Celink, RMF and LWF make further false and deceptive statements each time they send monthly mortgage statements to borrowers misrepresenting the amount owned by HECM and reverse mortgage borrowers, which amounts are inflated by improper fees, costs, charges, penalties, interest and mortgage insurance.  Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus.

237.    Celink, RMF and LWF make further false and deceptive statements each time they send monthly mortgage statements adding false, inflated, up-charged and unreasonable "attorney fees / costs" to borrowers' HECM and reverse mortgage loans which fees and costs derived from fees and costs billed by RRA for work performed by it or its wholly-owned companies, which services were provided, if at all, at substantially-lesser cost than the fees and costs added to borrowers' loans.

238. Celink, RMF and LWF engage in further deceptive conduct by obtaining false-placed insurance on borrowers' properties with hazard insurance and by refusing to timely refund force placed insurance premiums and related costs and fees added to borrowers' HECM and reverse mortgage loans.

239. Celink's, RMF's and LWF's conduct is deceptive because it is likely to mislead consumers, borrowers and the public by making them believe, falsely, that (i) Defendants have been advised by New York municipalities that borrowers' property taxes remain unpaid or were not received; (ii) Defendants have been advised that borrowers fail to maintain hazard insurance on their homes; (iii) that the monthly mortgage statements accurately represent the amount owed on reverse mortgages; and (iv) Defendants added only the actual and reasonable fees and costs billed by RRA to borrowers' HECM and reverse mortgage loans.

240. Celink's, RMF's and LWF's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the New York Subclass. Celink's, RMF's and LWF's violations of GBL §349 caused Plaintiffs' and New York Subclass members' injuries because absent their violations Plaintiffs and New York Subclass members would not have been charged the unlawful fees, costs, charges, penalties, increased interest and insurance premiums imposed on them (including their estates) and/or their reverse mortgages.

241. In addition to their pecuniary losses, Plaintiffs and the New York Subclass suffered actual harm as a direct, foreseeable and proximate result of Celink's, RMF's and LWF's violations of GBL §349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiffs and the New York Subclass.

242.     Plaintiffs and the New York Subclass are entitled to pursue claims against Celink, RMF and LWF for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorneys' fees pursuant to GBL §349(h) to redress Celink's, RMF's and LWF's violations of GBL §349(a).

243.     Plaintiffs and New York Subclass members who were sixty-five years of age or older at the time of Defendants' violations of GBL §349 are entitled to pursue additional claims and remedies pursuant to GBL §349-c to redress Celink's, RMF's and LWF's violations of GBL §349(a) perpetrated against one or more elderly persons.

## NINTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND THE CLASS)

244. Plaintiffs restate, re-allege and incorporate by reference the foregoing paragraphs.

245. Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to Plaintiffs' and the Classes' claims for breach of contract.

246. Defendants have violated the common laws of unjust enrichment in all the states of the United States and the District of Columbia.

247. Defendants have benefited from the unlawful and inequitable acts alleged in this Complaint.

248. Plaintiffs and Class members have conferred upon Defendants a traceable economic benefit resulting from the unlawful and inequitable acts alleged in this Complaint.

249. The economic benefits derived by Defendants are a direct and proximate result of Defendants' unlawful and inequitable acts alleged in this Complaint.

250. Defendants are not permitted to pay property taxes, imposed force placed insurance or impose additional fees, costs principal, interest, and insurance premiums on Class members for the reasons and based on the circumstances alleged in this Complaint.

251. Payments to Defendants resulting from inequitable and unlawful acts rightfully and equitably belong to Plaintiffs and Class members.

252. Under the common law of all states and territories within the United States, it would be inequitable and unjust for Defendants to retain any portion of the charges, costs

principal, interest and insurance premiums resulting from Defendants' inequitable and unlawful acts.

253.    Plaintiffs' and Class members' unintentional conferral of profits onto Defendants were brought about by Defendants' unlawful, unfair, deceptive, misleading and inequitable methods, acts and practices alleged in this Complaint.

254.    Defendants should be compelled to provide restitution or to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received from them.

255.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiffs and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.     An order certifying this case as a class action under FED. R. CIV. P. 23, and appointing Plaintiffs and their counsel to represent the Classes;

B.     An order declaring that Celink's, RMF's and LWF's acts and practices constitute breaches of contract;

C.     An order declaring that Celink's, RMF's and LWF's acts and practices constitute breaches and violations of the duties and covenants of good faith and fair dealing;

D.     An order declaring that Celink's, RMF's and LWF's acts and practices constitute violations of RESPA and RESPA Regulation X.

E.     An order declaring that Celink's, RMF's and LWF's acts and practices constitute violations of New York GBL §349;

F.     An order declaring that Celink's, RMF's and LWF's acts and practices constitute unjust enrichment;

G.     A permanent injunction;

H.     An order requiring restitution and disgorgement and the creation of a constructive trust for the benefit of Plaintiffs and the Classes;

I.     An order requiring Celink, RMF and/or LWF to refund, credit and/or remove all unlawfully-added fees, costs, charges, penalties, interest and mortgage insurance from Plaintiffs' and Class members' HECM and reverse mortgage loans.

J.     Pre-judgment and post-judgment interest to the fullest extent permitted by law;

K.      Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

L.      All such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims to the extent authorized by law.

DATED: September __, 2020

**TUSA P.C.**

/s/ Joseph S. Tusa_____
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Floor
Southold, NY 11971
Tel. (631) 407-5100

**AARP FOUNDATION**
Julie Nepveu (*pro hac vice*)
jnepveu@aarp.org
Maame Gyamfi (*pro hac vice*)
mgyamfi@aarp.org
601 E Street, NW
Washington, DC 20049
Tel. (202) 434-2060

**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315

***Attorneys for Plaintiffs***
***and Proposed Class Counsel***