UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARGARET SHAKESPEARE, on behalf
of herself and all others similarly situated,

                              Plaintiff,

    -against-                                **MEMORANDUM & ORDER**
                                                  18-CV-7299 (JMA)(AYS)

LIVE WELL FINANCIAL, INC.,
COMPU-LINK CORP., doing business as
CELINK, and REVERSE MORTGAGE
FUNDING, INC.,

                              Defendants.
------------------------------------------------------------X

**SHIELDS, United States Magistrate Judge:**

      Plaintiff Margaret Shakespeare ("Shakespeare" or "Plaintiff") commenced this action on December 21, 2018, against Live Well Financial, Inc. ("Live Well"), Compu-Link Corporation, d/b/a Celink ("Celink"), and Reverse Mortgage Funding, LLC ("RMF") as Defendants. See Docket Entry ("DE") [1]. Live Well is presently in bankruptcy, in an unvoluntary proceeding pending in the District of Delaware. See DE [100]. This matter continues against the remaining Defendants.

      Presently before this Court is Plaintiff's motion for leave to amend the complaint. See DE [165]. Plaintiff seeks to amend the pleading to: (1) plead new facts supporting Plaintiff's claims against RMF; (2) re-plead Plaintiff's claims of breach of contract and breach of the duties of good faith and fair dealing, and including Celink as a defendant to those claims; (3) add Sheila Dancy-Wilkins and Sheila Dancy-Wilkins as Power of Attorney for Flora Mayweathers ("Proposed Plaintiffs") as additional Plaintiffs; and (4) incorporate three years of additional

1

investigation and litigation of these claims into the pleading. See Proposed Amended Complaint ("PAC") DE [165-1]. For the reasons set forth below, Plaintiff's motion to amend the complaint is GRANTED in part and DENIED in part. The motion is granted to the extent that Shakespeare may amend to include Counts III-VI against Defendants. The motion is denied on futility grounds as to Counts I and II. To the extent Plaintiff seeks join the Proposed Plaintiffs, the motion is denied.

## BACKGROUND

A.  The Initial Complaint

Shakespeare owns property upon which she obtained a home equity conversion loan (the "Loan") and, in connection therewith, entered into a Home Equity Conversion Mortgage (the "HECM" or the "Mortgage"). The HECM is a mortgage instrument akin to those commonly referred to as a "reverse" mortgage. Such mortgages generally, require no re-payment until either the death of the borrower, or transfer of the mortgaged property. As a home equity instrument, Shakespeare was permitted to draw funds up to an amount authorized by the Loan. Shakespeare's claims are based upon the alleged improper and unlawful payment of property taxes on her home in 2015. Briefly stated, Plaintiff alleges that the payment of her taxes took place without justification or notice, and that such payment resulted in the unlawful assessment of fees, adding to the total of Plaintiff's loan.

Styling this action as a class action pursuant to Rule 23(a)(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Shakespeare alleged a "policy and practice of improperly paying the property taxes of homeowners" with HECM's "before those taxes are due without contractual or other legal authority to so and without providing notice to homeowners." Shakespeare also

alleged claims for breach of contract, breach of implied covenants and duties or good faith and fair dealing, unjust enrichment, and violation of Section 349 of the General Business Law of the State of New York, N.Y. Gen. Bus. L. § 349 ("Section 349").

B.   Procedural History

Shakespeare commenced this action on December 21, 2018. Live Well answered the Complaint and filed a cross-claim against Celink. DE [37]. On May 3, 2019, RMF and Celink filed motions to dismiss the Complaint. See DE [82], [83]. RMF alternatively sought to be severed from the action. See DE [82].

Following a hearing on RMF's motion, this Court recommended that RMF's motion to dismiss for failure to state a claim be granted. See DE [113]. As for Celink, this Court recommended that Celink's Rule 12(b)(1) motion be denied, DE [114], but recommended that Plaintiff's Section 349 claim and unjust enrichment claims be dismissed. DE [116].

On September 15, 2020, following objections by Plaintiff, the District Court adopted the Report and Recommendations in their entirety, see DE [133], [134], and [135], and closed the case. On September 29, 2020, Plaintiff sought leave to amend her complaint. DE [136]. This court denied the motion on October 7, 2020. See Order dated 10/07/2020. Plaintiff objected to the denial and on October 13, 2020, the District Court overruled Plaintiff's objection and affirmed the undersigned's denial.

Plaintiff appealed the adverse rulings to the Second Circuit. On May 26, 2021, the Second Circuit issued a Summary Order, affirming in part and vacating in part the District Court's Orders. Shakespeare v. Compu-Link Corp., 848 F. App'x 474 (2d Cir. 2021). The Second Circuit affirmed RMF's dismissal and vacated the dismissal ruling against Celink. Id. It held that Plaintiff has "raised sufficiently plausible claims under Section 349 to survive the

3

motion to dismiss and proceed to summary judgment." Id. at 476. The Second Circuit also vacated dismissal of Plaintiff's unjust enrichment claim. Id. at 476. The Second Circuit declined to reach the merits of Shakespeare's appeal of the denial of her motion to amend as procedurally improper. Id. at 477. Mandate was issued on August 16, 2021, and this case was reassigned to the Honorable Joan M. Azrack.

II.     The Motion to Amend

Plaintiff seeks to amend the complaint to join two new proposed plaintiffs. Plaintiff alleges that like her HECM, the Proposed Plaintiffs' HECM is held and serviced by RMF and subserviced by Celink. Plaintiff further asserts that the homes securing both Shakespeare's and the Proposed Plaintiffs' HECM loans are located in New York. As such, Plaintiff alleges that the same federal and New York laws and regulations are incorporated into Plaintiffs' loan agreements. Both Shakespeare and the Proposed Plaintiffs were sued in foreclosure in New York, where the lawsuits were eventually dismissed.

Plaintiff alleges that as a result of the Defendants' unlawful conduct she and the Proposed Plaintiffs had improper fees, costs and charges added to their HECMs. The Proposed Amended Complaint ("PAC") asserts systemic servicing violations perpetrated by the Defendants on seniors who are borrowers of HECM loans. The PAC alleges that Defendants' servicing violations breach the standard HECM loan agreements, the implied duties of good faith and fair dealing, violate New York GBL § 349, and result in unjust enrichment.

Additionally, Plaintiff seeks to amend the complaint to reinstate the Section 349 claim (Count VI) and unjust enrichment claims (Count VII). Plaintiff also seeks to plead four new claims for breach of contract (Counts I-IV) and breach of the duties of fair dealing and good faith (Count V).

4

Plaintiff seeks to add Celink as a defendant on the breach of contract claims and good faith and fair dealing claim (in addition to the originally pled Section 349 and unjust enrichment claims). Plaintiff also seeks to add allegations concerning RMF's liability resulting: (1) from RMF's alleged directly unlawful acts; (2) as a successor lender, mortgagee and servicer to LWF; (3) as the assignee of Plaintiffs' HECM loan portfolio; (4) from having allegedly ratified LWF's and Celink's conduct since RMF's acquisition of LWF's loans and servicing rights; and (5) from RMF's alleged principal/agent relationship with Celink.

RMF opposes the motion to amend. RMF asserts that the PAC should be denied because it was brought with the improper purpose of, <u>inter alia</u>, attempting to bolster the class construct alleged in the initial complaint. RMF further contends that the new claims are futile.

Celink also opposes the instant motion. Celink argues that the motion to add the Proposed Plaintiffs is procedurally improper, as permissive joinder is governed by Rule 20(a) of the Federal Rules of Civil Procedure. Celink asserts that Shakespeare and the Proposed Plaintiffs do not satisfy the requirements proscribed by Rule (20)(a) and thus, cannot be joined as Plaintiffs. Celink also contends that the proposed amendment would unduly prejudice Celink and that the proposed amendment is futile. After outlining the standards applicable to the present motion, the Court will turn to the merits of the motion.

## DISCUSSION

I. <u>Legal Standards</u>

A. <u>Motion to Amend</u>

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings prior to trial. Fed. R. Civ. P. 15. Where, as here, leave of court is required to amend, the court has broad discretion to grant such leave "freely," "when justice so requires." FED. R. CIV. P.

5

15(a)(2). Because amendments "tend to facilitate a determination on the merits," they are "generally favored." Zucker v. Porteck Global Servs., Inc., 2015 WL 6442414, at *4 (E.D.N.Y. 2015) (citations omitted). As stated by the Supreme Court, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, Rule 15 is construed liberally and courts have broad discretion to allow parties to add additional causes of action. See Shpak v. Curtis, 2012 WL 511478, at *4 (E.D.N.Y. 2012); see also Hartman v. County of Nassau, 2008 WL 1923127, *18 (E.D.N.Y. 2008).

      Despite the liberal construction generally afforded Rule 15, motions to amend are properly denied where they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party...." Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014). The non-movant bears the burden of demonstrating that the proposed amendment is improper. Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998). An amendment is properly denied as futile if the proposed new claim "has no merit or fails to demonstrate a cognizable or sufficient claim." Zucker, 2015 WL 6442414, at *4 (citing Lamothe v. Town of Oyster Bay, 2011 WL 4974804, at *9 (E.D.N.Y. 2011)). When determining futility, the court reviews the viability of the proposed claim pursuant to the same standard invoked with respect to a Rule 12 motion to dismiss. Lucente v. Internat'l Bus. Machs., Corp., 310 F.3d 243, 258 (2d Cir. 2002); Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013); Catholic Diocese of Rockville Centre v. Inc. Vill. of Old Westbury, 2012 WL 1392365, at *5 (E.D.N.Y. 2012). Under this familiar standard, the claim sought to be asserted must plead facts sufficient to support a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As in the Rule 12 context, the

6

Court considering futility construes the facts alleged by the party seeking to amend as true, and views such facts in a light "most favorable" to the moving party. Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005); see Hartman v. Cty. of Nassau, 2008 WL 1923127, at *18 (E.D.N.Y. 2008) (citation omitted).

  B. Permissive Joinder

To the extent a proposed amendment would add new parties, the motion is technically governed by Rule 20(a). Rule 20(a) permits the addition of plaintiffs if:

> they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all plaintiffs will arise in the action.

Rule 20(a), Fed. R. Civ. P. See also Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1421–22 (S.D.N.Y. 1989). The phrase "same transaction or occurrence" in Rule 20(a) is interpreted to include all "logically related claims by or against different parties to be tried in a single proceeding." Id. at 1421 (internal quotation omitted). In order to satisfy the second requirement, there only needs to be one question of law or fact common to all plaintiffs. See id. at 1422. Rule 20(a) is designed to encourage joinder, to permit the "broadest possible scope of the action consistent with fairness to the parties." Wyant v. Nat'l R.R. Passenger Corp., 881 F. Supp. 919, 921 (S.D.N.Y. 1995) (internal quotation omitted).

II. Disposition of the Motion

  A. Joinder of Proposed Plaintiffs Sheila Dancy-Wilkins and Sheila Dancy-Wilkins as Power of Attorney for Flora Mayweathers Is Improper

The claims asserted by the Proposed Plaintiffs and Shakespeare do not arise out of the same transaction or occurrence. In determining the meaning of the term "transaction or occurrence" under Rule 20, "many courts have drawn guidance from the use of the same term in

7

Rule 13(a), applying to compulsory counterclaims." Abraham v. Am. Home Mortg. Serv., Inc., No. 12–cv–4686 (WFK)(JMA), 947 F. Supp. 2d 222, 228, 2013 WL 2285205, at *3 (E.D.N.Y. May 23, 2013) (collecting cases); see also Peterson v. Regina, No. 10 Civ. 1692 (JSR), 935 F. Supp. 2d 628, 637–38, 2013 WL 1294594, at *6 (S.D.N.Y. Mar. 28, 2013). In the Rule 13(a) context, the Second Circuit applies the "'logical relationship' test." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004). That is, courts are to look to the logical relationship between the claims and determine "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979).

"It is well established that separate loan transactions by *different lenders* do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate transactions generally cannot be joined in a single action." Abraham, 947 F. Supp. 2d at 229 (emphasis added) (collecting cases). Shakespeare and the Proposed Plaintiffs' claims do not arise out of the same transaction or occurrence. Their allegations arise out of separate loans, obtained at different times from different lenders, and secured by separate properties. Further, their loans went into default for different reasons at different times, while their loans were in different statuses. Shakespeare's claim in the initial complaint was that the defendants had a "pattern and practice of improperly paying property taxes . . . before those taxes are due, without contractual or other legal authority to do so and without providing notice to the homeowners." Compl. ¶ 2. The Proposed Plaintiffs' claim differs. They are not based on Defendants' advance of funds to bring property taxes current. Instead, their claim centers on allegations that their account contains fees and costs disallowed under federal and state law, and that they were not given proper notice before foreclosure proceedings were initiated. PAC ¶¶ 70, 74.

8

In an effort to join Shakespeare's and the Proposed Plaintiffs' claims, the PAC seeks to adjust the class definition to include borrowers whose loans were serviced or subserviced by Defendants and were charged fees, costs, charges, penalties, interest, or mortgage insurance premiums for a variety of reasons. PAC ¶ 131. The essential facts of the claims alleged by Shakespeare and the Proposed Plaintiffs are separate and distinct. As such, the Court holds that Plaintiffs have failed to plead facts sufficient to support a finding that Plaintiffs' claims against these three defendants are "so logically connected" to dictate that they be resolved together. While this Court takes no position as to the merits of the Proposed Plaintiffs' claims, the Proposed Plaintiffs are free to pursue their claims in a separate action. However, the Court notes that if the Proposed Plaintiffs do elect to file a new complaint in the Eastern District of New York, such case may not be properly designated as related to the instant action. See Rule 3 of Rules For The Division of Business For The Eastern District of New York. Accordingly, Shakespeare's motion to join Sheila Dancy-Wilkins and Sheila Dancy-Wilkins as Power of Attorney for Flora Mayweathers is denied.

B.   Proposed Claims

As the Court has determined that the Proposed Plaintiffs would be improperly joined, the remainder of the instant motion is analyzed solely with respect to Shakespeare's allegations.

1.   Delay

In the Second Circuit, "[m]ere delay, [ ] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion ...."). Where a significant period

9

of time has passed prior to filing a motion to amend, however, the moving party must provide an explanation for the delay. See Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (describing burden to explain extended delay and collecting cases).

The premise of the Defendants' undue delay argument is that amendment would effectively restart this case from square one, nearly four years after its commencement, as Plaintiff seeks to change the scope of the action. However, the Plaintiff has offered plausible explanations for the timing of the instant motion. Specifically, she clarifies that the motion was filed immediately following remand from the Second Circuit, before the commencement of discovery.

Courts have allowed amendment despite similar—and even much longer—intervals between a party's discovery of relevant facts and filing of an amended pleading, see, e.g., Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (collecting cases where leave to amend granted after delays ranging from two to five years); Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc., No. 12 Civ. 5160, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (allowing amendment after nine months despite movant's knowledge of relevant information at time of initial pleading because party "need not prove that they uncovered new facts or law" to receive leave to amend); Valentini v. Citigroup, Inc., No. 11 Civ. 1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months "insufficient ground to warrant denial of [ ] motion to amend" where non-moving party "failed to establish bad faith or undue prejudice"); cf. Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment two and one-half years after case began and noting that "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith").

Defendants also argue that the Plaintiff's delay in seeking to amend her complaint to add claims is a tactic designed to burden them. This is exactly the type of conclusory allegation of bad faith that courts consistently reject. See, e.g., Blagman v. Apple, Inc., No. 12 Civ. 5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [plaintiff's] delay was strategic ..., they provide no showing of bad faith apart from the delay itself."); Randolph Found. v. Duncan, No. 00 Civ. 1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); Primetime 24 Joint Venture v. DirecTV, Inc., No. 99 Civ. 3307, 2000 WL 426396, at *5 (S.D.N.Y. April 20, 2000) ("[W]hen the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow the amendment."). Because the Defendants have not shown that the Plaintiff unduly delayed or acted with a dilatory motive, they must show prejudice in connection with the delay to warrant denial of the motion to amend.

2. Prejudice

Although "[p]rejudice to the opposing party ... has been described as the most important reason for denying a motion to amend," Frenkel v. New York City Off–Track Betting Corp., 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (quoting Turkenitz v. Metromotion, Inc., 97 Civ. 2513, 1997 WL 773713, at *8 (S.D.N.Y. Dec. 12, 1997)), only undue prejudice warrants denial of leave to amend, A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000); see also Oneida Indian Nation of New York State v. Cty. of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice). In deciding whether

such prejudice exists, courts evaluate whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993)). Courts also consider the particular procedural posture of the case. See, e.g., Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting State Teachers Retirement Bd., 654 F.2d at 856)); Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend sought after discovery had closed and while summary judgment motion was pending). This "inquiry involves a balancing process," weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied. Oneida Indian Nation of New York, 199 F.R.D. at 77. The non-moving party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." Id.

Celink indicates that allowing amendment will necessitate discovery on claims unrelated to the claims in the initial complaint. This alleged prejudice does not rise to a level that justifies denying leave to amend. First, the Plaintiff filed her motion before discovery has even begun. See Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an amendment prejudicial if discovery has closed."). Therefore, although the amendment may warrant additional discovery, it should not significantly prolong the resolution of the action.

Second, the Defendants' protestations that allowing the proposed amendment will impose an undue burden on Defendants by expanding the scope of discovery are also insufficient. While some additional discovery will certainly be necessary, the possibility "that an amendment will require the expenditure of additional time, effort, or money [does] not constitute 'undue prejudice.'" A.V. by Versace, 87 F. Supp. 2d at 299 (quoting Block, 988 F.2d at 351); see also Margel, 2010 WL 445192, at *12 (noting that any "prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule," and collecting cases); JPMorgan Chase Bank, N.A., 2009 WL 1357946, at *4 ("[An] adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." (quoting United States v. Cont'l Illinois Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989))).

Finally, whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis. See Monahan, 214 F.3d at 284; accord Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 262 (S.D.N.Y. 2009). This is because "prejudice occurs if the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." Henry v. Murphy, No. M–82, 2002 WL 24307, at *2 (S.D.N.Y. Jan. 8, 2002), aff'd, 50 F. App'x 55 (2d Cir. 2002). The Defendants argue that the amendment is not central to the main crux of the action and effectively a new action. But, as the Plaintiff notes, it is based on the same types of HECM servicing violations raised in the initial complaint. Therefore, although the amendment expands the claims, the new claims it asserts are related to the Plaintiff's existing claims. Accordingly, the defendants

13

have not carried their burden of demonstrating they will be unduly prejudiced by the proposed amendment.

3. Futility

"It is well established that '[l]eave to amend need not be granted ... where the proposed amendment would be futil[e].'" Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (alterations in original) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997)). To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss. See AEP Energy Serv. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."). Accordingly, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As when considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor. See Avila v. Lease Fin. Grp., LLC, No. 11 Civ. 8125, 2012 WL 3165408, at *5 n. 3 (S.D.N.Y. July 31, 2012).

Defendants oppose the motion on the ground that amendment is futile. Defendants offer extensive argument on the merits of each cause of action. In reply, Plaintiff offers significant legal argument in support of her legal theories attempting to argue that the claims are not futile.

i. RMF's Futility Theories

The Court notes that RMF argues that Plaintiff should not be allowed to bring RMF back into the case because preconditions noted on the docket herein have not been satisfied. IN particular, RMF contends that it cannot be brought back into the case unless "discovery reveals

14

any claim of actual liability on the part of RMF." DE [133]. While RMF correctly states the Court's directive, that directive was made after dismissal of RMF from the case based on the then-operative pleading. At the time of the directive, no motion to amend was before the Court. As such, the directive provides no basis for denial of Plaintiff's current motion.

RMF also asserts that Plaintiff's proposed theory of successor liability against RMF is futile. Plaintiff contends that because RMF procured servicing rights from Live Well and took assignment of the servicing rights for her loan agreements, RMF is liable to Plaintiff as Live Well's successor. "It has always been the law in New York that an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment . . ." Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 5 (2d Cir. 2011). Therefore, at this stage of the litigation, Plaintiff has stated a plausible theory of successor liability.

RMF argues that Plaintiff's agency liability theory is not legally viable because Celink is not its agent. RMF also argues that agency liability cannot attach before it acquired Plaintiff's loan and servicing obligations. Under New York law, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to this control, and the consent by the other to act." Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012).

Again, at the pleading stage, Plaintiff has alleged a plausible agency liability theory. Whether Celink is or was RMF's agent, and whether RMF ratified the alleged improper conduct of Celink and Live Well, are factual disputes which are premature to decide. Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001) ("[F]act specific question[s] cannot be resolved on the

15

pleadings."). Whether Plaintiff's theories hold merit remains to be seen. However, at this juncture, Plaintiff's theories cannot be deemed futile.

      ii.      <u>Celink's Futility Arguments</u>

Celink argues that all of the proposed breach of contract claims fail as a matter of law because Celink: (1) is not a party to the loan agreements and (2) Shakespeare has not plead that she has fully performed under the loan agreements.

As for the privity claim, Plaintiff maintains that because Celink was tasked with the day-to-day servicing compliance with RMF's and Live Well's servicing obligations, and because Celink allegedly breached those contractual obligations owed to Plaintiff, it joins RWF and Live Well as being liable for breach of the HECM loan agreements.

As "New York law does allow privity to be imputed to an agent of the contracting party under certain narrow circumstances," <u>Kapsis v. Am. Home Mortg. Servicing, Inc.</u>, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013), it is plausible that those circumstances may exist in the instant action. As Plaintiff has alleged agency relationships between Celink and RMF and Celink and Live Well, <u>see</u> PAC ¶¶ 139-152, and that Celink was in near privity with all Plaintiffs, <u>see</u> PAC ¶¶ 140-4, Plaintiff has, at this early stage of the litigation, sufficiently alleged that the loan servicer was an agent of a party in privity with the borrower.

With regard to Plaintiff's performance under the loan agreements, while Celink is correct that to state a claim for breach of contract under New York law, a complaint must allege: 1) an agreement; (2) performance by the plaintiff; (3) breach by the defendant, and (4) damages, <u>see</u> <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996), Plaintiff has alleged such performance. <u>See</u> PAC ¶¶ 107-115, 188, 206, 221, 240. Accordingly, Plaintiff has adequately alleged this element of a breach of contract claim.

Celink asserts that the breach of duties of good faith and fair dealing (Count V) as well as the Section 349 claim (Count VI) fail to state a claim fail because they are based on alleged violations of state and federal law that lack any private right of action. At the pleading stage, this assertion is false. The Second Circuit has held that:

> [T]he district court additionally erred in finding Shakespeare could not have plausibly stated a Section 349 claim by alleging materially deceptive violations of notice provisions and other regulations that do not independently provide private causes of action. 'New York courts have held that collecting fees in violation of other federal or state laws may satisfy the misleading element of § 349.' Cohen [v. JP Morgan Chase & Co.], 498 F.3d [111,] 126 [(2d Cir. 2007)].

Shakespeare, 848 F. App'x at 476. As such, Celink's argument fails to demonstrate futility.

### iii. Count I and Count II Are Futile

Defendants contend, and the Court agrees, that Counts I and II fail to state claims for breach of contract because the breaches are based on alleged violations of "applicable" federal and state laws. Plaintiff argues that Courts have found that a party to a loan agreement breaches the loan agreement if they violate one of the federal or state laws or regulations incorporated into the agreement. To support her theory, Plaintiff cites Hymes v. Bank of Am., N.A., 408 F. Supp 3d 171, 199-201(E.D.N.Y. 2019), in which the Court denied a motion to dismiss breach of mortgage agreement based on violations of a New York statute. However, since the briefing of the instant motion, the Second Circuit has reversed and remanded Hymes in Cantero v. Bank of Am., N.A., holding that the New York statute was preempted by the National Bank Act. See 2022 WL 4241359, _ _ _ F.4th _ _ _ _ (2d Cir. Sept. 15, 2022). While not directly on point, this recent case is analogous to the claims at issue here and thus instructive.

Further, there is ample case law holding that boilerplate language purporting to incorporate substantive law into the agreement are insufficient to support a breach of contract claim. See Wing Shing Prods. (BVI), LTD. v. Simatelex v. Manufactory Co., Ltd., 479 F. Supp.

17

2d 388, 406 (S.D.N.Y. 2007); see also Flagg v. Yonkers Sav. & Loan Ass'n, FA., 307 F. Supp. 2d 565, 583 (S.D.N.Y. 2004) ("A clause providing that the agreement is 'governed by federal law and the law that applies in the place where the Property is located,' does not have the specificity required as a matter of law to incorporate otherwise preempted state statutes into the mortgage agreement.").

Accordingly, the Court finds that amendment to include Counts I and II would be futile.

iv.     Counts III-VII Are Not Futile

Defendants argue that the Section 349 claim (Count VI) fails because the state law provisions on which it is based are not applicable to Plaintiff's loans. While Defendants may ultimately prevail on this issue, at this stage of the litigation, Plaintiff has stated plausible claims under Section 349 to proceed to discovery.

Defendants also argue that Plaintiff fails to plausibly plead that she was charged any unauthorized or inflated fees thus rendering Counts III, IV and VI futile. Once again, while Defendants may refute the claims, at this stage of the litigation, Plaintiff has adequately alleged deceptive practices and injury in the form of additional charges. Thus, such claims are not futile.

Plaintiff's final claim of unjust enrichment (Count VII) is likewise, not futile. The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Unjust enrichment "lies as a quasi-contract claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 950 N.Y.S.2d 333, 973 N.E.2d 743, 746 (2012) (citation omitted). The claim is

18

available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1186 (2012). Notably, "[u]nder New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter." Goldberg v. Pace University, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021); see also Stanley v. Direct Energy Servs., LLC, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020) (gathering authorities for the proposition that "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative under New York law"). Moreover, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. However, where the unjust enrichment involves subject matter "not covered by a valid, enforceable contractual obligation," that claim is not duplicative of a contract breach claim and need not be dismissed. Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010) (declining to dismiss unjust enrichment claim where subject matter was not covered by an enforceable contractual obligation).

      Here, Plaintiff has adequately pled a plausible claim for unjust enrichment. As the instant motion is one for amendment of the pleadings, Plaintiff's claim cannot be deemed futile. As it is pled in the alternative, whether it ultimately survives is incumbent on whether Plaintiff's breach of contract claims prove to have merit. However, Defendants have not demonstrated that Plaintiff's unjust enrichment claim is futile.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the complaint, appearing as Docket Entry No. 165 herein is granted in part and denied in part. The motion is granted to the extent that Shakespeare may amend to include Counts III-VI against Defendants.  The motion is denied on futility grounds as to Counts I and II. To the extent Plaintiff seeks join the Proposed Plaintiffs, the motion is denied.

As such, Plaintiff is directed to file an amended complaint which includes proposed Counts III-VI, pled solely by Shakespeare.

SO ORDERED

Dated: Central Islip, New York
       September 30, 2022

 /s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge